1  Paul R. Kiesel, State Bar No. 119854
      *kiesel@kiesel.law*
2  Jeffrey A Koncius, State Bar No. 189803
      *koncius@kiesel.law*
3  Cherisse H. Cleofe, State Bar No. 290152
      *cleofe@kiesel.law*
4  **KIESEL LAW LLP**
   8648 Wilshire Boulevard
5  Beverly Hills, CA 90211-2910
   Tel.: (310) 854-4444
6  Fax: (310) 854-0812

7  Attorneys for Plaintiffs and the Proposed Classes

8  (*Additional Attorneys Listed on Signature Page*)

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| TERRY SONNEVELDT, ESTHER WRIGHT SCHNEIDER, SHANNON PROVEN, MICHAEL BIBBO, ALAN MESHBERG, BRIAN HUME, AMIE LEVASSEUR, JEAN LEVASSEUR, CHRISTOPHER LACASSE, BETH PICKERD, DAN PICKERD, TIM HALWAS, ERIN MATHENY, LEWIS DELVECCHIO, and JON SOWARDS, on behalf of themselves and all others similarly situated, | **Case No. 8:19-cv-1298** <br><br> <u>CLASS ACTION</u> <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| MAZDA MOTOR OF AMERICA, INC. D/B/A MAZDA NORTH AMERICAN OPERATIONS and MAZDA MOTOR CORPORATION, | |
| Defendants. | |

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   JURISDICTION AND VENUE ........................................................6

III.  PARTIES.............................................................................................7

    A.    Plaintiffs...................................................................................7

    B.    Defendants .............................................................................11

IV.   FACTUAL ALLEGATIONS...........................................................12

    A.    Chain-Driven Water Pumps .................................................12

    B.    The Water Pump Defect........................................................14

    C.    Defendants Touted Reliability, Quality and Safety in Its Marketing and Advertising ......................................................18

    D.    Defendants' Knowledge of the Defect and Associated Safety Risk ......21

V.    TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL.........35

VI.   CLASS ACTION ALLEGATIONS .................................................36

VII.  CLAIMS FOR RELIEF ...................................................................42

    A.    California Counts ...................................................................42

    B.    Colorado Counts ...................................................................65

    C.    Florida Counts.......................................................................81

    D.    Illinois Counts .......................................................................99

    E.    Louisiana Counts ................................................................116

    F.    Massachusetts Counts .........................................................125

    G.    Michigan Counts .................................................................142

    H.    North Carolina Counts ........................................................154

    I.    Pennsylvania Counts ...........................................................167

    J.    Texas Counts .......................................................................183

    K.    Virginia Counts ...................................................................199

VIII. PRAYER FOR RELIEF.................................................................217

IX.   DEMAND FOR JURY TRIAL.......................................................220

CLASS ACTION COMPLAINT

1    The allegations herein are based on personal knowledge as to Plaintiffs' own
2  conduct and are made on information and belief as to all other matters based on an
3  investigation by counsel:[1]

4  **I.    INTRODUCTION**

5    1.    In modern vehicles, the useful life of the engine is between 150,000 and
6  300,000 miles. Mazda Motor of America, Inc. d/b/a Mazda North American
7  Operations ("MNAO") and Mazda Motor Corporation ("MMC" and together with
8  MNAO, "Mazda" or "Defendants") represent that the water pumps installed in the
9  Class Vehicles, as defined below, should last for the useful life of the engines without
10 the need for any service, maintenance or repair. Indeed, Mazda omits the water pump
11 from the service and maintenance schedules, which identify any vehicle components
12 that need to be maintained, repaired, or replaced. And not only does Mazda represent
13 that the water pump will not need to be serviced or maintained, but the internal
14 location of the water pump in the engine conceals it from view or inspection when
15 other routine service is being performed on the Class Vehicles.

16    2.    Despite knowing for more than a decade that their vehicles incorporating
17 the Mazda Cyclone engine, branded as the MZI Cyclone engine (the "Cyclone
18 Engine"), contain a defect in design, manufacturing, materials and/or workmanship
19 that causes the water pump to suddenly and prematurely fail well-before the end of
20 the useful life of the engine, which leads to catastrophic engine failure or a costly
21 replacement due to the water pump's inaccessible placement in the engine, Mazda
22 fails to provide such information about this "Water Pump Defect" to the public or
23 correct the Water Pump Defect.

24 / / /

25
26
27
28

---

[1] Counsel's investigation includes an analysis of publicly available information, including consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") and additional analysis. Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

CLASS ACTION COMPLAINT

3.     Beginning in 2007 and continuing through the 2016 model year, Mazda has incorporated the Cyclone Engine into hundreds of thousands of vehicles, which includes the CX-9 for model years 2007 through 2016 and the Mazda 6 for model years 2009 through 2013 (the "Class Vehicles"). Unbeknownst to purchasers and lessees of the Class Vehicles at the time of purchase or lease, the Class Vehicles contain the Water Pump Defect.

4.     Plaintiffs Esther Wright Schneider, Shannon Proven, Michael Bibbo, Alan Meshberg, Brian Hume, Amie and Jean Levasseur, Terry Sonneveldt, Christopher Lacasse, Beth and Dan Pickerd, Tim Halwas, Erin Matheny, Lewis Delvecchio, and Jon Sowards ("Plaintiffs") bring this class action against Mazda, individually and on behalf of all persons or entities in the United States who purchased, leased or own a Class Vehicle, asserting claims for fraud by omission/fraudulent concealment, negligent misrepresentation, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq*., and violations of the California, Colorado, Illinois, Louisiana, Massachusetts, Michigan, North Carolina, Pennsylvania, Texas, and Virginia consumer protection statutes on behalf of the Classes (defined below).

5.     The Cyclone Engine contains an internal chain-driven water pump, which means the timing chain is connected to the water pump and provides the power the water pump needs to circulate coolant through the engine when the engine is running.

6.     The chain-driven water pump in the Class Vehicles is located internal to the Cyclone Engine, behind numerous engine components, including the timing chain cover. Because of this, it is hidden from view even during other routine maintenance or service within the engine compartment. As a result of the Water Pump Defect, coolant is able to leak from the water pump into the oil pan and/or other engine components, allowing it to mix with the engine's oil. Often, this mixture of engine oil

CLASS ACTION COMPLAINT

and coolant circulates throughout the engine leading to destruction of the engine, as happened with numerous Plaintiffs and others.

7.    Plaintiffs and members of the Classes relied on Mazda's representation that the water pump in the Class Vehicles did not require maintenance, service, repair or replacement.

8.    Thus, consumers are not warned that they are likely to suffer a sudden water pump failure that poses significant safety risks when the Class Vehicles suddenly become inoperable, nor are they warned that due to the relatively inaccessible location of the water pump in the engine, the cost to repair or replace the defective water pump is significant even in situations where the entire engine is not destroyed.

9.    Upon information and belief, MMC worked in conjunction with Ford Motor Company ("Ford") with respect to the design, engineering, development, and/or testing of the Cyclone Engine. In fact, Ford also incorporated the Cyclone Engine into millions of its own vehicles, under the brand name *Duratec*.

10.    Based on pre-production testing and design failure mode analysis, warranty claims and consumer complaints, as well as complaints to NHTSA, and/or Ford, *inter alia*, Defendants were aware of the Water Pump Defect in the Class Vehicles but concealed the defect from Plaintiffs and members of the Classes. Indeed, despite being aware of the defect and numerous complaints, Mazda knowingly, actively and affirmatively omitted and/or concealed the existence of the Water Pump Defect to increase profits by selling additional Class Vehicles and by unlawfully transferring the cost of repair or replacement of the water pump and damaged engine parts to Plaintiffs and members of the Classes.

11.    Knowledge and information regarding the Water Pump Defect and the associated safety risk was in the exclusive and superior possession of Defendants, their partner Ford, and their authorized dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due

CLASS ACTION COMPLAINT

1  diligence. To be sure, despite Defendants' knowledge, Mazda continued selling

2  defective vehicles, has failed to disclose the existence of the Water Pump Defect to

3  Plaintiffs and members of the Classes, has not issued a recall and has not remedied

4  the defect and/or compensated Class Vehicle purchasers, owners or lessees for this

5  material defect.

6      12.    No reasonable consumer expects to purchase or lease a vehicle that

7  contains a concealed Water Pump Defect which creates the safety hazards and

8  significant monetary losses detailed herein. The Water Pump Defect is material to

9  Plaintiffs and members of the Classes because when they purchased or leased their

10  Class Vehicles, they reasonably expected that the Class Vehicles would be free from

11  water pump defects — especially given the fact that Mazda recommends no

12  inspection, service, or maintenance on the water pump within the normal expected

13  useful life of the Class Vehicles. Had Defendants disclosed the Water Pump Defect,

14  Plaintiffs and members of the Classes would not have purchased or leased the Class

15  Vehicles, or would have paid less for their Class Vehicles.

16      13.    Indeed, the Water Pump Defect presents a significant safety risk for

17  Plaintiffs and members of the Classes because when the water pump suddenly and

18  unexpectedly fails and causes catastrophic engine failure, Class Vehicles lose engine

19  power, including the ability to accelerate, maintain speed, readily control steering

20  and/or fully engage the brakes. Thus, drivers and occupants of the Class Vehicles are

21  at risk for serious accidents as a result of Defendants' failure to disclose the existence

22  of the Water Pump Defect and corresponding safety risk.

23      14.    This hazardous defect has resulted in numerous complaints to NHTSA

24  and to authorized Mazda dealerships throughout the country. For example, many

25  Mazda customers have reported sudden engine failure while driving as a result of the

26  Water Pump Defect, leading to dangerous on-road situations when their vehicles lose

27  power suddenly.

28  / / /

4                                              CLASS ACTION COMPLAINT

1
2
3
4
5

15.    In the United States, MNAO provides warranty coverage for Class Vehicles under one or more warranties. For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[2]

6
7
8
9
10
11
12
13
14
15
16

16.    Defendants MMC and MNAO breached their express and implied warranties through which Mazda promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the water pump and corresponding damaged engine parts. Because the Water Pump Defect was present at the time of sale or lease of the Class Vehicles and concealed from Plaintiffs and members of the Classes, MNAO, on behalf of itself and MMC, was required to repair or replace the water pump and corresponding damaged engine parts resulting from the Water Pump Defect under the terms of the warranties. Yet, on information and belief, MNAO has failed to repair or replace the defective and damaged parts free of charge under Mazda's warranties.

17
18
19
20
21
22
23
24
25
26

17.    Furthermore, given the latent nature of the Water Pump Defect, Defendants knew or should have known that the majority of water pump failures likely would occur outside of the warranty periods and has wrongfully transferred the significant costs of repair or replacement to Plaintiffs and members of the Classes through Defendants' fraudulent concealment and/or fraudulent omission of the defect. These costs are significant and range in the thousands of dollars, and no reasonable consumer expects to incur such costs during the useful life of the engine, especially given Defendants' representations in the maintenance schedules. In light of this, Defendants' attempt to enforce warranty limitations against Plaintiffs and the Classes is unconscionable.

27
28

---

[2]  *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

5                                        CLASS ACTION COMPLAINT

1
2
3
4

18.   As a result of the Water Pump Defect and the placement of the water pump internal to the Cyclone Engine, repair or replacement of the water pump can lead to Plaintiffs and Class members being forced to pay over $1,500 for replacement of the water pump alone or as much as $11,000 to replace a destroyed engine.

5
6
7
8
9
10

19.   Thus, as a direct result of Defendants' unlawful conduct, Plaintiffs and members of the Classes have been harmed and are entitled to, *inter alia*, actual damages, including: damages for diagnosis, repair and/or replacement of the water pump, damaged engine parts or the entire engine; damages for the diminished value of their vehicles; compensatory, statutory and punitive damages, attorneys' fees, costs, restitution and/or injunctive and declaratory relief.

11

## II.   JURISDICTION AND VENUE

12
13
14
15
16
17
18
19
20

20.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants and greater than two-thirds of the members of the Classes reside in states other than the state in which Defendants are citizens. This Court also has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

21
22
23
24
25
26
27

21.   Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because: Defendant MNAO maintains operational facilities in this District; a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; Defendants conduct a substantial amount of business in this District; and Defendant MNAO is headquartered in this District. Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

28
/ / /

6                         CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   PARTIES

#### A.   Plaintiffs

22.   Plaintiff Esther Wright Schneider is a citizen of the State of California and resides in Corte Madera, California. On or about October 3, 2011, Plaintiff Wright Schneider leased a new 2011 Mazda CX-9 Touring Edition in Encinitas, California for personal, family, or household purposes. On or about October 19, 2014, Plaintiff Wright Schneider purchased her vehicle after the initial lease expired. On or about May 13, 2018, Ms. Wright Schneider's vehicle suffered immediate catastrophic engine failure due to the Water Pump Defect while she was driving on the highway, without any prior warning there was a problem with the vehicle's engine. The engine failure was diagnosed as the result of the failed water pump and occurred at or around 114,000 miles. As a result of the Water Pump Defect, Plaintiff Wright Schneider was forced to pay approximately $3,800 to have her vehicle diagnosed and repaired.

23.   Plaintiff Shannon Proven is a citizen of the States of Colorado and resides in Englewood, Colorado. In 2007, Plaintiff Proven purchased a new 2007 Mazda CX-9 in Denver, Colorado for personal, family or household purposes. On or about June 2017, Ms. Proven's vehicle suffered immediate catastrophic engine failure due to the Water Pump Defect while she was driving, without any prior warning there was a problem with the vehicle's engine. The engine failure was diagnosed as a result of the failed water pump and occurred at or around 96,000 miles. As a result of the Water Pump Defect, Plaintiff Proven was forced to pay approximately $500 to have her vehicle towed to her home and has lost the use of her vehicle.

24.   Plaintiff Michael Bibbo is a citizen of the State of Colorado and resides in Denver, Colorado. In September 2013, Plaintiff Bibbo purchased a used 2012 Mazda CX-9 in Fort Lauderdale, Florida for personal, family, or household purposes. On or about March 30, 2019, Mr. Bibbo's vehicle suffered immediate catastrophic engine failure due to the Water Pump Defect, without any prior warning there was a

CLASS ACTION COMPLAINT

1   problem with the vehicle's engine. The engine failure was diagnosed as a result of the
2   failed water pump and occurred at or around 91,000 miles. As a result of the Water
3   Pump Defect, Plaintiff Bibbo was forced to sell his vehicle for $700, significantly
4   less than the value he would have received had the engine been in working order.

5       25.    Plaintiff Alan Meshberg is a citizen of the State of Colorado and resides
6   in Parker, Colorado. In October 2009, Plaintiff Meshberg purchased a used 2008
7   Mazda CX-9 in Naperville, Illinois for personal, family, or household purposes. On
8   or about May 17, 2016, Mr. Meshberg's water pump failed due the Water Pump
9   Defect in his Class Vehicle, without any prior warning that there was a problem with
10  the water pump. The water pump failure was diagnosed at or around 98,000 miles. As
11  a result of the Water Pump Defect, Plaintiff Meshberg was forced to pay
12  approximately $1,900 to have a new water pump installed. Subsequently, on or about
13  August 8, 2016, his vehicle suffered a catastrophic engine failure, as a result of the
14  damage of the previous water pump failure. As a result of the Water Pump Defect,
15  Plaintiff Meshberg was then forced to pay approximately $1,300 to purchase a used
16  CX-9 engine and $3,500 to an authorized Mazda dealership to install the used engine.

17      26.    Plaintiff Brian Hume is a citizen of the State of Louisiana and resides in
18  Luling, Louisiana. In February 2016, Plaintiff Hume purchased a new 2015 Mazda
19  CX-9 in Metairie, Louisiana for personal, family, or household purposes. On or about
20  May 14, 2019, Mr. Hume's water pump failed due to the Water Pump Defect in his
21  Class Vehicle, without any prior warning that there was a problem with the water
22  pump. The water pump failure was diagnosed at or around 83,000 miles. As a result
23  of the Water Pump Defect, Plaintiff Hume was forced to pay approximately $2,500 to
24  have a new water pump installed.

25      27.    Plaintiffs Amie and Jean Levasseur are citizens of the Commonwealth of
26  Massachusetts and reside in Melrose, Massachusetts. On January 4, 2014, the
27  Levasseurs purchased a used 2011 Mazda CX-9 in Wakefield, Massachusetts for
28  personal, family, or household purposes. On or about May 26, 2019, the Levasseurs'

CLASS ACTION COMPLAINT

vehicle suffered a water pump failure due to the Water Pump Defect, without any prior warning there was a problem with the vehicle. The failure occurred at around 91,000 miles. As a result of the Water Pump Defect, the Levasseurs were forced to pay over $500 to have their vehicle diagnosed and were forced to trade in the car for reduced value.

28.   Plaintiff Terry Sonneveldt is a citizen of the State of Michigan and resides in Traverse City, Michigan. In October 2018, Plaintiff Sonneveldt purchased a used 2012 Mazda CX-9 in Traverse City, Michigan for personal, family, or household purposes. On or about April 6, 2019, Mr. Sonneveldt's vehicle suffered immediate catastrophic engine failure due to the Water Pump Defect, without any prior warning there was a problem with the vehicle's engine. The engine failure was diagnosed as the result of the failed water pump and occurred at or around 115,000 miles. As a result of the Water Pump Defect, Plaintiff Sonneveldt was forced to pay over $5,200 to have his vehicle towed and his engine rebuilt.

29.   Plaintiff Christopher Lacasse is a citizen of the State of North Carolina and resides in Holly Springs, North Carolina. In November 2016, Plaintiff Lacasse purchased a used 2010 Mazda CX-9 Touring Edition, in Sanford, North Carolina for personal, family, or household purposes. On or about November 20, 2018, Mr. Lacasse's vehicle suffered immediate catastrophic engine failure due to the Water Pump Defect, without any prior warning there was a problem with the vehicle's engine. The engine failure was diagnosed as the result of the failed water pump and occurred at or around 98,000 miles. As a result of the Water Pump Defect, Plaintiff Lacasse was forced to pay approximately $4,100 to have his vehicle diagnosed, towed, and equipped with a salvaged used engine. He also paid approximately $500 in car rental costs while his Class Vehicle was being repaired.

30.   Plaintiffs Beth and Dan Pickerd are citizens of the Commonwealth of Pennsylvania and reside in West Chester, Pennsylvania. In January 2013, the Pickerds purchased a new 2012 Mazda CX-9 in West Chester, Pennsylvania for

personal, family, or household purposes. On or about January 24, 2019, the Pickerds' vehicle suffered immediate catastrophic engine failure due to the Water Pump Defect, without any prior warning there was a problem with the vehicle's engine. The engine failure was diagnosed as the result of the failed water pump and occurred at or around 93,000 miles. As a result of the Water Pump Defect, the Pickerds lost the use of their vehicle and were forced to purchase a new vehicle.

31.    Plaintiff Erin Matheny is a citizen of the State of Texas and resides in Denton, Texas. In January 2013, Plaintiff Matheny purchased a new 2012 Mazda CX-9, in McKinney, Texas for personal, family, or household purposes. On or about June 21, 2018, Ms. Matheny's vehicle suffered immediate catastrophic engine failure due to the Water Pump Defect in her Class Vehicle, without any prior warning that there was a problem with the vehicle's engine. The engine failure was diagnosed as the result of a failed water pump and occurred at or around 85,000 miles. As a result of the Water Pump Defect, Plaintiff Matheny was forced to pay approximately $4,100 to have her engine repaired.

32.    Plaintiff Tim Halwas is a citizen of the State of Texas and resides in Dallas, Texas. In July 2009, Plaintiff Halwas purchased a new 2009 Mazda CX-9 in McKinney, Texas, for personal, family, or household purposes. On or about May 21, 2019, Mr. Halwas' vehicle suffered immediate catastrophic engine failure due to the Water Pump Defect in his Class Vehicle, without any prior warning that there was a problem with the vehicle's engine. The engine failure was diagnosed as the result of a failed water pump and occurred at or around 107,000 miles. As a result of the Water Pump Defect, Plaintiff Halwas was forced to pay approximately $100 to have his vehicle diagnosed and has lost use of his vehicle.

33.    Plaintiff Lewis Delvecchio is a citizen of the State of Virginia and resides in Chesterfield, Virginia. In April 2009, Plaintiff Delvecchio purchased a new 2009 Mazda 6, in North Chesterfield, Virginia, for personal, family, or household purposes. On or about November 20, 2017, Mr. Delvecchio's water pump failed due

to the Water Pump Defect in his Class Vehicle, without any prior warning that there was a problem with the water pump. The water pump failure was diagnosed at or around 120,900 miles. As a result of the Water Pump Defect, Plaintiff Delvecchio was forced to pay approximately $1,700 to have a new water pump installed.

34.     Plaintiff Jon Sowards is a citizen of the State of Kentucky and resides in Bowling Green, Kentucky. In 2017, Plaintiff Sowards purchased a used 2015 Mazda CX-9 in Virginia, for personal, family, or household purposes. On or about January 12, 2019, Mr. Sowards' Class Vehicle suffered a catastrophic engine failure, without any prior warning that there was a problem with the water pump. The engine failure was diagnosed as the result of a failed water pump and occurred at or around 67,000 miles. As a result of the Water Pump Defect, Plaintiff Sowards was forced to pay approximately $8,600 to have the engine replaced with a rebuilt engine.

**B.      Defendants**

35.     Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations is a California corporation, with its corporate headquarters located in Irvine, California.

36.     MNAO markets, warrants, and sells Mazda-branded vehicles and vehicle parts and accessories throughout the United States, through its network of authorized dealers. MNAO engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District. MNAO's contracts with its authorized dealers enable it to exercise significant control over the dealerships and gives it full authority to approve or deny warranty repairs. Upon information and belief, MNAO is MMC's designated agent in the United States to interface with NHTSA. MNAO also performs some research and design operations at MMC's behest, and oversees any North American based manufacturing for MMC.

37.     Defendant Mazda Motor Corporation is a Japanese corporation, with its corporate headquarters located in Fuchū, Aki District, Hiroshima Prefecture, Japan.

CLASS ACTION COMPLAINT

38.     MMC is the parent corporation of MNAO. MMC designs, engineers, manufactures, markets and/or sells vehicles throughout the world through its subsidiaries and agents, including MNAO.

39.     MMC exercises significant control over the operations of MNAO such that MNAO is MMC's agent. The current Chief Executive Officer of MNAO was appointed by MMC, and was MMC's former head of the global sales and marketing division located at its Hiroshima headquarters.

40.     Upon information and belief, the owner's manuals, warranty booklets, maintenance schedules, advertisements and other promotional materials relating to the Class Vehicles were developed and/or approved by MNAO at its headquarters in Irvine, California, using information from MMC, and then disseminated by MNAO at the behest of MMC throughout the United States. At all times relevant to this action, Defendant MNAO made decisions related to advertisements, marketing, sales, warranties, including decisions regarding covered repairs, and recalls of the Class Vehicles, at its Irvine, California headquarters, which is located within this District.

41.     At all times relevant to this action, Defendants and/or its agents manufactured, distributed, sold, leased and warranted the Class Vehicles, containing the defect described herein, throughout the United States.

IV.   **FACTUAL ALLEGATIONS**

    A.    **Chain-Driven Water Pumps**

42.     Chain-driven water pumps are relatively new to the automobile industry. Historically, water pumps were located external to the engine block and driven by an accessory belt drive system. When such external water pumps fail, notice is provided to the driver of the vehicle in the form of coolant leaking onto the ground, steam coming from the engine and/or dashboard warning lights indicating that the vehicle is overheating. More recently, automakers have attempted to remove items from the accessory drive belt in order to improve engine efficiency.

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

43.     A chain-driven water pump is located within the engine block behind the timing chain cover and relies on the timing chain to deliver its power, as shown in the image below (the water pump is circled):



44.     An engine's timing chain is driven by the crankshaft and turns the camshaft, keeping it in sync with the crankshaft. The timing chain is constantly lubricated by oil, to ensure that it operates smoothly and without friction. On certain vehicles, including the Class Vehicles, the timing chain is connected to the water pump and provides the power the water pump needs to circulate coolant through the engine when the engine is running.

45.     A water pump can circulate up to 7,500 gallons of coolant per hour, which is required to prevent the engine from overheating. A typical water pump is made up of numerous components, including, *inter alia*, a shaft, bearing assembly, seal, gasket, housing that encases the water pump and a weep hole designed to let a small amount of leaked coolant escape rather than being forced into the water pump bearing assembly. Failure of one or more of the above components, *inter alia*, may

CLASS ACTION COMPLAINT

1   lead to water pump failure, which can cause the engine to overheat or coolant to leak

2   into engine parts or oil, causing catastrophic engine failure.

3       46.    Beginning in 2007, with the Cyclone Engine, Mazda began using an

4   internal chain-driven water pump, which it incorporated into the Class Vehicles. The

5   Cyclone Engine uses a double overhead camshaft ("DOHC") configuration with two

6   camshafts connected to the crankshaft by a timing chain to ensure that the operating

7   cycle is timed correctly.

8       47.    The engine cooling system in the Cyclone Engine, including the water

9   pump, is intended to be a closed system, so that the coolant does not leak into engine

10  parts or mix with the engine's oil and circulate throughout the engine.

11      48.    However, when the water pump fails in the Class Vehicles, coolant is

12  able to escape from the closed system and leak into other engine parts, including,

13  *inter alia*, the timing chain, crankcase and/or oil pan, where it mixes with the

14  engine's oil. If coolant mixes with engine oil, that mixture is then carried throughout

15  the other parts of the engine, where it causes friction and leads to sudden,

16  catastrophic engine failure.

17  **B.    The Water Pump Defect**

18      49.    Defendant MMC is a manufacturer of vehicles sold by Defendant

19  MNAO under the Mazda brand name throughout the United States. Defendants

20  designed and manufactured the Class Vehicles, and Defendant MNAO imported,

21  distributed, marketed and/or sold the Class Vehicles in the United States. Defendant

22  MNAO also provides service and maintenance for the Class Vehicles through its

23  extensive network of authorized dealers and service providers nationwide, using

24  information provided by MMC.

25      50.    Each of the Class Vehicles is equipped with the Cyclone Engine, which

26  was introduced by Mazda in 2007, and incorporated into hundreds of thousands of

27  Class Vehicles. Mazda can identify the Class Vehicles by their vehicle identification

28  numbers.

1       51.    Plaintiffs and members of the Classes purchased, leased and/or own Class Vehicles that contain the Water Pump Defect, which causes failure of the water pump prematurely and without warning. The Water Pump Defect often leads to catastrophic engine failure, causing a sudden loss of normal operation of the vehicle, and requiring thousands of dollars in repairs or replacement of the entire engine.

52.    The Cyclone Engine, and the Class Vehicles which are equipped with the engine, contain the Water Pump Defect, which is the result of defects in design, manufacturing, materials and/or workmanship. By designing, manufacturing, assembling, inspecting, distributing, selling and leasing the Class Vehicles with the Water Pump Defect, Mazda rendered the Class Vehicles defective and unsafe for their intended use and purpose.

53.    The engine cooling system in the Class Vehicles is designed, engineered and/or manufactured in a manner that causes coolant from a failed or failing water pump to leak into engine parts, including, *inter alia*, the timing chain, crankcase and/or oil pan. The Water Pump Defect allows coolant to mix with the engine oil which can then spread throughout the entire engine. This often causes immediate catastrophic engine failure, without the operator of the vehicle having any prior notice of the problem or of the imminent failure.

54.    This mixture of oil and coolant resulting from the Water Pump Defect has been described as a "chocolate milk" substance, which is devastating to an engine. In fact, in instructions sent to its authorized dealers, Mazda directs mechanics to both remove the oil pan drain plug and line the cylinder block with plastic sheeting as illustrated below to prevent engine coolant from penetrating or accumulating in the oil pan:

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



12   55.    Once this "chocolate milk" substance is created and spread throughout

13   an engine, the engine will seize, and replacement of the entire engine is required. This

14   often occurs while the vehicle is being driven, with no warning to drivers of the Class

15   Vehicles and poses a safety risk when the engine suddenly fails during operation.

16   56.    Mazda provides no warning to Plaintiffs and members of the Classes

17   regarding the Water Pump Defect and associated safety risk. Rather, Mazda publishes

18   owner's manuals and maintenance schedules which represent that the water pump

19   does not need to be serviced, repaired or replaced during at least the first 120,000

20   miles of the Class Vehicles' lives.[3] Mazda's maintenance schedules inform customers

21   of the parts that are required to be maintained or replaced at certain intervals, up to

22   120,000 miles, and wholly omit the water pump. Instead, Mazda represents that the

23   water pump is expected to last for the useful life of the engine, or at least 120,000

24   miles, without the need for maintenance, repair or replacement. As a result, Plaintiffs

25   and members of the Classes rely on Mazda's representations that the water pumps in

26

27   [3] *See, e.g.*, Exhibit B (2012 CX-9 Maintenance Schedule); Exhibit C (2011 Mazda6
     Maintenance Schedule); Exhibit D (2012 CX-9 Owners' Manual); Exhibit E (2011
28   Mazda6 Owners' Manual).

CLASS ACTION COMPLAINT

the Class Vehicles do not need to be repaired or replaced before the Class Vehicles reach 120,000 miles.

57.     A water pump, by itself, for the Cyclone Engine, one of which is shown in the figure, immediately below the R, retails for approximately $125 (excluding labor):



58.     However, the location of the water pump in Class Vehicles makes it labor-intensive and extremely expensive to replace. Numerous engine components, including, *inter alia*, the timing chain, guides and cover, have to be removed in order to access the water pump. Given the internal placement of the water pump, replacing the water pump in the Cyclone Engine typically requires at least 12-14 hours of work, at an expense of over $1500.

59.     While unreasonable, this expense pales in comparison to the expense of replacing the entire engine as a result of the Water Pump Defect, which can range from $4000-$9000 for a replacement engine.

/ / /

/ / /

60.     As alleged herein, Plaintiffs and members of the Classes unknowingly purchased or leased vehicles that contain the Water Pump Defect and suffered actual damages, including diminished market value, related to their purchase or lease of the Class Vehicles as a direct result of Defendants' misrepresentations and omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Water Pump Defect and its associated safety risk. The fact that the Class Vehicles contain the Water Pump Defect is material to Plaintiffs and members of the Classes because it leads to a serious safety risk, exorbitant repair or replacement costs, and diminishes the value of the Class Vehicles.

61.     As a result of Defendants' fraudulent concealment and material omissions, including its failure to disclose the presence of the Water Pump Defect in the Class Vehicles, Defendants have caused Plaintiffs and members of the Classes to suffer actual damages, including, but not limited to, out-of-pocket expenses and the diminished value of their vehicles.

## C.     Defendants Touted Reliability, Quality and Safety in Its Marketing and Advertising

62.     Defendant MNAO engages in direct marketing to consumers, such as Plaintiffs and members of the Classes via TV and radio commercials, print advertising, and the publication of vehicle brochures which are distributed through its network of authorized Mazda dealerships, in order to induce consumers to purchase its vehicles. Defendant MMC has input and exercises approval over the marketing activities of MNAO. This comprehensive advertising campaign is ongoing.

63.     Mazda touts the quality and reliability of its vehicles. "Peace of mind also comes standard," was one phrase used in its marketing materials to advertise the terms of the New-Vehicle Limited Warranty.[4]

/ / /

---

[4]  *See*  https://cdn.dealereprocess.net/cdn/brochures/mazda/2011-cx9.pdf  (last visited June 28, 2019).

CLASS ACTION COMPLAINT

64.    Mazda also claimed that it was "[p]laying it safe by engineering to the next level. Our obsessive engineers go the distance to help keep you safe. The numerous active and passive safety features in the CX-9 are painstakingly crafted to give you and your family one feeling: peace of mind."[5] Mazda promised "the CX-9 will get you to your destination swiftly and safely"[6] and that "[o]ur engineers went crazy to give you peace of mind."[7]

65.    The promise of such close review of the quality of the vehicle was also made in the 2009 Mazda6 brochure, which stated that the vehicle, "sees the scrutiny of over 100 inspectors. Each empowered to reject any part or component that fails to measure up. In fact, by the time you see a new Mazda 6, it's already seen a grueling gauntlet of over 800 inspections."[8]

66.    Similarly, in the brochure for the 2011 Mazda 6, Defendants claimed, "During its rigorous development, some 400 Mazda engineers subjected crucial MAZDA 6 components to testing that simulated 10 years of extreme use. Then, to further prove its reliability, they drove a fleet of MAZDA 6 test cars for a total of

---

[5]    *See* https://www.mazdausa.com/MusaWeb/musa2/pdf/brochures/2013/2013_cx9_brochure.pdf (last visited June 28, 2019).
[6]    *Id.*
[7]    *See* https://www.mazdausa.com/MusaWeb/musa2/pdf/brochures/2012/2012_cx9_brochure.pdf (last visited June 28, 2019).
[8]    *See*    http://www.auto-brochures.com/makes/Mazda/6/Mazda_US%206_2009.pdf (last visited on June 28, 2019).

CLASS ACTION COMPLAINT

more than one million miles. In fact, by the time you see a MAZDA 6, it will have survived a demanding gauntlet of quality control standards that are among the strictest in the industry" to promise reliability and durability for "many years down the road."[9]



67.    In that same brochure, Mazda stated, "As with every Mazda, safety engineering goes hand in hand with performance engineering in the MAZDA 6." And that vehicles had Dynamic Stability Control "to help provide predictable, stable handling in emergency situations," and were designed with other safety features so that "[d]anger is averted. And you journey safely on."[10]

68.    Mazda further claims that "its overall focus on quality, detail and safety adds even more to its appeal," and that "[y]our family's safety is our priority. Precisely why we've engineered Mazda CX-9 to be among the safest crossovers in its class."[11]

/ / /

/ / /

---

[9]    *See*    https://www.mazdausa.com/MusaWeb/musa2/pdf/brochures/2011/2011_mazda6_brochure.pdf (last visited on June 28, 2019).

[10] *Id.*

[11] *See* https://cdn.dealereprocess.net/cdn/brochures/mazda/2011-cx9.pdf (last visited June 28, 2019); *see also* https://allcarcentral.com/Mazda-pdf/2010_cx9_brochureMazda.pdf (last visited June 28, 2019).

CLASS ACTION COMPLAINT

69.     Further, in its owners' manuals, Defendants stated, "We assure you that all of us at Mazda have an ongoing interest in your motoring pleasure and in your full satisfaction with your Mazda product."[12]

70.     Mazda Warranty Booklets also carried such promises. "You'll also be pleased to know how strongly we stand behind every Mazda vehicle," and "[w]e're committed to making sure you enjoy your Mazda for years to come."[13]

71.     Defendants make such claims while knowing that they are selling and have sold hundreds of thousands of Class Vehicles equipped with the Water Pump Defect and corresponding safety risk. These claims help Defendants to conceal the Defect's existence in order to sell more vehicles and avoid the financial responsibility to repair and/or replace defective water pumps or any engine components damaged by the water pump's failure.

**D.     Defendants' Knowledge of the Defect and Associated Safety Risk**

72.     Defendants fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiffs and members of the Classes the defect in the Class Vehicles even though Defendants knew or should have known of the Water Pump Defect in Class Vehicles.

73.     Knowledge and information regarding the Water Pump Defect were in the exclusive and superior possession of Mazda, their partner Ford, and their dealers, and that information was not provided to Plaintiffs and members of the Classes. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' and Ford's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair orders and parts data received from the dealers, consumer complaints to dealers and NHTSA and testing performed in response to

---

[12] *See e.g.*, Exhibit D (2012 Mazda CX-9 Owners' Manual); Exhibit E (2011 Mazda 6 Owners' Manual).

[13] *See e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet).

CLASS ACTION COMPLAINT

consumer complaints, *inter alia*, Defendants was aware (or should have been aware) of the Water Pump Defect in the Class Vehicles and fraudulently concealed the defect and safety risk from Plaintiffs and members of the Classes.

74.     Defendants knew, or should have known, that the Water Pump Defect and the associated safety risk was material to owners and lessees of Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles or within the applicable warranty periods.

75.     Notwithstanding Defendants' exclusive and superior knowledge of the Water Pump Defect, Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continues to sell Class Vehicles containing the defect.  Defendants intentionally concealed that the Water Pump Defect presents a safety risk to consumers, including Plaintiffs and members of the Classes, and the public.

76.     Consumers who purchased or leased Class Vehicles have filed numerous complaints with NHTSA reporting the Water Pump Defect, reporting the need to pay exorbitant amounts to repair or replace the water pump and damaged engine parts and detailing their experiences of catastrophic engine failure, which put the safety of drivers and their passengers at risk.

77.     Federal law requires Mazda to monitor defects which can cause a safety issue and report them within five (5) days.  MNAO, as MMC's agent in the United States, regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defect through these complaints, *inter alia*.

78.     Below are consumer complaints made to NHTSA regarding the Water Pump Defect in Class Vehicles:

- **April 30, 2016 – 2009 Mazda CX-9**
  NHTSA ID Number: 10862356

22                          CLASS ACTION COMPLAINT

Incident Date April 23, 2016
Consumer Location BOCA RATON, FL
Vehicle Identification Number JM3TB28A290
**Summary of Complaint:**
SUV WOULD GO OFF IN THE MIDDLE OF THE ROAD OR
HIGHWAY THEN TRAVELING A HIGH SPEED.  TOOK IT TO
DEALER, THEY SAY THAT THEY FOUND OIL & WATER MIX IN
THE ENGINE DUE TO WATER PUMP FAILURE, MULTIPLE
SYMPTOMS WOULD OCCUR AS DUE TO THIS CONDITION.
THIS ISSUE IS VERY SERIES, FIRST YOU GET NO INDICATION
OF THE PROBLEM, NOT SURE WHY THE WATER PUMP
FAILURE CAUSES WATER TO ENTER THE MOTOR AND MIX
WITH OIL, IT MUST BE A MAZDA DESIGN PROBLEM, WHICH
THEY SEEM TO KNOW ABOUT AND NEVER ISSUED A RECAL
TO GET ALL THE CAR FIXED.  IF YOU ARE DRIVING WITH
YOUR FAILURE AT 50 MPE IN A HIGHWAY THE CAR WILL
JUST GO OFF AND YOU CAN GET IMPACTED AT THE REAR
WITH VERY HORRIBLE CONSEQUENCES.  WILL MAZDA ISSUE
A RECAL FOR SUCH A SERIES ISSUE?

- **October 25, 2017 – 2010 Mazda CX-9**
  NHTSA ID Number: 11039779
  Incident Date October 21, 2017
  Consumer Location NEWPORT NEWS, VA
  Vehicle Identification Number Not Available
  **Summary of Complaint:**
  TAKATA RECALL I HAVE A MAZDA CX9 2010, I GOT NO
  INDICATION THAT THERE WAS A PROBLEM WITH MY WATER
  PUMP. THE CARE DID NOT OVER HEAT, IT DID NOT STALL
  AND I WAS NO STEAM COMING FROM THE CAR. I DROVE MY
  VEHICLE TO THE OTHER SIDE OF THE WATER MORE THAN 20
  MILES FROM MY HOME, SO THAT I COULD GO TO WORK. IF
  IT WERE NOT FOR THE PHARMACIST AT MY JOB I WOULD
  HAVE GOTTEN IN MY CAR AND DROVE OFF. HE NOTICE A
  PUDDLE UNDER MY CAR AND ASKED ME TO COME OUTSIDE
  SO HE COULD INVESTIGATE THE SITUATION FURTHER. HE
  SAW WHERE THE FLUID WAS COMING FROM AND WENT
  UNDER THE CAR TO TOUCH THE FLUID AND FOUND THAT IT
  WAS MY ANTI-FREEZE. IF I KNEW I HAD A PROBLEM I
  WOULD HAVE NEVER DRIVEN THE CAR THAT FAR FROM
  HOME. I GOT A QUOTE FROM THE DEALER THAT IT WOULD

COST ME $2050 TO REPAIR THE WATER PUMP. AS I DID RESEARCH, I FOUND THAT THIS IS SOMETHING THAT GOES ON WITH THESE VEHICLES AND THERE IS NO REAL WAY AROUND HAVING TO PAY THE DEALER THAT TYPE OF MONEY TO REPAIR THEPROBLEM BECAUSE OF THE WAY THE PUMP IS PLACED INSIDE OF THE ENGINE CAVITY. AT THIS POINT I DO NOT KNOW WHAT TO DO BECAUSE I DO NOT HAVE THE MONEY FOR THIS TYPE OF REPAIR ON A VEHICLE THAT WAS DESIGNED TO SCREW ME OVER. I WISH I DID MY RESEARCH BEFORE BUYING THIS VEHICLE. IF I HAD THE CHANCE TO DO IT ALL OVER AGAIN I WOULD NOT PICK A VEHICLE THAT REQUIRES ONLY THE DEALER TO REPAIR IT. I THINK THAT THIS IS UNFAIR FOR ANY CONSUMER TO HAVE TO PAY THAT AMOUNT OF MONEY BECAUSE OF THE DAMAGE THE WATER PUMP HAS DONE TO THE ENGINE BECAUSE OF ITS PLACEMENT. I AM SO UPSET AND NOT HAPPY ABOUT HOW MY FIRST CAR (THAT I LOVE) EXPERIENCE HAS TURNED OUT. I THANK GOD THAT I WAS NOT ON THE HIGHWAY. I COULD HAVE DIED THAT DAY.

- **May 17, 2019 – 2010 Mazda CX-9**
  NHTSA ID Number: 112083019
  Incident Date May 15, 2019
  Consumer Location BOULDER, CO
  Vehicle Identification Number JM3TB3MV6A0
  **Summary of Complaint:**
  THE ENGINE OVERHEATED WHILE DRIVING ON A HIGHWAY AT HIGH SPEED AND FAILED WITHOUT WARNING. AFTER INVESTIGATION IT WAS FOUND THAT WATER PUMP MALFUNCTIONED FORCING COOLANT INTO THE ENGINE. IT IS NOT COMPLETELY INOPERABLE AND THE CAR HAS ONLY AROUND 80,000 MILES ON IT. THIS IS A MAJOR SAFETY ISSUE! THE CAR WAS SERVICED AND OIL CHANGED JUST A FEW MONTHS BEFORE THIS HAPPENED.  THIS IS A MAJOR DESIGN FLAW ON MAZDA'S PART, WHICH THEY SEEM TO KNOW ABOUT AND NEVER ISSUED A RECALL TO GET ALL THE CARS FIXED. REPLACING AN ENGINE IS NOT SOMETHING MOST FAMILIES HAVE THE BUDGET FOR OR EVEN THINK ABOUT WHEN THE CAR IS LESS THAN 10 YEARS OLD. THERE WERE NO WARNING SIGNS OF WATER PUMP FAILURE. MAZDA NEEDS TO WARN CX-9 OWNERS WITH TSB

24                                    CLASS ACTION COMPLAINT

OR RECALL THE WATER PUMP. THE WATER PUMP IS NOT BURIED INSIDE THE ENGINE AND CANNOT BE VISUALLY INSPECTED. HAVING A VEHICLE SHUT OFF ABRUPTLY WHEN TRAVELING AT HIGH SPEEDS IS A SERIOUS RISK FOR BOTH DRIVER, VEHICLE OCCUPANTS AND SURROUNDING MOTORISTS. I HOPE NHTSA TAKES THIS COMPLAINT SERIOUSLY AND TAKES ACTION BEFORE A SERIOUS OR FATAL INJURY OCCURS.

- **March 2, 2019 – 2014 Mazda CX-9**
  NHTSA ID Number: 11183665
  Incident Date February 21, 2019
  Consumer Location ARLINGTON, TX
  Vehicle Identification Number JM3TB2BA0E0
  **Summary of Complaint:**
  THE ENGINE SPUTTERED AND STOPPED WITHOUT WARNING WHILE DRIVING. IT TURNED OUT THE WATER PUMP WENT OUT AND SPILLED WATER INTERNALLY IN THE ENGINE. THE CAR HAS 73,000 MILES ON IT AND IT APPEARS THAT THIS HAS BEEN HAPPENING TO OTHER OWNERS OF THIS VEHICLE ROUTINELY, AND MAZDA HAS KEPT THIS DESIGN FLAW AND SAFETY CONCERN A SECRET. IT IS COSTING OVER $2,200 TO REPAIR, AND I BELIEVE THAT MAZDA SHOULD BE HELD ACCOUNTABLE FOR IT. THANK YOU. (XXXX) PARTS OF THIS DOCUMENT HAVE BEEN REDACTED TO PROTECT PERSONALLY IDENTIFIABLE INFORMATION PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).

- **December 27, 2017 – 2012 Mazda CX-9**
  NHTSA ID Number: 11056892
  Incident Date December 20, 2017
  Consumer Location CYPRESS, TX
  Vehicle Identification Number JM3TB2CAXC0
  **Summary of Complaint:**
  IF WATER PUMP FAILES THE ENGINE WILL SHUT DOWN WITHOUT WARNING OR ANY TYPE OF CHECK ENGINE LIGHT OR ALERT. COOLANT WILL FLOOD CRANKCASE IMMEDIATELY AND RUIN THE ENGINE. THIS OCCURRED WHILE DRIVING CREATING A SERIOUS SAFETY ISSUE POTENTIALLY CAUSING A COLLISION.

CLASS ACTION COMPLAINT

1

2  • **September 8, 2018 – 2011 Mazda6**

3     NHTSA ID Number: 11128193

      Incident Date August 31, 2018

4     Consumer Location GLADSTONE, OR

      Vehicle Identification Number IYVHZ8CB2B5

5     **Summary of Complaint:**

6     VEHICLE HAS A 3.7L DURATEC ENGINE DESIGNED BY FORD. I
      WAS ENTERING THE HIGHWAY AT ABOUT 55MPH, CHECK

7     ENGINE LIGHT WENT ON, THEN VEHICLE SHUT OFF, AND I

8     LOST BOTH POWER AND STEERING. WAS ABLE TO GET TO
      SIDE OF THE HIGHWAY WITHOUT CRASHING. STEAM/SMOKE

9     WAS COMING OUT OF THE HOOD AND THE TEMP GAUGE

10    WAS PINNED AT H. DEALERSHIP ADVISED THAT COOLANT
      HAD GOTTEN MIXED WITH OIL AND ENGINE WAS

11    DESTROYED. COST TO REPAIR - $7400 USED $13K NEW

12    ENGINE. TOLD IT WAS NOT DU ETO ANY NEGLECT OR
      MAINTENANCE ISSUE. IT WAS A WATER PUMP FAILURE.

13    THERE IS A DESIGN FLAW IN THIS ENGINE.  THE WATER

14    PUMP IS INTEGRATED INTO THE ENGINE AND TIMING CHAIN.
      WHEN THE PUMP FAILS IT DAMAGES THE ENGINE,

15    ALLOWING COOLANT TO MIX WITH THE OIL. NUMEROUS

16    FORD AND MAZDA OWNERS HAVE HAD THIS PROBLEM BUT
      BECAUSE IT USUALLY HAPPENS AT OR AFTER 100K MILES

17    THE MANUFACTURERS DO NOT REPORT IT. THEY WILL ALSO

18    DO NOTHING TO HELP THE CUSTOMER WHO IS LEFT WITH A
      HUGE REPAIR BILL OR A TOTALED CAR. PLEASE HELP ME

19    AND OTHER OWNERS. I HAVE RESEARCH WITH THE NAMES

20    OF OTHER OWNERS WHO HAD THE SAME PROBLEM WITH
      THEIR FORD OR MAZDA.

21

22  • **July 18, 2018 – 2010 Mazda CX-9**

23    NHTSA ID Number: 11112186

      Incident Date July 15, 2018

24    Consumer Location LOWER MERION, PA

      Vehicle Identification Number JM3TB3MV2A0

25    **Summary of Complaint:**

26    WHILE TRAVELING 65MPH ON HIGH WITH FAMILY THE
      ENGINE SHUT DOWN, ENGINE LIGHT APPEARED AND WE

27    WERE NEARLY STRUCK BY ANOTHER VEHICLE WHEN

28    PULLING OVER. CX-9 WAS TOWED 75 MILES TO MECHANIC

26                                    CLASS ACTION COMPLAINT

WHO INFORMED US COOLANT ENTERED THE ENGINE FROM
FAILED WATER PUMP AND ENGINE NEEDS REPLACEMENT
($4000). MAZDA SERVICE MANAGE CONFIRMED THIS IS NOT
UNCOMMON AND CONFIRMED ENGINE WILL NEED TO BE
REPLACED. WHEN RESEARCHING CX-9 WATER PUMP
FAILURE ONLINE I FOUND MANY DISTURBING
TESTIMONIALS OF OTHER CX-0 OWNERS WITH SIMILAR
EXPERIENCES. THERE WERE NO WARNING SIGNS OF WATER
PUMP FAILURE. MAZDA NEEDS TO WARN CX-9 OWNERS
WITH TSB OR RECALL THE WATER PUMP. THE WATER PUMP
IS NOT BURIED INSIDE THE ENGINE AND CANNOT BE
VISUALLY INSPECTED. HAVING A VEHICLE SHUT OFF
ABRUPTLY WHEN TRAVELING AT HIGH SPEEDS IS A SERIOUS
RISK FOR BOTH DRIVER, VEHICLE OCCUPANTS AND
SURROUNDING MOTORISTS. I HOPE NSTSA TAKES THIS
COMPLAINT SERIOUSLY AND TAKES ACTION BEFORE A
SERIOUS OR FATAL INJURY OCCURS.

- **February 5, 2018– 2011 Mazda CX-9**
  NHTSA ID Number: 11067353
  Incident Date February 5, 2018
  Consumer Location SAN DIEGO, CA
  Vehicle Identification Number JM3TB2CA3B0
  **Summary of Complaint:**
  MAZDA CX-9 2011 HAS UN-DETECTED WATER PUMP LEAKS
  WHICH CAUSE TO ENGINE OVERHEAT AND EVENTUAL
  ENGINE DEATH. MAXDA CORPORATE IS UNWILLING TO CO-
  OPERATE. CAR SUDDENLY CAME TO A HALT SHOWING
  ENGINE LIGHT ON.

- **January 13, 2018 – 2012 Mazda CX-9**
  NHTSA ID Number: 11062538
  Incident Date January 8, 2018
  Consumer Location NEWARK, DE
  Vehicle Identification Number JM3TB3CV0C0
  **Summary of Complaint:**
  WHILE DRIVING MY VEHICLE ON THE HIGHWAY MY CAR
  WOULD NOT ACCELERATE WHEN I PRESSED ON THE GAS.
  MY RPM'S WENT UP TO 4 AND WOULD DROP DOWN WHEN I
  LET OFF THE GAS. WITHIN MINUTES MY STEERING WHEEL
  LOCKED UP AND THE CAR BASICALLY SHUT DOWN. I HAD

TO TRY AND DRIFT TO THE SHOULDER IN HIGH SPEED TRAFFIC. WHEN I GOT TO THE SHOULDER THE CAR STARTED SMOKING. I HAD THE CAR TOWED TO THE MAZDA DEALERSHIP. THEY TOLD ME MY WATER PUM WENT AND LEAKED FLUID THROUGHOUT THE ENGINE, RUESULTING IN ME NEEDING A NEW $8,000 ENGINE. THEY TOLD ME THAT MAZDA DESIGNED THE CX9 WHERE THE WATER PUM IS IN THE ENGINE BLOCK BEHIND THE TIMING BELT AND IT IS NOT SOMETHING THEY CAN EASILY INSPECT WHEN I BRING MY CAR IN FOR SERVICE. SO WHEN A WATER PUMP GOES ON THESE MAZDA CX-9'S IT REULSTS IN THE CONSUMER NEEDING A WHOLE NEW ENGINE. THEY ALSO STATED THAT THERE ARE NO INDICATORS THAT WILL NOTIFY YOU IF THERE IS A PROBLEM WITH THE WATER PUMP TO AVOID THIS FROM HAPPENING. THE SAFETY ISSUE IS THAT MY CAR WAS ON THE HIGHWAY AT THE TIME THIS OCCURRED WITH VEHICLES GOING AT HIGH SPEEDS. MY CAR BASICALLY SLOWED DOWN SIGNIFICANTLY AND EVENTUALLY STOPPED AND I COULD NOT TURN THE STEERING WHEEL TO BETTER ASSIST ME GETTING OUT OF THE WAY OF THE HIGH SPEED TRAFFIC.

- **July 22, 2018 – 2010 Mazda CX-9**
  NHTSA ID Number: 11112905
  Incident Date April 11, 2018
  Consumer Location CHELMSFORD, MA
  Vehicle Identification Number JM3TB3MV9A0
  **Summary of Complaint:**
  CAR WAS ALWAYS SERVICED REGULARLY. ONE DAY I WAS ABOUT TO GET ON A BUSY HIGHWAY INTO BOSTON JUST BEFORE RUSH HOUR, WHEN MY CAR SUDDENLY MADE A LOUD KNOCKING NOISE IN THE ENGINE. I IMMEDIATELY PULLED OVER AND THEN THE CAR SHUT OFF. NO LIGHTS EVER CAME ON BEFOREHAND AND NO LEAKING OF FLUIDS EVER HAPPENED BEFORE INCIDENT. HAD IT TOWED TO MAZDA DEALER, WHO AT FIRST TOLD THEY WOULDN'T BE ABLE TO EVEN LOOK AT IT FOR 6 DAYS. FRIEND WORKED THERE AND GOT MECHANICS TO LOOK AT IT RIGHT AWAY. THEY SAID THE WATER PUMP WAS GONE AND IT WOULD $3500 TO FIX IT. THE WORST PART OF IT WAS, THAT ACCORDING TO THE DEALERSHIP, THEY KNOW THERE IS A

CLASS ACTION COMPLAINT

FLAW WITH WHERE THE WATER PUMP IS LOCATED IN THE ENGINE, AND THAT BECAUSE OF THIS THE ENGINE WAAS MOST LIKELY GONE AS WELL.   IN THEIR WORDS, THEY HAVE REPLACED MANY WATER PUMPS IN THESE SAME SITUATIONS OVER THE YWEARS, AND ONLY ONE CAR DIDN'T NEED A NEW ENGINE. THEY RECOMMENDED FIXING THE WATER PUMP, THEN PUTTING IN A NEW ENGINE--$10,000 WORTH OF WORK. WE BOUGHT THIS CAR CERTIFIED PRE-OWNED FROM A DEALERSHIP. IT ONLY HAD 108,000 MILES ON IT AND THE EXTENDED WARRANTY HAD JUST ENDED 8 MONTHS BEFORE. I HAVE NUMEROUS OTHER CARS IN MY LIFETIME AND NEVER HAVE I HAD TO REPLACE AN ENTIRE ENGINE, JUST BECAUSE THE WATER PUMP WAS GONE! THIS CAR SHOULD HAVE BEEN WORTH ABOUT $9K-$11K FOR RESALE, AND INSTEAD MAZDA WANTED TO GIVE US $2K TOWARDS A DOWN PAYMENT FOR LEASING ANOTHER OF THEIR CARS. THEY GAVE US A RATE THAT THEY CLAIMED WAS A SPECIAL ONE, HOWEVER, I FOUND OUT THAT I COULD GET AN EVEN BETTER ONE ONLINE MYSELF! WHEN WE CALLED THEM ON THIS AND WE SAID WE WERE TIRED OF DEALING WITH THIS, THEY SAID THEY WOULDN'T TALK WITH US ANYMORE. VERY DISAPPOINTING TO A FAMILY THAT CAREFULLY WATCHES ITS MONEY AND BUDGETS FOR EMERGENCIES, BUT WEREN'T PREPARED TO NEED AN ENTIRELY NEW CAR BEFORE THE OTHER WAS EVEN PAID FOR! SO UNFAIR!

- **January 18, 2019 – 2010 Mazda CX-9**
  NHTSA ID Number: 11170858
  Incident Date January 12, 2019
  Consumer Location CARSON CITY, NV
  Vehicle Identification Number JM3TB3MA8A0
  **Summary of Complaint:**
  ON JAN 12, 2019 WE WERE DRIVING HOME AND WITHOUT WARNING THE TEMPERATURE GAUGE SPIKED AND THE CHECK ENGINE LIGHT CAME ON. THE ENGINE STOPPED AND I WAS ABLE TO GET THE VEHICLE OFF THE ROAD. I LOOKED TO SEE THE COOLANT RESERVOIR WAS EMPTY. I WAS ABLE TO REFILL IT, THINKING POSSIBLE THERE WAS A LEAK. IT GOT US HOME SAFELY. THE NEXT DAY, ENROUTE TO THE RADIATOR SHOP; THE SAME THING HAPPENED. AFTER A

CLASS ACTION COMPLAINT

TOW HOME, THEN A TOW TO THE RADIATOR SHOP AND
EVENTUALLY A TOW HOME, IT WAS DIAGNOSED AS A
WATER PUMP FAILURE AND NOW A NEW ENGINE IS THE
ANSWER FOR THE REPAIR. THERE WAS ABSOLUTELY NO
WARNING TO THIS HAPPENING AND THE WATER PUMP IS
INTERNAL. I UNDERSTAND THAT THE PUMP CAN/WILL
WEAR OUT. I GET IT. WHERE IT'S LOCATED IS A JOKE AND
I'VE READ IT'S AT LEAST A $1500 - $2000 FIX, JUST FOR THE
PUMP REPLACEMENT. THE MAIN ISSUE IS THE NO WARNING
WHATSOEVER!

- **April 27, 2019 – 2007 Mazda CX-9**
  NHTSA ID Number: 11204124
  Incident Date April 3, 2019
  Consumer Location GROVER, NC
  Vehicle Identification Number JM3TB28Y270
  **Summary of Complaint:**
  I WAS DRIVING HOME ON A BUSY INTERSTATE WHEN MY
  CAR STARTED SHAKING AND LOSING POWER. THEY CAR
  LOST ALL POWER AND I COULDN'T TURN THE STEERING
  WHEEL TO GET OUT OF THE WAY OF OTHER DRIVERS. I WAS
  ALMOST HIT MORE THAN ONCE BY OTHER CARS. AFTER
  HAVING THE VEHICLE TOWED AND A LICENSED MECHANIC
  LOOK AT IT, I WAS TOLD THE WATER PUMP FAILED AND
  LEAKED WATER AND COOLANT INTO MY ENGINE WHICH
  COMPLETELY DISABLED MY ENGINE.

- **March 26, 2019 – 2010 Mazda CX-9**
  NHTSA ID Number: 11191697
  Incident Date March 26, 2019
  Consumer Location LA PORTE, TX
  Vehicle Identification Number JM3TB2MA0A0
  **Summary of Complaint:**
  VEHICLE WAS IN MOTION ON A BUSY STREET WHEN
  SUDDENLY THE CHECK ENGINE LIGHT CAME ON THE AC
  STOPPED COMING OUT COLD, AND THE CAR STOPPED
  ACCELERATING WOULD ONLY GO UP TO 20 MPC, THE CAR
  STARTED MAKING RATTLING NOISES AND I DROVE BY TO
  THE NEAREST PLACE TO STOP AND WATER FELL OUT OF
  THE FRONT BOTTOM RIGHT OF THE CAR.. THE WATER PUMP
  MESSED UP

1

2
- **March 10, 2019 – 2012 Mazda CX-9**
3
NHTSA ID Number: 11185636
Incident Date February 21, 2019
4
Consumer Location BRONX, NY
5
Vehicle Identification Number JM3TB2DV4C0
**Summary of Complaint:**
6
VEHICLE STALLED WHILE EXITING THE HIGHWAY, ENGINE
7
LIGHT ON, NOISE FROM TIMING CHAIN AREA, VEHICLE
OVERHEATS, WATER PUMP FAILURE PUSHES ANTIFREEZE
8
INTO THE OIL COMPARTMENT CAUSING THE ENGINE TO GET
DAMAGES WITHIN MINUTES WHITEOUT A WARNING. THIS IS
9
OBVIOUSLY A MAJOR VERY EXPENSIVE SAFETY ISSUE.

10
- **March 1, 2019 – 2011 Mazda CX-9**
11
NHTSA ID Number: 11193329
12
Incident Date January 1, 2019
Consumer Location JAMESTOWN, NY
13
Vehicle Identification Number JM3TB2BV5B0
14
**Summary of Complaint:**
MAZDA CX-9 HAS UN-DETECTED WATER PUMP LEAKS
15
WHICH CAUSE TO ENGINE OVERHEAT AND EVENTUAL
16
ENGINE DEATH. MAZDA CORPORATE IS UNWILLING TO CO-
OPERATE. CAR SUDDENLY CAME TO A HALT SHOWING
17
ENGINE LIGHT ON..AND I HAD TO REPLACE THE BRAKE
18
BOOSTER ALSO BECAUSE WHEN I WAS DRIVING THE
VEHICLE IT TURN OFF ON ME EVERYWHERE AND I HAD TO
19
PAY OUT OF MY POCKET AND IM STILL PAYING FOR THIS
20
VEHICLE RIGHT NOW MY VEHICLE IS IN A GARAGE BECAUSE
IS NOT DRIVABLE
21

22
- **February 21, 2019 – 2012 Mazda CX-9**
23
NHTSA ID Number: 11181656
Incident Date November 12, 2018
24
Consumer Location MUSKEGO, WI
25
Vehicle Identification Number JM3TB3CA9C0
**Summary of Complaint:**
26
I OWN A 2012 MAZDA XX9, WHICH I PURCHASED NEW. ON
27
OMONDAY MORNING (NOVEMBER 12, 2018) MY (CHECK
ENGINE LIGHT CAME ON) AND SO I TOOK IT IMMEDIATELY
28
TO THE DEALERSHIP FOR DIAGNOSIS. MY CAR WAS

RUNNING BEAUTIFULLY, SO I JUST ASSUMED WITH THE WEATHER CHAING, PERHAPS THE GAS CAP WASN'T TIGHTENED, AND THEY JUST NEEDED TO CLEAR THE CODS. IT TURNS OUT THE WATER PUMP FAILED AND APPARENTLY DESTROYED THE ENTIRE ENGINE. WHICH BECAME APPARENT AS I DROVE IT TO THE DEALERSHIP FOR DIAGNOSIS, PER THEIR RECOMMENDATION. MY CAR IS WELL MAINTAINED BASED ON THE DEALER RECOMMENDATIONS AND IS CONSISTENTLY SERVICED AT THE MAZDA DEALERSHIP. THE CAR IS IN FANTASTIC CONDITION WITH ONLY 90,000. AS AN OWNER, I DID EVERYTHING BY THE BOOK IN TERMS OF MAINTENANCE FOR MY CAR. I AM LETTING YOU KNOW, MAZDA HAS A SERIOUS PROBLEM AND IT'S A SAFETY ISSUE, AS WELL. IF A WATER PUMP CAN JUST FAIL WITHOUT WARNING AND COMPLETELY SHUT DOWN AN ENGINE, THAT'S NOT GOOD. IT THINK THIS IS FAR MORE DANGEROUS THAN THE AIR BAG RECALL, WHICH IS ONLY A CONCERN IF YOU GET IN AN ACCIDENT. THERE IS NO WARNING ON THE WATER PUMP FAILING, AS IT'S SELF-CONTAINED WITHIN THE POWER TRAIN AND THE ONLY WAY TO CHECK THIS PART IS BY REMOVING THE ENTIRE ENGINE, WHICH LEADS ME TO BELIEVE THIS PART WAS NOT DESIGNED TO BE A WEAR PART. IT'S AN ENGINEERING DESIGN FLAW, THAT CAN CAUSE BODILY HARM IF IT FAILS, BECAUSE IT TAKES OUT THE ENTIRE ENGINE AND YOU CONTORL OVER THE VEHICLE.

- **January 28, 2019 – 2012 Mazda CX-9**
  NHTSA ID Number: 11172673
  Incident Date January 23, 2019
  Consumer Location WEST CHESTER, PA
  Vehicle Identification Number JM3TB3BV2C0
  **Summary of Complaint:**
  WHILE DRIVING MY MAZDA CAR, IT SUDDENLY STARTED BUCKING AND CHECK ENGINE LIGHT CAME ON. CAR WAS TOWED TO THE DEALERSHIP. PER MAZDA MECHANIC, WATER PUMP MALFUNCTIONED FORCING COOLANT INTO THE ENGINE. FEEL THIS POSES A SIGNIFICANT SAFETY ISSUE AS THERE WAS VERY LITTLE WARNING POSING ROKS OF ACCIDENT, ENGINE OVERHEATING AND POTENTIAL FIRE.

32                                        CLASS ACTION COMPLAINT

THIS APPEARS TO BE A COMMON ISSUE AS MULTIPLE OTHER POSTS REPORTED

- **November 14, 2018 – 2013 Mazda CX-9**
  NHTSA ID Number: 11067353
  Incident Date November 13, 2018
  Consumer Location CHANTILLY, VA
  Vehicle Identification Number JM3TB3CV3D0
  **Summary of Complaint:**
  THE VEHICLE WAS BEING DRIVEN AT THE TIME ON A BUSY CITY STREET. WE NOTICED SOME NOISES WHICH WAS SOUNDING LIKE METAL CLANKING. THIS BECAME LOUDER IMMEDIATELY IN THE SPAN OF 5MINS AND THE TEMPERATURE SENSOR WENT OFF ON THE DASHBOARD. THE VEHICLES WAS BECOMING UNRESPONSIVE TO BRAKES IN THE MIDDLE OF COMMUTE TRAFFIC. LUCKILY WE GOT THE VEHICLE STOPPED ON THE SIDE OF THE SHOULDER WITHOUT ANY INJURIES TO ANYONE. UPON GETTING THE VEHICLE CHCKED BY AN ASE CERTIFIED MECHANIC, IT WAS DIAGNOSED THAT THE INTERNAL WATER PUMP (SUGGESTED AS A BAD DESIGN BY THEM AND MANY OTHERS HAVE REPORTED SIMILAR STALLING SITUATIONS ON THE INTERNET) SOMEHOW MIXED UP THE COOLANT AND THE OIL FORMING A SLUDGE AND WAS UNABLE TO CONTROL THE TEMPERATURE AND LACK OF LUBRICATION CAUSED THE METAL CLANKING. THIS HAS RENDERED THE VEHICLE COMPLETELY INOPERABLE ONLY AFTER 5YEARS. SEEMS LIKE ENGINE NEEDS TO BE REPLACED. THIS RAISES SERIOUS SAFETY CONCERN THAT IS THIS HAPPENED ON A HIGHWAY OR IN THE MIDST OF TRAFFIC, THERE COULD BE SERIOUS LOSS OF LIFE OR INJURY TO THE PASSENGERS. UPON CHECKING WITH MAZDA, IT WAS RULED THAT THERE IS NO RECALL FOR SOMETHING LIKE THIS YET. THIS STANCE FROM MAZDA IS BEING UTTERLY NOT RESPONSIBLE FOR THEIR DESIGN FLAWS AND PUTTING A PRODUCT OUT IN THE MARKET.

79.     Upon information and belief, Defendants also exchanged reports from dealers and consumers, and NHTSA complaints regarding the Water Pump Defect in

CLASS ACTION COMPLAINT

Mazda and Ford vehicles incorporating the Cyclone Engine with Ford. As a result, Defendants also received the following NHTSA complaint:

- **December 18, 2015 – 2010 Ford Flex**
  NHTSA ID Number: 10811218
  Incident Date December 15, 2015
  Consumer Location LAKE ELSINORE, CA
  Vehicle Identification Number 2FMHK6CC9AB
  **Summary of Complaint:**
  WHILE WAITING AT A LIGHT IN MY 2010 FORD FLEX THE ENGINE WAS IDLING ROUGH, AFTER THE SIGNAL TURNED GREEN THE POWER SEEMED LOW AND SLUGGISH AS I ACCELERATED. WHEN I WAS AT ABOUT 45 MPH THE ENGINE POWER RETURNED AND SEEMED MORE NORMAL, SUDDENLY WITHOUT NOTICE THE ENGINE TURNED OFF AND ALL DASH LIGHTS ILLUMINATED. I WAS ABLE TO PULL INTO A DRIVE WAY BUT WAS VERY HARD AS THERE WAS NO POWER STEERING. I WAS ABLE TO COAST TO A STOP SAFELY. ONCE STOPPED THERE WAS A VERY STRONG SMELL OF COOLANT. I OPENED THE HOOD AND FOUND A LARGE AMOUNT OF COOLANT ON RIGHT SIDE OF ENGINE. MY CAR WAS TOWED TO MY HOME TO FIGURE OUT WHAT THE ISSUE COULD BE. ON FURTHER INSPECTION IT IS SUSPECTED THAT THE WATER PUMP FAILED WHICH IS INTERNAL TO THE TIMING CHAIN COVER AND THEREFORE DUMPED A LARGE AMOUNT OF COOLANT INTO THE CRANKCASE WHICH THEN CONTAMINATED THE ENGINE OIL AND OVER FILLED THE OIL PAN. I WAS FORTUNATE THAT THIS OCCURRED ON A CITY STREET AND NOT ON THE FREEWAY AS THIS COULD HAVE CAUSED A MAJOR ACCIDENT. ON FURTHER RESEARCH I HAVE FOUND THIS HAS OCCURRED MANY TIMES. THE ENGINE IN QUESTION IS THE CYCLONE ENGINE AND IS FORDS LATEST V6 FAMILY OF GASOLINE ENGINES INTRODUCED IN 2006, AND IS KNOWN AS THE DURATEC 35 WHICH DISPLACES 3.5 L, THE DURATEC 37 WHICH DISPLACES 3.7L AND THE ECOBOOST 35 WHICH IS A TWIN TURBO CHARGED VARIANT OF THE DURATEC 35, THESE ENGINES ARE INSTALLED IN THE FOLLOWING VEHICLES, 2007–PRESENT FORD EDGE, 2010–2012 FORD FUSION SPORT, 2011–PRESENT FORD MUSTANG, 2009–PRESENT FORD FLEX, 2010–

34                                    CLASS ACTION COMPLAINT

PRESENT FORD TAURUS SHO, 2013–PRESENT POLICE INTERCEPTOR SEDAN, 2011–PRESENT FORD EXPLORER, 2013–PRESENT FORD POLICE INTERCEPTOR UTILITY, 2011–PRESENT FORD F-150, 2015–PRESENT FORD EXPEDITION/EXPEDITION EL, 2014–PRESENT FORD TRANSIT, 2015–PRESENT LINCOLN NAVIGATOR/NAVIGATOR L, 2010–PRESENT LINCOLN MKS, 2010–PRESENT LINCOLN MKT, 2007–PRESENT LINCOLN MKX, 2007–PRESENT MAZDA CX-9(MZI).

80. Numerous owners and lessees of Class Vehicles have also posted about their experiences with the Water Pump Defect in the Class Vehicles on internet forums created to discuss Mazda cars, such as Mazdas247.com. Upon information and belief, these complaints, detailing both the failures and the responses of Defendants and Mazda authorized dealerships, began as early as 2010.

81. Due to the extreme expense and often delays in the availability of parts, particularly since Mazda is no longer manufacturing new Cyclone Engines, many owners and lessees of Class Vehicles decline to repair the engines and instead opt to trade in the vehicles for significantly reduced values.

82. Mazda stopped incorporating the Cyclone Engine into its vehicles as of the 2016 model year, immediately after Ford finished its total divestiture of Mazda shares. However, complaints from current owners to Mazda and to NHTSA about water pump failures continue to this day.

V. TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

83. Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Water Pump Defect and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the Class Vehicles and could not reasonably discover the Water Pump Defect or Defendants' deception with respect to the defect.

84. Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants

1
2
3
4
5
6
7

were concealing a defect and/or that the Class Vehicles contained a Water Pump Defect and corresponding safety risk.  As alleged herein, the existence of the Water Pump Defect was material to Plaintiffs and members of the Classes at all relevant times.  Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence the existence of the Water Pump Defect or that Defendants were concealing the defect.

8
9
10
11

85.    At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality and grade of the Class Vehicles and to disclose the Water Pump Defect and corresponding safety risk.

12
13
14

86.    Defendants knowingly, actively and affirmatively concealed the facts alleged herein.    Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active, and affirmative concealment.

15
16
17

87.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations in defense of this action.

18

**VI.    CLASS ACTION ALLEGATIONS**

19
20

88.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Class and Sub-Classes:

21
22

**Nationwide Class**: All persons or entities in the United States who purchased, leased or own a Class Vehicle (the "Nationwide Class" or "Class");

23
24
25
26

**California Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of California and all persons or entities in the State of California who purchased, leased or own a Class Vehicle (the "California Sub-Class");

27
28

**Colorado Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Colorado and all persons or entities in the State of

CLASS ACTION COMPLAINT

Colorado who purchased, leased or own a Class Vehicle (the "Colorado Sub-Class");

**Florida Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Florida and all persons or entities in the State of Florida who purchased, leased or own a Class Vehicle (the "Florida Sub-Class");

**Illinois Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Illinois and all persons or entities in the State of Illinois who purchased, leased or own a Class Vehicle (the "Illinois Sub-Class");

**Louisiana Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Louisiana and all persons or entities in the State of Louisiana who purchased, leased or own a Class Vehicle (the "Louisiana Sub-Class);

**Massachusetts Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the Commonwealth of Massachusetts and all persons or entities in the Commonwealth of Massachusetts who purchased, leased or own a Class Vehicle (the "Massachusetts Sub-Class");

**Michigan Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Michigan and all persons or entities in the State of Michigan who purchased, leased or own a Class Vehicle (the "Michigan Sub-Class");

**North Carolina Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of North Carolina and all persons or entities in the State of North Carolina who purchased, leased or own a Class Vehicle (the "North Carolina Sub-Class");

**Pennsylvania Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Pennsylvania and all persons or entities in the State of Pennsylvania who purchased, leased or own a Class Vehicle (the "Pennsylvania Sub-Class");

**Texas Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Texas and all persons or entities in the State of Texas who purchased, leased or own a Class Vehicle (the "Texas Sub-Class"); and

37                                          CLASS ACTION COMPLAINT

1
2
3

**Virginia Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Virginia and all persons or entities in the State of Virginia who purchased, leased or own a Class Vehicle (the "Virginia Sub-Class").

4   89.   Excluded from the Class and Sub-Classes are Defendants and their

5   parents, subsidiaries and corporate affiliates.  Plaintiffs reserve the right to revise the

6   definition of the Class and Sub-Classes based upon subsequently discovered

7   information and reserve the right to establish additional subclasses where appropriate.

8   The Class and Sub-Classes are collectively referred to herein as the "Classes."

9   90.   The Classes are so numerous that joinder of all members is

10   impracticable.   Plaintiffs believe that there are at least thousands of proposed

11   members of the Classes throughout the United States.

12   91.   Common questions of law and fact exist as to all members of the Classes

13   and predominate over any issues solely affecting individual members of the Classes.

14   The common and predominating questions of law and fact include, but are not limited

15   to:

16   • Whether the Class Vehicles contain the Water Pump Defect;

17
18   • Whether the Water Pump Defect is a design defect and/or a defect in material, manufacturing and/or workmanship;

19
20   • Whether the Water Pump Defect in the Class Vehicles presents a safety risk;

21
22   • Whether and when Defendants knew or should have known about the Water Pump Defect;

23
24   • Whether Defendants knew or should have known that the Water Pump Defect in Class Vehicles presents a safety risk;

25   • Whether Defendants had a duty to disclose the Water Pump Defect;

26
27   • Whether Defendants breached their duty to disclose the Water Pump Defect;

28   / / /

- Whether Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the Water Pump Defect;

- Whether Defendants negligently omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the Water Pump Defect;

- Whether Defendants made material omissions concerning the standard, quality or grade of the Class Vehicles and/or the Water Pump Defect;

- Whether members of the Classes would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the Water Pump Defect;

- Whether members of the Classes would have purchased or leased a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the Water Pump Defect;

- Whether Defendants actively concealed material facts from Plaintiffs and members of the Classes in order to, *inter alia*, sell more Class Vehicles and/or transfer repair or replacement costs to Plaintiffs and members of the Classes;

- Whether Defendants breached express and/or implied warranties to Plaintiffs and members of the Classes;

- Whether Defendants violated the warranty against redhibitory defects, La. Civ. Code Art. 2520, 2524;

- Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

- Whether Defendants violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.*;

- Whether Defendants violated the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

CLASS ACTION COMPLAINT

1    •  Whether Defendants violated the Unfair Competition Law, Cal. Bus. &
2      Prof. Code § 17200, *et seq*.;

3    •  Whether Defendants violated the Colorado Consumer Protection Act,
4      Colo. Rev. Stat. § 6-1-101, *et seq*.;

5    •  Whether Defendants violated the Florida Deceptive & Unfair Trade
6      Practices Act, Fla. Stat. § 501.201*, et seq*.;

7    •  Whether Defendants violated the Illinois Consumer Fraud and
8      Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq*.;

9    •  Whether Defendants violated the Louisiana Product Liability Act, L.A.
10      R.S. 9:2800.51, *et seq*.;

11    •  Whether Defendants violated the Massachusetts Consumer Protection
12      Act, Mass. Gen. Laws 93A, § 1, *et seq.*

13    •  Whether Defendants violated the Michigan Consumer Protection Act,
14      Mich. Comp. Laws § 445.903, *et seq*.;

15    •  Whether Defendants violated the North Carolina Deceptive Trade
16      Practices Act, N.C. Gen. Stat § 75-1.1, *et seq*.;

17    •  Whether Defendants violated the Pennsylvania Unfair Trade Practices
18      and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*.;

19    •  Whether Defendants violated the Texas Deceptive Trade Practice-
20      Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq*.;

21    •  Whether Defendants violated the Virginia Consumer Protection Act,
22      Va. Code Ann. §§ 59.1-196, *et seq*.; and

23    •  Whether damages, restitution, equitable, injunctive, compulsory or
24      other relief are warranted.

25    92.  Plaintiffs' claims are typical of the claims of the Classes Plaintiffs seek
26 to represent.  As alleged herein, Plaintiffs and the Classes sustained damages arising
27 out of the same unlawful actions and conduct by Defendants.

28 */ / /*

93.     Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other members of the Classes.

94.     Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes.  Plaintiffs will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

95.     Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

96.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

97.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

98.     The Classes may also be certified under Rule 23(b)(2) because Defendants has acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

99.     The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have

41                    CLASS ACTION COMPLAINT

a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

100. The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers and/or on the internet.

## VII. CLAIMS FOR RELIEF

### A. California Counts

**COUNT I**
**Negligent Misrepresentation**
**(On behalf of the California Sub-Class against MNAO and MMC)**

101. Plaintiff Wright Schneider incorporates and re-alleges each preceding paragraph as though fully set forth herein.

102. Plaintiff Wright Schneider brings this count on behalf herself and the members of the California Sub-Class.

103. Defendants owed a duty to disclose the Water Pump Defect and its corresponding safety risk to Plaintiff Wright Schneider and members of the California Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the associated risks.

104. Defendants negligently omitted material facts including the standard, quality or grade of the Class Vehicles and/or presence of the Water Pump Defect in the Class Vehicles. As a direct result of Defendants' negligent conduct, Plaintiff Wright Schneider and members of the California Sub-Class have suffered actual damages.

105. The Water Pump Defect is material to Plaintiff Wright Schneider and members of the California Sub-Class because Plaintiff Wright Schneider and members of the California Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Water Pump Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk. No

CLASS ACTION COMPLAINT

reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

106.   Plaintiff Wright Schneider and members of the California Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and/or existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff Wright Schneider and members of the California Sub-Class justifiably relied upon Defendants' negligent omissions of material facts.

107.   As a direct and proximate result of Defendants' negligent omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk, Plaintiff Wright Schneider and members of the California Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## COUNT II
### Breach of Express Warranty
### (On behalf of the California Sub-Class against MNAO)

108.   Plaintiff Wright Schneider incorporates and re-alleges each preceding paragraph as though fully set forth herein.

109.   Plaintiff Wright Schneider brings this count on behalf of herself and the California Sub-Class.

110.   Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to replace or service the water pumps.  Such representations formed the basis of the bargain in

CLASS ACTION COMPLAINT

Plaintiff Wright Schneider and members of the California Sub-Class's decisions to purchase or lease the Class Vehicles.

111.   Defendant MNAO also marketed the Class Vehicles as safe, built to last and reliable vehicles. These statements helped conceal the existence of the Water Pump Defect and its corresponding safety risk from Plaintiff Wright Schneider and members of the California Sub-Class.

112.   Defendant MNAO is and was at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

113.   With respect to leases, Defendant MNAO is and was at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

114.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

115.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO provides maintenance schedules and warranty guides which omit any mention of the water pumps as a component requiring routine inspection, service, or replacement.

116.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO also provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendant MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[14]  Under the warranties provided to Plaintiff Wright Schneider and members of the California Sub-Class, Defendant MNAO promised to repair or replace covered components arising out of

---

[14]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendant MNAO breached these warranties.

117.   Defendant MNAO's warranties formed a basis of the bargain that was reached when Plaintiff Wright Schneider and members of the California Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Water Pump Defect, Defendants knew or should have known that the majority of the water pump failures (and corresponding engine damage) occur outside of the warranty periods.

118.   Plaintiff Wright Schneider and members of the California Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect and associated safety risk, which were known and concealed by Defendant MNAO.  Despite the existence of the warranties, Defendant MNAO failed to adequately inform Plaintiff Wright Schneider and members of the California Sub-Class that the Class Vehicles contained the Water Pump Defect and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

119.   Defendant MNAO breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

120.   On information and belief, Defendant MNAO has not suitably repaired or replaced the Water Pump Defect free of charge for Plaintiff Wright Schneider and members of the California Sub-Class despite the existence of the defect in the Class Vehicles at the time of sale or lease.

121.   Defendant MNAO further breached its express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the

1  water pump although Defendant MNAO knew of the Water Pump Defect and that the
2  water pump required periodic inspection and service.

3       122. Class Vehicles were not of merchantable quality and were unfit for the
4  ordinary purposes for which passenger vehicles are used because of engine materials,
5  workmanship, design and/or manufacturing defects which cause engine failure and/or
6  failure to perform as warranted.

7       123. Defendant MNAO was provided notice of the Water Pump Defect by
8  numerous consumer complaints made to its authorized dealers nationwide,
9  complaints to NHTSA and through its own testing. Affording Defendant MNAO a
10  reasonable opportunity to cure its breach of written warranties would be unnecessary
11  and futile here because Defendant MNAO has known of and concealed the Water
12  Pump Defect and has failed to provide a suitable repair or replacement of the Water
13  Pump Defect free of charge within a reasonable time.

14       124. Defendant MNAO was further provided notice by Plaintiff Wright
15  Schneider of its breach of express warranties by notice via letter dated May 13, 2019.
16  Plaintiff Wright Schneider also provided notice by presenting her Mazda CX-9 for
17  repair to Marin Mazda on May 20, 2019 in San Rafael, California. Upon information
18  and belief, Marin Mazda is an authorized dealer of Defendant MNAO and its duly
19  authorized agent to perform warranty repairs. Despite these notices, Defendant
20  MNAO did not cure its breach of express warranties and failed to provide a suitable
21  repair or replacement of the Water Pump Defect free of charge within a reasonable
22  time.

23       125. Any attempt by Defendant MNAO to disclaim or limit recovery to the
24  terms of the express warranties is unconscionable and unenforceable here.
25  Specifically, Defendant MNAO's warranty limitation is unenforceable because it
26  knowingly sold or leased a defective product without informing consumers about the
27  defect. The time limits contained in Defendant MNAO's warranty periods were also
28  unconscionable and inadequate to protect Plaintiff Wright Schneider and members of

CLASS ACTION COMPLAINT

1   the California Sub-Class.   Among other things, Plaintiff Wright Schneider and

2   members of the California Sub-Class did not determine these time limitations, the

3   terms of which unreasonably favored Defendant MNAO.   A gross disparity in

4   bargaining power existed between Defendant MNAO and members of the Classes,

5   and Defendant MNAO knew or should have known that the Class Vehicles were

6   defective at the time of sale or lease and that the Water Pump Defect posed a safety

7   risk.

8          126.   Further, the limited warranty promising to repair and/or correct a

9   manufacturing defect fails in its essential purpose because the contractual remedy is

10  insufficient to make Plaintiff Wright Schneider and members of the California Sub-

11  Class whole because, on information and belief, Defendant MNAO has failed and/or

12  has refused to adequately provide the promised remedies within a reasonable time.

13         127.   Defendant MNAO knew that the Class Vehicles were inherently

14  defective and did not conform to their warranties, and Plaintiff Wright Schneider and

15  members of the California Sub-Class were induced to purchase or lease the Class

16  Vehicles under false and/or fraudulent pretenses.

17         128.   Defendant's MNAO warranties formed a basis of the bargain that was

18  reached when Plaintiff Wright Schneider and members of the California Sub-Class

19  purchased or leased their Class Vehicles.

20         129.   Plaintiff Wright Schneider and members of the California Sub-Class

21  experienced the existence of the Water Pump Defect within the warranty periods but

22  had no knowledge of the existence of the defect, which was known and concealed by

23  Defendant MNAO.  Despite the existence of the warranties, Defendant MNAO failed

24  to inform Plaintiff Wright Schneider and members of the California Sub-Class that

25  the Class Vehicles contained the Water Pump Defect during the warranty periods,

26  and, thus, wrongfully transferred the costs of repair or replacement of the water pump

27  and damaged engine parts to Plaintiff Wright Schneider and members of the

28  California Sub-Class.

CLASS ACTION COMPLAINT

130.   Because of the Water Pump Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

131.   As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiff Wright Schneider and members of the California Sub-Class have been damaged in an amount to be determined at trial.

132.   Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiff Wright Schneider and members of the California Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Wright Schneider and members of the California Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
### Breach of Implied Warranty of Merchantability
### (On behalf of the California Sub-Class against MNAO and MMC)

133.   Plaintiff Wright Schneider incorporates and re-alleges each preceding paragraph as though fully set forth herein.

134.   Plaintiff Wright Schneider brings this count on behalf of herself and the California Sub-Class.

135.   Plaintiff Wright Schneider and members of the California Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.   At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.   Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

/ / /

/ / /

CLASS ACTION COMPLAINT

136. Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

137. With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

138. The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

139. Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

140. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached the implied warranty of merchantability.

141. Through its maintenance schedules, Defendants further represented that the water pump would not need repair or replacement and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules. Defendants cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

142. Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

143.   Defendants were further provided notice by Plaintiff Wright Schneider of their breach of implied warranties by notice via letter dated May 13, 2019 directed to MNAO. Plaintiff Wright Schneider also provided notice by presenting her Mazda CX-9 for repair to Marin Mazda on May 20, 2019 in San Rafael, California.  Upon information and belief, Marin Mazda is an authorized dealer of MNAO and its duly authorized agent to perform warranty repairs.  Despite these notices, Defendants did not cure the breach of implied warranties and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

144.   As a direct and proximate result of Defendants breach of the implied warranty of merchantability, Plaintiff Wright Schneider and members of the California Sub-Class have been damaged in an amount to be proven at trial.

145.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiff Wright Schneider and members of the California Sub-Class.  Among other things, Plaintiff Wright Schneider and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

146.   Plaintiff Wright Schneider and members of the California Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

147.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

CLASS ACTION COMPLAINT

**COUNT IV**
**Violation of the Song-Beverly Consumer Warranty Act,**
**Cal. Civ. Code § 1791 *et seq*.**
**(On behalf of the California Sub-Class against MNAO and MMC)**

148.   Plaintiff Wright Schneider incorporates and re-alleges each preceding paragraph as though fully set forth herein.

149.   Plaintiff Wright Schneider brings this count on behalf of herself and the California Sub-Class.

150.   Plaintiff Wright Schneider and members of the California Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

151.   Defendant MNAO provided Plaintiff Wright Schneider and members of the California Sub-Class with one or more express warranties.  For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[15] Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, MNAO breached these warranties.

152.  Plaintiff Wright Schneider and members of the California Class experienced the Water Pump Defect within the warranty periods but Defendants failed to inform Plaintiff Wright Schneider and members of the California Sub-Class

---

[15]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet).  *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

of the existence of the Water Pump Defect and associated safety hazard, and failed to provide a suitable repair or replacement of the defective water pump and/or any damaged engine components free of charge within a reasonable time.

153.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

154.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached the implied warranty of merchantability.

155.   Through its maintenance schedules, Defendant MNAO further represented that the water pump would not need repair or replacement and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules.  MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

156.   Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

157.   Defendants breached their express and/or implied warranties in violation of Cal. Civ. Code § 1791 *et seq*.

158.   As a direct and proximate result of Defendants breach of their express and/or implied warranties, Plaintiff Wright Schneider and members of the California Sub-Class have been damaged in an amount to be proven at trial.

159.   Plaintiff Wright Schneider and members of the California Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

160.   Plaintiff Wright Schneider and members of the California Sub-Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of Defendants' willful conduct alleged herein.  Plaintiff Wright Schneider and members of the California Sub-Class also seek reimbursement, replacement of the defective water pump and/or the engine components damaged by the defective water pump, and/or the revocation of the purchase or lease of the Class Vehicles, and all other relief available under Cal Civ. Code § 1794.

161.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT V
### Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*
### (On behalf of the Nationwide Class or, alternatively, on behalf of the California Sub-Class against MNAO and MMC)

162.   Plaintiff Wright Schneider incorporates and re-alleges each preceding paragraph as though fully set forth herein.

163.   Plaintiff Wright Schneider bring this count on behalf of herself and the members of the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

164.   Plaintiff Wright Schneider satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

165.   Plaintiff Wright Schneider and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

166.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

CLASS ACTION COMPLAINT

1   167.   The Class Vehicles are "consumer products" within the meaning of the

2   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

3   168.   The MMWA provides a cause of action for any consumer who is

4   damaged by the failure of a warrantor to comply with a written or implied warranty.

5   *See* 15 U.S.C. § 2310(d)(1).

6   169.   Defendant MNAO provided Plaintiff Wright Schneider and members of

7   the Classes with one or more express warranties, which are covered under 15 U.S.C.

8   § 2301(6).  For illustrative purposes, MNAO currently offers New Vehicle Limited

9   Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or

10  36,000 miles and extended warranty coverage for Powertrain components for 5 years

11  or 60,000 miles.[16]   Under warranties provided to members of the Classes, MNAO

12  promised to repair or replace covered defective components arising out of defects in

13  materials and/or workmanship, including the Water Pump Defect, at no cost to

14  owners and lessees of the Class Vehicles.  As alleged herein, MNAO breached these

15  warranties.

16  170.   Plaintiff Wright Schneider and members of the Classes experienced the

17  Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiff

18  Wright Schneider and members of the Classes of the existence of the Water Pump

19  Defect and associated safety risk, and failed to provide a suitable remedy or repair of

20  the Water Pump Defect free of charge within a reasonable time.

21  171.   Defendants were provided notice by letter dated May 13, 2019 that

22  Plaintiffs would pursue a claim under the MMWA on behalf of a class.

23  172.   Any attempt by MNAO to disclaim or limit its express or implied

24  warranties is unconscionable and unenforceable here.  Specifically, MNAO's

25  warranty limitations are unenforceable because it knowingly sold or leased a

26  defective product without informing consumers about the defect.  The time limits

27  ────────────────

28  [16]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet).  *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

contained in MNAO's warranty periods are also unconscionable and inadequate to protect Plaintiff Wright Schneider and members of the Classes. Among other things, Plaintiff Wright Schneider and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO. A gross disparity in bargaining power existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

173. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

174. Defendants breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendants and presents a safety risk.

175. Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff Wright Schneider resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

176. Plaintiff Wright Schneider and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return

of all payments made by them to Defendants MNAO.  Thus, Plaintiff Wright Schneider and members of the Classes have not re-accepted their Class Vehicles by retaining them.

177.  The amount in controversy of Plaintiff Wright Schneider's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

178.  Plaintiff Wright Schneider, individually and on behalf of members of the Classes, seeks all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT VI
## Fraud by Omission or Fraudulent Concealment
## (On behalf of the California Sub-Class against MNAO and MMC)

179.  Plaintiff Wright Schneider incorporates and re-alleges each preceding paragraph as though fully set forth herein.

180.  Plaintiff Wright Schneider brings this count on behalf of herself and the members of the California Sub-Class.

181.  Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Class Vehicles contain a Water Pump Defect and corresponding safety risk, with the intent that Plaintiff Wright Schneider and members of the California Sub-Class rely on Defendants' omissions.  As a direct result of Defendants' fraudulent conduct, Plaintiff Wright Schneider and members of the California Sub-Class have suffered actual damages.

182.  Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Water Pump Defect, concealed the defect and never intended to repair or replace the Water Pump Defect during the warranty periods. To

CLASS ACTION COMPLAINT

1    date, Defendants have not provided Plaintiff Wright Schneider and members of the
2    California Sub-Class with a repair or remedy for the Water Pump Defect.

3        183.  Defendants owed a duty to disclose the Water Pump Defect and its
4    corresponding safety risk to Plaintiff Wright Schneider and members of the
5    California Sub-Class because Defendants possessed superior and exclusive
6    knowledge regarding the defect.  Further, Defendants had a duty to disclose any
7    information relating to the safety, quality, functionality and reliability of Class
8    Vehicles because they consistently marketed the Class Vehicles as safe.

9        184.  Once Defendants made representations to the public about safety,
10   quality, functionality, and reliability, Defendants were under a duty to disclose these
11   omitted facts, because where one does speak one must speak the whole truth and not
12   conceal any facts which materially qualify those facts stated. One who volunteers
13   information must be truthful, and the telling of a half-truth calculated to deceive is
14   fraud.  Rather than disclose the defect, Defendants intentionally and knowingly
15   concealed, suppressed and/or omitted material facts including the standard, quality or
16   grade of the Class Vehicles and the presence of the Water Pump Defect and
17   corresponding safety risk, to sell additional Class Vehicles and avoid the cost of
18   repair or replacement.

19       185.  The Water Pump Defect is material to Plaintiff Wright Schneider and
20   members of the California Sub-Class because Plaintiff Wright Schneider and
21   members of the California Sub-Class had a reasonable expectation that the vehicles
22   would not contain a defect, such as the Water Pump Defect, that leads to exorbitant
23   repair costs and exposes them and other vehicle occupants to a safety risk. No
24   reasonable consumer expects a vehicle to contain a concealed defect in design,
25   manufacture, materials or workmanship, such as the Water Pump Defect, that can
26   lead to thousands of dollars in repair or replacement costs, and can cause catastrophic
27   engine failure with little to no warning or time to take preventative measures or safely
28   remove the vehicle from the road.

CLASS ACTION COMPLAINT

186.   Plaintiff Wright Schneider and members of the California Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

187.   Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Water Pump Defect would sell more Class Vehicles and would discourage Plaintiff Wright Schneider and members of the California Sub-Class from seeking replacement or repair of the Water Pump Defect during the applicable warranty periods.  Further, Defendants intended to induce Plaintiff Wright Schneider and members of the California Sub-Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Water Pump Defect in order to decrease costs and increase profits.

188.   Defendants acted with malice, oppression and fraud.

189.   Plaintiff Wright Schneider and members of the California Sub-Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Water Pump Defect and associated safety risk, Plaintiff Wright Schneider and members of the California Sub-Class have suffered actual damages in an amount to be determined at trial.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

**COUNT VII**
**Violation of the Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1750,** *et seq.*
**(On behalf of the Nationwide Class, or alternatively, the California Sub-Class**
**against MNAO and MMC)**

190.   Plaintiffs Wright Schneider, Proven, Bibbo, Meshberg, Hume, the Levasseurs, Sonneveldt, Lacasse, the Pickerds, Halwas, Matheny, DelVecchio, and Sowards ("Plaintiffs" for the purposes of this count) incorporate and re-allege each preceding paragraph as though fully set forth herein.

191.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class.  Alternatively, Plaintiff Wright Schneider brings this count on behalf of the California Sub-Class.

192.   CLRA "protect[s] consumers against unfair and deceptive business practices." *See* Cal. Civ. Code § 1760.

193.   Plaintiffs and members of the Classes are persons within the context of the CLRA, *see* Cal. Civ. § 1761(d), who purchased and/or leased class vehicles for personal, family, or household use.

194.   The Class Vehicles are goods within the meaning of Cal. Civ. Code § 1761(a).

195.   Defendants violated and continue to violate the CLRA by engaging in unfair and deceptive trade practices, including, *inter alia*: (1) representing that the Class Vehicles have characteristics which they do not; (2) representing that the Class Vehicles are of a particular standard when they are of another; and (3) advertising the Class Vehicles with the intent not to sell them as advertised.  *See* Cal. Civ. Code § 1170.

196.   Defendants further violated the CLRA by failing to disclose within the warranty period, or any time thereafter, the material fact that the Class Vehicles possessed the Water Pump Defect and its corresponding safety hazard.

/ / /

197.   Defendants also violated the CLRA by actively concealing the material fact that the Class Vehicles possessed the Water Pump Defect and its corresponding safety hazard and/or transferring the cost of repair or replacement of the Water Pump Defect to Plaintiffs and members of the Classes.

198.   The fact that the Water Pump Defect exists in the Class Vehicles and exposes consumers to a corresponding safety hazard is material because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a defect that may cause catastrophic engine failure and its corresponding safety hazard.

199.   Defendants has knowingly and willfully engaged in deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of materials facts concerning the Class Vehicles' Water Pump Defect and corresponding safety risk in connection with the sale and/or advertisement of Class Vehicles. Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

200.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiffs and members of the Classes that the water pump in the Class Vehicles would not require maintenance, repair or replacement and fraudulently omitted the water pump from its maintenance schedules.

201.   Upon information and belief, Defendants' decisions to fraudulently, intentionally, negligently and/or recklessly misrepresent to Plaintiffs and members of the Classes that the water pump in the Class Vehicles would not require maintenance, repair or replacement and to fraudulently omit the water pump from its maintenance schedules was made in California.

/ / /

/ / /

CLASS ACTION COMPLAINT

202.  Information regarding the Water Pump Defect as described in this Complaint is material to consumers in that the defect results in exorbitant repair or replacement costs, can cause catastrophic engine failure and poses a safety risk.

203.  Defendants' unlawful acts and practices affect the public interest, and trade and commerce in the State of California, and present a continuing safety hazard to Plaintiffs and the members of the Classes, including the California Sub-Class.

204.  As a proximate and direct result of Defendants' violations of the CLRA, Plaintiffs and members of the Classes have suffered premature failure of the water pump and/or engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and other substantial monetary damages and inconvenience.

205.  With this filing, and on this Count, Plaintiffs and members of the Classes seek an order enjoining Defendants' unfair and deceptive practices.

206.  Defendants' violations of the CLRA were willful and oppressive.

207.  Plaintiffs have provided Defendants with notice of their violations of the CLRA pursuant to Cal. Civ. Code § 1782(a) by letter dated May 13, 2019.  More than thirty days have passed and, to date, Defendants has failed to remedy its violations of the CLRA.  Therefore, Plaintiffs and members of the Classes are entitled to seek monetary relief for Defendants' violation of the CLRA.

208.  Plaintiffs and members of the Classes seek actual damages, punitive damages, statutory damages, restitution, attorneys' fees and any other relief proper under the CLRA.  *See* Cal. Civ. Code § 1780.

## COUNT VIII
### Violation of Unfair Competition Law (the "UCL"),
### Cal. Bus. & Prof. Code § 17200 *et seq*.
### (On behalf of the Nationwide, or alternatively, the California Sub-Class against MNAO and MMC)

209.  Plaintiffs Wright Schneider, Proven, Bibbo, Meshberg, Hume, the Levasseurs, Sonneveldt, Lacasse, the Pickerds, Halwas, Matheny, Delvecchio, and

CLASS ACTION COMPLAINT

1  Sowards ("Plaintiffs" for the purposes of this count) incorporate and re-allege each
2  preceding paragraph as though fully set forth herein.

3      210.  Plaintiffs bring this count on behalf of themselves and the members of
4  the Nationwide Class.  Alternatively, Plaintiff Wright Schneider brings this count on
5  behalf of the California Sub-Class.

6      211.  The California Business & Professions Code § 17200 *et seq*. (the
7  "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."

8      212.  As alleged herein, Defendants have violated the UCL by engaging in
9  unlawful, unfair and fraudulent business acts or practices.

10     213.  In violation of the UCL, Defendants employed unfair, unlawful and
11 deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment,
12 suppression or omission of a material fact with intent that other rely upon such
13 concealment, suppression or omission, in connection with the sale and/or lease of
14 Class Vehicles.  Defendants knowingly concealed, suppressed and/or omitted
15 material facts regarding the Water Pump Defect and corresponding safety hazard and
16 misrepresented the standard, quality or grade of the Class Vehicles, which directly
17 caused harm to Plaintiffs and members of the Classes.

18     214.  Defendants actively suppressed the fact of the Water Pump Defect's
19 existence in Class Vehicles and that it presents a safety hazard because of materials,
20 workmanship, design and/or manufacturing defects.  Further, Defendants employed
21 unfair, unlawful and fraudulent business practices to deny repair or replacement of
22 the defective Water Pump within a reasonable time in violation of the UCL.

23     215.  Upon information and belief, Defendants' decisions to actively suppress
24 the fact of the Water Pump Defect's existence in Class Vehicles and its
25 corresponding safety hazard was made in California.  Further, Defendants' decisions
26 to employ unfair, unlawful and fraudulent business practices to deny repair or
27 replacement of the defective Water Pump within a reasonable time in violation of the
28 UCL were made in California.

CLASS ACTION COMPLAINT

216. Defendants breached the CLRA, and Defendant MNAO breached the Song-Beverly Consumer Warranty Act, and the Magnuson-Moss Warranty Act as alleged herein in violation of the UCL.

217. Defendants' unfair, unlawful and fraudulent business practices were likely to deceive a reasonable consumer.  Plaintiffs and members of the Classes have no reasonable way to know that Class Vehicles contained the Water Pump Defect and that the Class Vehicles were defective in materials, workmanship, design and/or manufacture and posed a corresponding safety risk.  Defendants possessed superior knowledge as to the quality and characteristic of the Class Vehicles, including the Water Pump Defect and its associated safety risk, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions as did Plaintiffs and members of the Classes.

218. Defendants intentionally and knowingly misrepresented and omitted facts regarding the Water Pump Defect in the Class Vehicles and its associated safety hazard with the intent to mislead Plaintiffs and the members of the Classes. Defendants knew, or should have known, that the Class Vehicles possessed the Water Pump Defect and exposes consumers to a corresponding safety hazard.

219. Defendants owed a duty to disclose the Water Pump Defect and its corresponding safety hazard to Plaintiffs and the members of the Classes because Defendants possessed superior knowledge regarding the defect and the corresponding safety hazard.  Defendants also owed a duty to disclose the Water Pump Defect because Defendants made partial representations regarding the safety of the Class Vehicles and thus owed a duty to reveal the complete truth to Plaintiffs and members of the Classes.  Defendants had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe.

220. Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants was under a duty to disclose these

CLASS ACTION COMPLAINT

omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.  Rather than disclose the defect, Defendants engaged in unfair, unlawful and fraudulent business practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the defective water pumps and/or the damaged engines.

221. Defendants' unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect were intended to mislead consumers and misled Plaintiffs and members of the Classes.

222.  At all relevant times, Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Water Pump Defect and its corresponding safety hazard were material to Plaintiffs and members of the Classes. When Plaintiffs and members of the Classes purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects that pose an unavoidable safety hazard. Had Defendants disclosed that the Class Vehicles contained the Water Pump Defect and/or pose an unavoidable safety hazard, Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

223.  Defendants had a continuous duty to Plaintiff Wright Schneider and members of the Classes to refrain from unfair, unlawful and fraudulent practices under the UCL and to disclose the Water Pump Defect and associated safety hazard. Defendants' unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect and corresponding safety hazard are substantially injurious to consumers. As a result of Defendants' knowing, intentional concealment and/or omission of the Water Pump Defect and associated safety hazard in violation of the UCL, Plaintiffs and members

CLASS ACTION COMPLAINT

of the Classes have suffered damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the defective water pumps, and the diminished value of their vehicles as a result of Defendants' unfair, unlawful and fraudulent acts and practices in the course of its business.

224. Defendants have knowingly and willfully engaged in the unfair, unlawful and fraudulent business practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

225. Defendants' unfair, unlawful and fraudulent acts and practices have harmed and continue to harm Plaintiffs and members of the Classes, have negatively affected the public interest, and present a continuing safety hazard to Plaintiffs and members of the Classes, including the California Sub-Class.

226. Plaintiffs and members of the Classes seek an order enjoining Defendants' unfair, unlawful, and fraudulent practices and award costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the UCL and California law.

**B.    Colorado Counts**

**COUNT IX**
**Breach of Express Warranty**
**(On behalf of the Colorado Sub-Class against MNAO)**

227. Plaintiff Shannon Proven incorporates and re-alleges each preceding paragraph as though fully set forth herein.

228. Plaintiff Proven brings this count on behalf of herself and the Colorado Sub-Class.

229. Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to replace or service the water pumps.  Such representations formed the basis of the bargain in

CLASS ACTION COMPLAINT

Plaintiff Proven's and members of the Colorado Sub-Class's decisions to purchase or lease the Class Vehicles.

230.   Defendant MNAO also marketed the Class Vehicles as safe, built to last and reliable vehicles. These statements helped conceal the existence of the Water Pump Defect and its corresponding safety risk from Plaintiff Proven and members of the Colorado Sub-Class.

231.   Defendant MNAO is and was at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

232.   With respect to leases, Defendant MNAO is and was at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

233.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

234.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO provides maintenance schedules and warranty guides which omit any mention of the water pumps as a component requiring routine inspection, service, or replacement.

235.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO also provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendant MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[17]  Under the warranties provided to Plaintiff Proven and members of the Colorado Sub-Class, Defendant MNAO promised to repair or replace covered components arising out of defects in

---

[17]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendant MNAO breached these warranties.

236.   Defendant MNAO's warranties formed a basis of the bargain that was reached when Plaintiff Proven and members of the Colorado Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Water Pump Defect, Defendant MNAO knew or should have known that the majority of the water pump failures (and corresponding engine damage) occur outside of the warranty periods.

237.   Plaintiff Proven and members of the Colorado Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect and associated safety risk, which were known and concealed by Defendant MNAO.  Despite the existence of the warranties, Defendant MNAO failed to adequately inform Plaintiff Proven and members of the Colorado Sub-Class that the Class Vehicles contained the Water Pump Defect and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

238.   Defendant MNAO breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

239.   On information and belief, Defendant MNAO has not suitably repaired or replaced the Water Pump Defect free of charge for Plaintiff Proven and members of the Colorado Sub-Class despite the existence of the defect in the Class Vehicles at the time of sale or lease.

240.   Defendant MNAO further breached its express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the

1    water pump although Defendant MNAO knew of the Water Pump Defect and that the

2    water pump required periodic inspection and service.

3         241.  Class Vehicles were not of merchantable quality and were unfit for the

4    ordinary purposes for which passenger vehicles are used because of engine materials,

5    workmanship, design and/or manufacturing defects which cause engine failure and/or

6    failure to perform as warranted.

7         242.  Defendant MNAO was provided notice of the Water Pump Defect by

8    numerous consumer complaints made to its authorized dealers nationwide,

9    complaints to NHTSA and through its own testing.  Affording Defendant MNAO a

10   reasonable opportunity to cure its breach of written warranties would be unnecessary

11   and futile here because Defendant MNAO has known of and concealed the Water

12   Pump Defect and has failed to provide a suitable repair or replacement of the Water

13   Pump Defect free of charge within a reasonable time.

14        243.  Any attempt by Defendant MNAO to disclaim or limit recovery to the

15   terms of the express warranties is unconscionable and unenforceable here.

16   Specifically, Defendant MNAO's warranty limitation is unenforceable because it

17   knowingly sold or leased a defective product without informing consumers about the

18   defect.  The time limits contained in Defendant MNAO's warranty periods were also

19   unconscionable and inadequate to protect Plaintiff Proven and members of the

20   Colorado Sub-Class.  Among other things, Plaintiff Proven and members of the

21   Colorado Sub-Class did not determine these time limitations, the terms of which

22   unreasonably favored Defendant MNAO.  A gross disparity in bargaining power

23   existed between Defendant MNAO and members of the Classes, and Defendant

24   MNAO knew or should have known that the Class Vehicles were defective at the

25   time of sale or lease and that the Water Pump Defect posed a safety risk.

26        244.  Further, the limited warranty promising to repair and/or correct a

27   manufacturing defect fails in its essential purpose because the contractual remedy is

28   insufficient to make Plaintiff Proven and members of the Colorado Sub-Class whole

because, on information and belief, Defendant MNAO has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

245.  Defendant MNAO knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Proven and members of the Colorado Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

246.  Defendant MNAO's warranties formed a basis of the bargain that was reached when Plaintiff Proven and members of the Colorado Sub-Class purchased or leased their Class Vehicles.

247.  Plaintiff Proven and members of the Colorado Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by Defendant MNAO.  Despite the existence of the warranties, Defendant MNAO failed to inform Plaintiff Proven and members of the Colorado Sub-Class that the Class Vehicles contained the Water Pump Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the water pump and damaged engine parts to Plaintiff Proven and members of the Colorado Sub-Class.

248.  Because of the Water Pump Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

249.  As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiff Proven and members of the Colorado Sub-Class have been damaged in an amount to be determined at trial.

250.  Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiff Proven and members of the Colorado Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Proven and members of the Colorado Sub-Class of the purchase

CLASS ACTION COMPLAINT

or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT X
### Breach of Implied Warranty of Merchantability
### (On behalf of the Colorado Sub-Class against MNAO)

251.  Plaintiff Proven incorporates and re-alleges each preceding paragraph as though fully set forth herein.

252.  Plaintiff Proven brings this count on behalf of herself and the Colorado Sub-Class.

253.   Plaintiff Proven and members of the Colorado Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

254.  Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

255.  With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

256.  The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

257.  Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

258.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of

CLASS ACTION COMPLAINT

1    providing safe and reliable transportation.  The Class Vehicles contain an inherent

2    defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and

3    present an undisclosed safety risk to drivers and occupants.   Thus, Defendants

4    breached the implied warranty of merchantability.

5         259.   Through its maintenance schedules, MNAO further represented that the

6    water pump would not need repair or replacement and/or fraudulently concealed the

7    need for repair or replacement of the water pump by omitting the water pump from

8    the maintenance schedules.  Defendant MNAO cannot disclaim its implied warranty

9    as it knowingly sold or leased a defective product.

10        260.  Defendants were provided notice of the Water Pump Defect by

11   numerous consumer complaints made to MNAO's authorized dealers nationwide,

12   complaints to NHTSA and through their own testing.   Affording Defendants a

13   reasonable opportunity to cure their breach of implied warranties would be

14   unnecessary and futile here because Defendants have known of and concealed the

15   Water Pump Defect and, on information and belief, have refused to repair or replace

16   the Water Pump Defect free of charge within a reasonable time.

17        261.   As a direct and proximate result of Defendants' breach of the implied

18   warranty of merchantability, Plaintiff Proven and members of the Colorado Sub-

19   Class have been damaged in an amount to be proven at trial.

20        262.   Any attempt by Defendants to disclaim or limit the implied warranty of

21   merchantability vis-à-vis consumers is unconscionable and unenforceable here.

22   Specifically, MNAO's warranty limitation is unenforceable because it knowingly

23   sold or leased a defective product without informing consumers about the defect.

24   The time limits contained in MNAO's warranty periods were also unconscionable

25   and inadequate to protect Plaintiff Proven and members of the Colorado Sub-Class.

26   Among other things, Plaintiff Proven and members of the Colorado Sub-Class did not

27   determine these time limitations, the terms of which unreasonably favored MNAO.

28   A gross disparity in bargaining power existed between MNAO and members of the

Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

263.   Plaintiff Proven and members of the Colorado Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

264.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XI**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the Nationwide Class or, alternatively,**
**on behalf of the Colorado Sub-Class against MNAO and MMC)**

265.   Plaintiff Proven incorporates and re-alleges each preceding paragraph as though fully set forth herein.

266.   Plaintiff Proven brings this count on behalf of herself and the members of the Nationwide Class or, alternatively, on behalf of the Colorado Sub-Class.

267.   Plaintiff Proven satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

268.   Plaintiff Proven and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

269.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

270.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

271.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

/ / /

CLASS ACTION COMPLAINT

272. Defendant MNAO provided Plaintiff Proven and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[18] Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles. As alleged herein, MNAO breached these warranties.

273. Plaintiff Proven and members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiff Proven and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

274. Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

275. Any attempt by Defendants to disclaim or limit its express or implied warranties is unconscionable and unenforceable here. Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to protect Plaintiff Proven and members of the Classes. Among other things, Plaintiff Proven and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO. A gross disparity in bargaining power

---

[18] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

276.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

277.   Defendants breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk.  Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendants and presents a safety risk.

278.   Affording Defendants a reasonable opportunity to cure its breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff Proven resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

279.   Plaintiff Proven and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Proven and members of the Classes have not re-accepted their Class Vehicles by retaining them.

280.   The amount in controversy of Plaintiff Proven's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum

CLASS ACTION COMPLAINT

1    of $50,000, exclusive of interest and costs, computed on the basis of all claims to be

2    determined in this lawsuit.

3         281.   Plaintiff Proven, individually and on behalf of members of the Classes,

4    seeks all damages permitted by law, including diminution in the value of the Class

5    Vehicles, in an amount to be proven at trial.

6
                                    **COUNT XII**
7                    **Fraud by Omission or Fraudulent Concealment**
                 **(On behalf of the Colorado Sub-Class against MNAO and MMC)**
8

9         282.   Plaintiff Proven incorporates and re-alleges each preceding paragraph as

10   though fully set forth herein.

11        283.   Plaintiff Proven brings this count on behalf of herself and the members

12   of the Colorado Sub-Class.

13        284.   Defendants intentionally and knowingly concealed, suppressed and/or

14   omitted material facts including the standard, quality or grade of the Class Vehicles

15   and the fact that the Class Vehicles contain a Water Pump Defect and corresponding

16   safety risk, with the intent that Plaintiff Proven and members of the Colorado Sub-

17   Class rely on Defendants' omissions.  As a direct result of Defendants' fraudulent

18   conduct, Plaintiff Proven and members of the Colorado Sub-Class have suffered

19   actual damages.

20        285.   Defendants knew (at the time of sale or lease and thereafter) that the

21   Class Vehicles contained the Water Pump Defect, concealed the defect and never

22   intended to repair or replace the Water Pump Defect during the warranty periods.  To

23   date, Defendants have not provided Plaintiff Proven and members of the Colorado

24   Sub-Class with a repair or remedy for the Water Pump Defect.

25        286.   Defendants owed a duty to disclose the Water Pump Defect and its

26   corresponding safety risk to Plaintiff Proven and members of the Colorado Sub-Class

27   because Defendants possessed superior and exclusive knowledge regarding the

28   defect.  Further, Defendants had a duty to disclose any information relating to the

                                        75                    CLASS ACTION COMPLAINT

safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe.

287.   Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.   Rather than disclose the defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

288.   The Water Pump Defect is material to Plaintiff Proven and members of the Colorado Sub-Class because Plaintiff Proven and members of the Colorado Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Water Pump Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

289.   Plaintiff Proven and members of the Colorado Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

290.   Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7

Defendants knew their concealment and suppression of the Water Pump Defect would sell more Class Vehicles and would discourage Plaintiff Proven and members of the Colorado Sub-Class from seeking replacement or repair of the Water Pump Defect during the applicable warranty periods. Further, Defendants intended to induce Plaintiff Proven and members of the Colorado Sub-Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Water Pump Defect in order to decrease costs and increase profits.

8

291. Defendants acted with malice, oppression and fraud.

9
10
11
12
13
14

292. Plaintiff Proven and members of the Colorado Sub-Class reasonably relied upon Defendants' knowing concealment and omissions. As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Water Pump Defect and associated safety risk, Plaintiff Proven and members of the Colorado Sub-Class have suffered actual damages in an amount to be determined at trial.

15
16
17

**COUNT XIII**
**Violation of the Colorado Consumer Protection Act,**
**Colo. Rev. Stat § 6-1-101 *et seq*.**
**(On behalf of the Colorado Sub-Class against MNAO and MMC)**

18
19

293. Plaintiff Proven incorporates and re-alleges each preceding paragraph as though fully set forth herein.

20
21

294. Plaintiff Proven asserts this count on behalf of herself and members of the Colorado Sub-Class.

22
23
24

295. Defendants are each a person within the context of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.* (the "CCPA"). *See* Colo. Rev. Stat. § 6-1-102(6).

25
26
27

296. As alleged herein, Defendants committed unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CCPA. *See* Colo. Rev. Stat. § 6-1-101.

28

/ / /

297.   Defendants violated the CCPA by *inter alia*: "(e) [k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods . . . ; (g) [r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another . . . ; (i) [a]dvertis[ing] goods, services, or property with intent not to sell them as advertised . . .; and (u) [f]ail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

298.   In violation of the CCPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles.  Defendants knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Water Pump Defect and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to the Plaintiff Proven and the Colorado Sub-Class.

299.   Defendants actively suppressed the fact that the water pump in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design and/or manufacturing defects.  Further, Defendants employed unfair and deceptive trade practices to deny repair or replacement of the Water Pump Defect within a reasonable time in violation of the CCPA.  Defendant MNAO also breached its warranties as alleged herein in violation of the CCPA.

300.   Defendants' unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Proven and members of the Colorado Sub-Class had no reasonable way to know that Class Vehicles contained a Water Pump Defect within their engines which were defective in materials, workmanship, design and/or

CLASS ACTION COMPLAINT

manufacture and posed a safety risk.  Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the existence of the Water Pump Defect and associated safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions as Plaintiff Proven and members of the Colorado Sub-Class did.

301.  Defendants intentionally and knowingly misrepresented and omitted facts regarding the Water Pump Defect and associated safety hazard with the intent to mislead Plaintiff Proven and Colorado Sub-Class members.  Defendants knew, or should have known, of the existence of the Water Pump Defect and its associated safety hazard, including the sudden loss of power or ability to steer while driving.

302.  Defendants owed a duty to disclose the Water Pump Defect and its corresponding safety hazard to the Plaintiff Proven and Colorado Sub-Class members because Defendants possessed superior and exclusive knowledge regarding the defect and the hazard associated with it.  Further, once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  Rather than disclose the defect, Defendants engaged in unfair and deceptive trade practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the defective water pumps and/or the engines in Class Vehicles.

303.  Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect were intended to mislead consumers and misled Plaintiff Proven and the members of the Colorado Sub-Class.

304.  At all relevant times, Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Water Pump Defect and its corresponding safety hazard were material to Plaintiff Proven and the members of the Colorado Sub-Class.  When Plaintiff Proven and the members of the

CLASS ACTION COMPLAINT

Colorado Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from material defects and/or pose an unavoidable safety hazard.  Had Defendants disclosed that the engines in Class Vehicles had a Water Pump Defect and would be subject to premature catastrophic engine failure and/or pose an unavoidable safety hazard, Plaintiff Proven and the members of the Colorado Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

305.   Defendants had a continuous duty to Plaintiff Proven and members of the Colorado Sub-Class to refrain from unfair and deceptive practices under the CCPA and to disclose the Water Pump Defect and associated safety hazard.  Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect and corresponding safety hazard are substantially injurious to consumers.  As a result of Defendants' knowing, intentional concealment and/or omission of the Water Pump Defect and associated safety hazard in violation of the CCPA, Plaintiff Proven and members of the Colorado Sub-Class have suffered harm and/or continue to suffer harm by the threat of being exposed to an unavoidable safety hazard, loss of the use of their vehicles, and damages to be determined at trial.  Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Water Pump Defect, and the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of its business.

306.   Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.   Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

/ / /

307.   Defendants' unlawful acts and practices affect the public interest and trade and commerce in the State of Colorado, were in bad faith, and present a continuing safety hazard to the Plaintiff Proven and members of the Colorado Sub-Class.

308.   As a direct and proximate result of Defendants' violations of the CCPA, Plaintiff Proven and members of the Colorado Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Water Pump Defect and other related costs; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Water Pump Defect; and/or (3) the diminished resale value of the Class Vehicles containing the Water Pump Defect.

309.   Plaintiff Proven and members of the Colorado Sub-Class seek actual damages against Defendants in an amount to be determined at trial and statutory, treble, and/or punitive damages under the CCPA.

310.   Plaintiff Proven and members of the Colorado Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the CCPA.

C.     **Florida Counts**

**COUNT XIV**
**Breach of Express Warranty**
**(On behalf of the Florida Sub-Class against MNAO)**

311.   Plaintiff Michael Bibbo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

312.   Plaintiff Bibbo brings this count on behalf of himself and the Florida Sub-Class.

313.   Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to replace or service the water pumps.  Such representations formed the basis of the bargain in

CLASS ACTION COMPLAINT

1   Plaintiff Bibbo and members of the Florida Sub-Class's decisions to purchase or
2   lease the Class Vehicles.

3       314.   Defendant MNAO also marketed the Class Vehicles as safe, built to last
4   and reliable vehicles. These statements helped conceal the existence of the Water
5   Pump Defect and its corresponding safety risk from Plaintiff Bibbo and members of
6   the Florida Sub-Class.

7       315.   Defendant MNAO is and was at all relevant times a merchant and seller
8   of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform
9   Commercial Code.

10      316.   With respect to leases, Defendant MNAO is and was at all relevant times
11  a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the
12  Uniform Commercial Code.

13      317.   The Class Vehicles are and were at all relevant times goods within the
14  meaning of the Uniform Commercial Code.

15      318.   In connection with the purchase or lease of each of the Class Vehicles,
16  Defendant MNAO provides maintenance schedules and warranty guides which omit
17  any mention of the water pumps as a component requiring routine inspection, service,
18  or replacement.

19      319.   In connection with the purchase or lease of each of the Class Vehicles,
20  Defendant MNAO also provides warranty coverage for the Class Vehicles under one
21  or more manufacturer's warranties.  For illustrative purposes, Defendant MNAO
22  currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold
23  under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage
24  for Powertrain components for 5 years or 60,000 miles.[19]  Under the warranties
25  provided to Plaintiff Bibbo and members of the Florida Sub-Class, Defendant MNAO
26  promised to repair or replace covered components arising out of defects in materials

27  _____
28  [19]  *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also*
    https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.   As alleged herein, Defendant MNAO breached these warranties.

320.   Defendant MNAO's warranties formed a basis of the bargain that was reached when Plaintiff Bibbo and members of the Florida Sub-Class purchased or leased their Class Vehicles.   Given the latent nature of the Water Pump Defect, Defendants knew or should have known that the majority of the water pump failures (and corresponding engine damage) occur outside of the warranty periods.

321.   Plaintiff Bibbo and members of the Florida Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect and associated safety risk, which were known and concealed by Defendant MNAO.   Despite the existence of the warranties, Defendant MNAO failed to adequately inform Plaintiff Bibbo and members of the Florida Sub-Class that the Class Vehicles contained the Water Pump Defect and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

322.   Defendant MNAO breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

323.   On information and belief, Defendant MNAO has not suitably repaired or replaced the Water Pump Defect free of charge for Plaintiff Bibbo and members of the Florida Sub-Class despite the existence of the defect in the Class Vehicles at the time of sale or lease.

324.   Defendant MNAO further breached its express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the

CLASS ACTION COMPLAINT

1    water pump although Defendant MNAO knew of the Water Pump Defect and that the
2    water pump required periodic inspection and service.

3        325.   Class Vehicles were not of merchantable quality and were unfit for the
4    ordinary purposes for which passenger vehicles are used because of engine materials,
5    workmanship, design and/or manufacturing defects which cause engine failure and/or
6    failure to perform as warranted.

7        326.   Defendant MNAO was provided notice of the Water Pump Defect by
8    numerous consumer complaints made to its authorized dealers nationwide,
9    complaints to NHTSA and through its own testing.  Affording Defendant MNAO a
10   reasonable opportunity to cure its breach of written warranties would be unnecessary
11   and futile here because Defendant MNAO has known of and concealed the Water
12   Pump Defect and has failed to provide a suitable repair or replacement of the Water
13   Pump Defect free of charge within a reasonable time.

14       327.   Defendant MNAO was further provided notice by Plaintiff Bibbo of its
15   breach of express warranties by presenting his Mazda CX-9 for repair to McDonald
16   Mazda in Littleton, Colorado on March 30, 2019.   Upon information and belief,
17   McDonald Mazda is an authorized dealer of Defendant MNAO and its duly
18   authorized agent to perform warranty repairs. Despite this notice, Defendant MNAO
19   did not cure its breach of written warranties and failed to provide a suitable repair or
20   replacement of the Water Pump Defect free of charge within a reasonable time.

21       328.   Any attempt by Defendant MNAO to disclaim or limit recovery to the
22   terms of the express warranties is unconscionable and unenforceable here.
23   Specifically, Defendant MNAO's warranty limitation is unenforceable because it
24   knowingly sold or leased a defective product without informing consumers about the
25   defect.  The time limits contained in Defendant MNAO's warranty periods were also
26   unconscionable and inadequate to protect Plaintiff Bibbo and members of the Florida
27   Sub-Class.  Among other things, Plaintiff Bibbo and members of the Florida Sub-
28   Class did not determine these time limitations, the terms of which unreasonably

84                              CLASS ACTION COMPLAINT

1   favored Defendants.   A gross disparity in bargaining power existed between
2   Defendant MNAO and members of the Classes, and Defendant MNAO knew or
3   should have known that the Class Vehicles were defective at the time of sale or lease
4   and that the Water Pump Defect posed a safety risk.

5       329.   Further, the limited warranty promising to repair and/or correct a
6   manufacturing defect fails in its essential purpose because the contractual remedy is
7   insufficient to make Plaintiff Bibbo and members of the Florida Sub-Class whole
8   because, on information and belief, Defendant MNAO has failed and/or has refused
9   to adequately provide the promised remedies within a reasonable time.

10      330.   Defendant MNAO knew that the Class Vehicles were inherently
11  defective and did not conform to their warranties, and Plaintiff Bibbo and members
12  of the Florida Sub-Class were induced to purchase or lease the Class Vehicles under
13  false and/or fraudulent pretenses.

14      331.   Defendant MNAO's warranties formed a basis of the bargain that was
15  reached when Plaintiff Bibbo and members of the Florida Sub-Class purchased or
16  leased their Class Vehicles.

17      332.   Plaintiff Bibbo and members of the Florida Sub-Class experienced the
18  existence of the Water Pump Defect within the warranty periods but had no
19  knowledge of the existence of the defect, which was known and concealed by
20  Defendants.   Despite the existence of the warranties, Defendant MNAO failed to
21  inform Plaintiff Bibbo and members of the Florida Sub-Class that the Class Vehicles
22  contained the Water Pump Defect during the warranty periods, and, thus, wrongfully
23  transferred the costs of repair or replacement of the water pump and damaged engine
24  parts to Plaintiff Bibbo and members of the Florida Sub-Class.

25      333.   Because of the Water Pump Defect, the Class Vehicles are not reliable
26  and owners of these vehicles have lost confidence in the ability of Class Vehicles to
27  perform the function of safe reliable transportation.

28  / / /

CLASS ACTION COMPLAINT

334.   As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiff Bibbo and members of the Florida Sub-Class have been damaged in an amount to be determined at trial.

335.   Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiff Bibbo and members of the Florida Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Bibbo and members of the Florida Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT XV
### Breach of Implied Warranty of Merchantability
### (On behalf of the Florida Sub-Class against MNAO and MMC)

336.   Plaintiff Bibbo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

337.   Plaintiff Bibbo brings this count on behalf of himself and the Florida Sub-Class.

338.   Plaintiff Bibbo and members of the Florida Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

339.   Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

/ / /

/ / /

CLASS ACTION COMPLAINT

340.   With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

341.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

342.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

343.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached the implied warranty of merchantability.

344.   Through its maintenance schedules, MNAO further represented that the water pump would not need repair or replacement and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules. MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

345.   Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

346.   Defendants was further provided notice by Plaintiff Bibbo of their breach of implied warranties by presenting his Mazda CX-9 for repair to McDonald Mazda in Littleton, Colorado on March 30, 2019.  Upon information and belief,

CLASS ACTION COMPLAINT

1    McDonald Mazda is an authorized dealer of MNAO and its duly authorized agent to

2    perform warranty repairs. Despite this notice, Defendants did not cure the breach of

3    implied warranties and failed to provide a suitable repair or replacement of the Water

4    Pump Defect free of charge within a reasonable time.

5       347.   As a direct and proximate result of Defendants' breach of the implied

6    warranty of merchantability, Plaintiff Bibbo and members of the Florida Sub-Class

7    have been damaged in an amount to be proven at trial.

8       348.   Any attempt by MNAO to disclaim or limit the implied warranty of

9    merchantability vis-à-vis consumers is unconscionable and unenforceable here.

10   Specifically, MNAO's warranty limitation is unenforceable because it knowingly

11   sold or leased a defective product without informing consumers about the defect.

12   The time limits contained in MNAO's warranty periods were also unconscionable

13   and inadequate to protect Plaintiff Bibbo and members of the Florida Sub-Class.

14   Among other things, Plaintiff Bibbo and members of the Florida Sub-Class did not

15   determine these time limitations, the terms of which unreasonably favored MNAO.

16   A gross disparity in bargaining power existed between MNAO and members of the

17   Classes, and MNAO knew or should have known that the Class Vehicles were

18   defective at the time of sale or lease and that the Water Pump Defect posed a safety

19   risk.

20      349.   Plaintiff Bibbo and members of the Florida Sub-Class have been

21   excused from performance of any warranty obligations as a result of Defendants'

22   conduct described herein.

23      350.   The applicable statute of limitations for the implied warranty claim has

24   been tolled by the discovery rule and/or fraudulent concealment.

25   / / /

26   / / /

27   / / /

28   / / /

1

2

3

4

**COUNT XVI**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301,** *et seq.*
**(On behalf of the Nationwide Class or, alternatively,**
**on behalf of the Florida Sub-Class against MNAO and MMC)**

5

6

351.   Plaintiff Bibbo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

7

8

352.   Plaintiff Bibbo brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

9

10

353.   Plaintiff Bibbo satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

11

12

354.   Plaintiff Bibbo and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

13

14

355.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

15

16

356.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

17

18

19

357.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

20

21

22

23

24

25

26

358.   Defendant MNAO provided Plaintiff Bibbo and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[20]   Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials

27

28

---

[20]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, MNAO breached these warranties.

359.   Plaintiff Bibbo and members of the Classes experienced the Water Pump Defect within the warranty periods but Defendants failed to inform Plaintiff Bibbo and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

360.   Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

361.   Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here.  Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to protect Plaintiff Bibbo and members of the Classes.  Among other things, Plaintiff Bibbo and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO.  A gross disparity in bargaining power existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

362.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

363.   Defendants breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk.  Without limitation, the Class Vehicles share a common defect in design,

CLASS ACTION COMPLAINT

material, manufacturing and/or workmanship that fails to operate as represented Defendants and presents a safety risk.

364.   Affording Defendants a reasonable opportunity to cure its breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff Bibbo resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

365.   Plaintiff Bibbo and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Bibbo and members of the Classes have not re-accepted their Class Vehicles by retaining them.

366.   The amount in controversy of Plaintiff Bibbo's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

367.   Plaintiff Bibbo, individually and on behalf of members of the Classes, seeks all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

1
2
3

**COUNT XVII**
**Fraud by Omission or Fraudulent Concealment**
**(On behalf of the Florida Sub-Class against MNAO and MMC)**

4       368.   Plaintiff Bibbo incorporates and re-alleges each preceding paragraph as
5   though fully set forth herein.

6       369.   Plaintiff Bibbo brings this count on behalf of himself and the members
7   of the Florida Sub-Class.

8       370.   Defendants intentionally and knowingly concealed, suppressed and/or
9   omitted material facts including the standard, quality or grade of the Class Vehicles
10  and the fact that the Class Vehicles contain a Water Pump Defect and corresponding
11  safety risk, with the intent that Plaintiff Bibbo and members of the Florida Sub-Class
12  rely on Defendants' omissions. As a direct result of Defendants' fraudulent conduct,
13  Plaintiff Bibbo and members of the Florida Sub-Class have suffered actual damages.

14      371.   Defendants knew (at the time of sale or lease and thereafter) that the
15  Class Vehicles contained the Water Pump Defect, concealed the defect and never
16  intended to repair or replace the Water Pump Defect during the warranty periods.  To
17  date, Defendants have not provided Plaintiff Bibbo and members of the Florida Sub-
18  Class with a repair or remedy for the Water Pump Defect.

19      372.   Defendants owed a duty to disclose the Water Pump Defect and its
20  corresponding safety risk to Plaintiff Bibbo and members of the Florida Sub-Class
21  because Defendants possessed superior and exclusive knowledge regarding the
22  defect.  Further, Defendants had a duty to disclose any information relating to the
23  safety, quality, functionality and reliability of Class Vehicles because they
24  consistently marketed the Class Vehicles as safe.

25      373.   Once Defendants made representations to the public about safety,
26  quality, functionality, and reliability, Defendants were under a duty to disclose these
27  omitted facts, because where one does speak one must speak the whole truth and not
28  conceal any facts which materially qualify those facts stated. One who volunteers

CLASS ACTION COMPLAINT

1    information must be truthful, and the telling of a half-truth calculated to deceive is

2    fraud.   Rather than disclose the defect, Defendants intentionally and knowingly

3    concealed, suppressed and/or omitted material facts including the standard, quality or

4    grade of the Class Vehicles and the presence of the Water Pump Defect and

5    corresponding safety risk, to sell additional Class Vehicles and avoid the cost of

6    repair or replacement.

7        374.   The Water Pump Defect is material to Plaintiff Bibbo and members of

8    the Florida Sub-Class because Plaintiff Bibbo and members of the Florida Sub-Class

9    had a reasonable expectation that the vehicles would not contain a defect, such as the

10   Water Pump Defect, that leads to exorbitant repair costs and exposes them and other

11   vehicle occupants to a safety risk.   No reasonable consumer expects a vehicle to

12   contain a concealed defect in design, manufacture, materials or workmanship, such as

13   the Water Pump Defect, that can lead to thousands of dollars in repair or replacement

14   costs, and can cause catastrophic engine failure with little to no warning or time to

15   take preventative measures or safely remove the vehicle from the road.

16       375.   Plaintiff Bibbo and members of the Florida Sub-Class would not have

17   purchased or leased the Class Vehicles but for Defendant's omissions and

18   concealment of material facts regarding the nature and quality of the Class Vehicles

19   and existence of the Water Pump Defect and corresponding safety risk, or would

20   have paid less for the Class Vehicles.

21       376.   Defendants knew their concealment and suppression of material facts

22   was false and misleading and knew the effect of concealing those material facts.

23   Defendants knew their concealment and suppression of the Water Pump Defect

24   would sell more Class Vehicles and would discourage Plaintiff Bibbo and members

25   of the Florida Sub-Class from seeking replacement or repair of the Water Pump

26   Defect during the applicable warranty periods.   Further, Defendants intended to

27   induce Plaintiff Bibbo and members of the Florida Sub-Class into purchasing or

28

CLASS ACTION COMPLAINT

leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Water Pump Defect in order to decrease costs and increase profits.

377.   Defendants acted with malice, oppression and fraud.

378.   Plaintiff Bibbo and members of the Florida Sub-Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Water Pump Defect and associated safety risk, Plaintiff Bibbo and members of the Florida Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT XVIII**
**Violation of Florida's Deceptive & Unfair Trade Practices Act,**
**Fla. Stat. § 501.201, *et seq*.**
**(On behalf of the Florida Sub-Class against MNAO and MMC)**

379.   Plaintiff Bibbo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

380.   Plaintiff Bibbo bring this count on behalf of himself and the Florida Sub-Class.

381.   Plaintiff Bibbo and the members of the Florida Sub-Class are "consumers" within the meaning of the FDUTPA, Fla. Stat. § 501.203(7).

382.   Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

383.   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

384.   In the course of their businesses, Defendants failed to disclose and actively concealed the Water Pump Defect contained in the Class Vehicles and the corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

CLASS ACTION COMPLAINT

385.   In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed, and omitted material facts regarding the Water Pump Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff Bibbo and the Florida Sub-Class.

386.   Defendants actively suppressed the fact that the water pump in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design, and/or manufacturing defects.   Further, Defendants employed unfair and deceptive trade practices by denying repairs or replacement of the Water Pump Defect within a reasonable time in violation of the FDUTPA.   Defendants also breached its warranties as alleged above in violation of the FDUTPA.

387.   As alleged above, Defendants have known of the Water Pump Defect contained in the Class Vehicles for well over a decade. Prior to installing the defective water pumps in the engines in the Class Vehicles, Defendants knew or should have known the engines in Class Vehicles contained the Water Pump Defect due to pre-production testing and failure mode analysis.   Mazda also should have known of the Water Pump Defect from discussions with Ford and after receiving numerous complaints about the Water Pump Defect from consumers and Dealers. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and engines with the Water Pump Defect installed in them.

388.   By failing to disclose and by actively concealing the Water Pump Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as a reputable manufacturer or distributor for a reputable manufacture that values safety, Defendants engaged in unfair or deceptive business

CLASS ACTION COMPLAINT

practices in violation of the FDUTPA. Defendants deliberately withheld the information about the propensity of the Water Pump Defect to cause a pre-mature failure of the internal water pump, well prior to end of the reasonably foreseeable useful life of the engine, causing coolant to infiltrate the engine and mix with the oil, causing catastrophic engine failure as well as the corresponding safety hazard to vehicle occupants, to ensure that consumers would purchase the Class Vehicles and spend money on useless remedies and repairs.

389.   In the course of Defendants' businesses, they willfully failed to disclose and actively concealed the dangerous risks posed by the Water Pump Defect. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the engines installed in them were safe, reliable, and of high quality despite containing the Water Pump Defect, and by claiming to be a reputable manufacturer or a reputable distributor for a reputable manufacturer that values safety.

390.   Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer.  Plaintiff Bibbo and members of the Florida Sub-Class had no reasonable way to know that the Class Vehicles contained the Water Pump Defect, which were defective in materials, workmanship, design and/or manufacture and posed a serious and significant health and safety risk.  Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Water Pump Defect within their engines and its associated safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiff Bibbo and members of the Florida Sub-Class did.

391.   Defendants intentionally and knowingly misrepresented material facts and omitted material facts regarding the Class Vehicles and the Water Pump Defect within the engines installed in Class Vehicles with an intent to mislead Plaintiff Bibbo and the Florida Sub-Class.

CLASS ACTION COMPLAINT

392.   Defendants knew or should have known that its conduct violated the FDUTPA.

393.   Defendants made material statements and/or omissions about the safety and reliability of the Class Vehicles and/or the Water Pump Defect installed in them that were either false or misleading. Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Water Pump Defect and its corresponding safety hazard.

394.   To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay for component parts and expensive repairs to remedy the Water Pump Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles and then engines with the Water Pump Defect installed in them. Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

395.   Defendants owed Plaintiff Bibbo and the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Water Pump Defect because Defendants:

   a. Possessed exclusive knowledge of the Water Pump Defect and its associated safety hazard;

   b. Intentionally concealed the foregoing from Plaintiff Bibbo and the Florida Sub-Class; and/or

   c. Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff Bibbo and the Florida Sub-Class that contradicted these representations.

396.   Because Defendants fraudulently concealed the Water Pump Defect in the engines of Class Vehicles, and now that the Defect has been disclosed, the value

CLASS ACTION COMPLAINT

1    of the Class Vehicles has greatly diminished, and they are now worth significantly

2    less than they otherwise would be.

3        397.   Defendants' failure to disclose and active concealment of the Water

4    Pump Defect in the Class Vehicles were material to Plaintiff Bibbo and the Florida

5    Sub-Class. A vehicle made by an honest and reputable manufacturer of safe vehicles

6    is worth more than an otherwise comparable vehicle made by a dishonest and

7    disreputable manufacturer of unsafe vehicles that conceals defects rather than

8    promptly reports on and remedies them.

9        398.   Plaintiff Bibbo and the Florida Sub-Class suffered ascertainable losses

10   caused by Defendants' misrepresentations and their failure to disclose material

11   information. Had Plaintiff Bibbo and the Florida Sub-Class members been aware of

12   the Water Pump Defect that existed in the Class Vehicles and Defendants' complete

13   disregard for the safety of its consumers, Plaintiff Bibbo and the Florida Sub-Class

14   either would not have paid as much for their vehicles or would not have purchased or

15   leased them at all. Plaintiff Bibbo and the Florida Sub-Class did not receive the

16   benefit of their bargain as a result of Defendants' misconduct.

17       399.   Plaintiff Bibbo and the Florida Sub-Class risk loss of use of their

18   vehicles as a result of Defendants' act and omissions in violation of the FDUTPA,

19   and these violations present a continuing risk to Plaintiff Bibbo, the Florida Class,

20   and the public in general. Defendants' unlawful acts and practices complained of

21   above affect the public interest.

22       400.   As a direct and proximate result of Defendants' violations of the

23   FDUTPA, Plaintiff Bibbo and the Florida Sub-Class have suffered injury-in-fact

24   and/or actual damage.

25       401.   Plaintiff Bibbo and the Florida Sub-Class are entitled to recover their

26   actual damages, under Fla. Stat. § 501.211(2), and attorneys' fees under Fla. Stat §

27   501.2105(1).

28   / / /

402.   Plaintiff Bibbo and the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**D.   Illinois Counts**

**COUNT XIX**
**Negligent Misrepresentation**
**(On behalf of the Illinois Sub-Class against MNAO and MMC)**

403.   Plaintiff Alan Meshberg incorporates and re-alleges each preceding paragraph as though fully set forth herein.

404.   Plaintiff Meshberg brings this count on behalf himself and the members of the Illinois Sub-Class.

405.   Defendants owed a duty to disclose the Water Pump Defect and its corresponding safety risk to Plaintiff Meshberg and members of the Illinois Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the associated risks.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that the Class Vehicles possessed the Water Pump Defect and failing to disclose the existence of the Water Pump Defect and its corresponding safety hazard.

406.   Defendants negligently omitted material facts including the standard, quality or grade of the Class Vehicles and/or presence of the Water Pump Defect in the Class Vehicles.  As a direct result of Defendants' negligent conduct, Plaintiff Meshberg and members of the Illinois Sub-Class have suffered actual damages.

407.   The Water Pump Defect is material to Plaintiff Meshberg and members of the Illinois Sub-Class because Plaintiff Meshberg and members of the Illinois Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Water Pump Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement

costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

408.   Plaintiff Meshberg and members of the Illinois Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and/or existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.   Plaintiff Meshberg and members of the Illinois Sub-Class justifiably relied upon Defendants' negligent omissions of material facts.

409.   As a direct and proximate result of Defendants' negligent omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk, Plaintiff Meshberg and members of the Illinois Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## COUNT XX
## Breach of Express Warranty
## (On behalf of the Illinois Sub-Class against MNAO)

410.   Plaintiff Meshberg incorporates and re-alleges each preceding paragraph as though fully set forth herein.

411.   Plaintiff Meshberg brings this count on behalf of himself and the Illinois Sub-Class.

412.   Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to replace or service the water pumps. Such representations formed the basis of the bargain in Plaintiff Meshberg's and members of the Illinois Sub-Class's decisions to purchase or lease the Class Vehicles.

413.   Defendant MNAO also marketed the Class Vehicles as safe, built to last and reliable vehicles. These statements helped conceal the existence of the Water

CLASS ACTION COMPLAINT

Pump Defect and its corresponding safety risk from Plaintiff Meshberg and members of the Illinois Sub-Class.

414.   Defendant MNAO is and was at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

415.   With respect to leases, Defendant MNAO is and was at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

416.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

417.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO provides maintenance schedules and warranty guides which omit any mention of the water pumps as a component requiring routine inspection, service, or replacement.

418.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO also provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties.   For illustrative purposes, Defendant MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[21] Under the warranties provided to Plaintiff Meshberg and members of the Illinois Sub-Class, Defendant MNAO promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.   As alleged herein, Defendant MNAO breached these warranties.

/ / /

--------------------------------------------------------

[21]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

419.   Defendant MNAO warranties formed a basis of the bargain that was reached when Plaintiff Meshberg and members of the Illinois Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Water Pump Defect, Defendants knew or should have known that the majority of the water pump failures (and corresponding engine damage) occur outside of the warranty periods.

420.   Plaintiff Meshberg and members of the Illinois Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect and associated safety risk, which were known and concealed by Defendant MNAO.  Despite the existence of the warranties, Defendant MNAO failed to adequately inform Plaintiff Meshberg and members of the Illinois Sub-Class that the Class Vehicles contained the Water Pump Defect and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

421.   Defendant MNAO breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

422.   On information and belief, Defendant MNAO has not suitably repaired or replaced the Water Pump Defect free of charge for Plaintiff Meshberg and members of the Illinois Sub-Class despite the existence of the defect in the Class Vehicles at the time of sale or lease.

423.   Defendant MNAO further breached its express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the water pump although Defendant MNAO knew of the Water Pump Defect and that the water pump required periodic inspection and service.

424.   Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials,

CLASS ACTION COMPLAINT

1   workmanship, design and/or manufacturing defects which cause engine failure and/or

2   failure to perform as warranted.

3       425.   Defendant MNAO was provided notice of the Water Pump Defect by

4   numerous consumer complaints made to its authorized dealers nationwide,

5   complaints to NHTSA and through its own testing.  Affording Defendant MNAO a

6   reasonable opportunity to cure its breach of written warranties would be unnecessary

7   and futile here because Defendant MNAO has known of and concealed the Water

8   Pump Defect and has failed to provide a suitable repair or replacement of the Water

9   Pump Defect free of charge within a reasonable time.

10      426.   Defendant MNAO was further provided notice by Plaintiff Meshberg of

11  its breach of express warranties by presenting his Mazda CX-9 for repair to Groove

12  Mazda in Centennial, Colorado on May 17, 2016.  Upon information and belief,

13  Groove Mazda is an authorized dealer of Defendants and its duly authorized agent to

14  perform warranty repairs.  Upon diagnosing the water pump failure in his Mazda CX-

15  9, Groove Mazda charged him nearly $2,000 to replace the water pump.

16  Subsequently, Groove Mazda charged Plaintiff Meshberg an additional $3,500 to

17  install a used engine into his Mazda CX-9, on August 8, 2016. Plaintiff Meshberg

18  further provided notice to Defendant MNAO by letter dated May 20, 2019.  Despite

19  these notices, Defendants did not cure its breach of written warranties and failed to

20  provide a suitable repair or replacement of the Water Pump Defect free of charge

21  within a reasonable time.

22      427.   Any attempt by Defendants to disclaim or limit recovery to the terms of

23  the express warranties is unconscionable and unenforceable here.  Specifically,

24  Defendant MNAO's warranty limitation is unenforceable because it knowingly sold

25  or leased a defective product without informing consumers about the defect.  The

26  time limits contained in Defendant MNAO's warranty periods were also

27  unconscionable and inadequate to protect Plaintiff Meshberg and members of the

28  Illinois Sub-Class.  Among other things, Plaintiff Meshberg and members of the

CLASS ACTION COMPLAINT

Illinois Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendant MNAO. A gross disparity in bargaining power existed between Defendant MNAO and members of the Classes, and Defendant MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

428. Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Meshberg and members of the Illinois Sub-Class whole, because, on information and belief, Defendant MNAO has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

429. Defendant MNAO knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Meshberg and members of the Illinois Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

430. Defendant MNAO's warranties formed a basis of the bargain that was reached when Plaintiff Meshberg and members of the Illinois Sub-Class purchased or leased their Class Vehicles.

431. Plaintiff Meshberg and members of the Illinois Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by Defendant MNAO. Despite the existence of the warranties, Defendant MNAO failed to inform Plaintiff Meshberg and members of the Illinois Sub-Class that the Class Vehicles contained the Water Pump Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the water pump and damaged engine parts to Plaintiff Meshberg and members of the Illinois Sub-Class.

432. Because of the Water Pump Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

433.   As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiff Meshberg and members of the Illinois Sub-Class have been damaged in an amount to be determined at trial.

434.   Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiff Meshberg and members of the Illinois Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Meshberg and members of the Illinois Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT XXI
### Breach of Implied Warranty of Merchantability
### (On behalf of the Illinois Sub-Class against MNAO and MMC)

435.   Plaintiff Meshberg incorporates and re-alleges each preceding paragraph as though fully set forth herein.

436.   Plaintiff Meshberg and members of the Illinois Sub-Class bring this count on behalf of himself and the Illinois Sub-Class.

437.   Plaintiff Meshberg and members of the Illinois Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.  Defendantsknew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

438.   Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

/ / /

/ / /

CLASS ACTION COMPLAINT

439.  With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

440.  The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

441.  Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

442.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached the implied warranty of merchantability.

443.  Through its maintenance schedules, MNAO further represented that the water pump would not need repair or replacement and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules.  MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

444.  Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

445.  Defendants were further provided notice by Plaintiff Meshberg of its breach of implied warranties by presenting his Mazda CX-9 for repair to Groove Mazda in Centennial, Colorado on May 17, 2016.  Upon information and belief,

CLASS ACTION COMPLAINT

Groove Mazda is an authorized dealer of MNAO and its duly authorized agent to perform warranty repairs. Upon diagnosing the water pump failure in his Mazda CX-9, Groove Mazda charged him nearly $2,000 to replace the water pump. Subsequently, Groove Mazda charged Plaintiff Meshberg an additional $3,500 to install a used engine into his Mazda CX-9, on August 8, 2016. Plaintiff Meshberg further provided notice to Defendants by letter dated May 20, 2019 directed to MNAO. Despite these notices, Defendants did not cure the breach of implied warranties and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

446. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Meshberg and members of the Illinois Sub-Class have been damaged in an amount to be proven at trial.

447. Any attempt by MNAO to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiff Meshberg and members of the Illinois Sub-Class. Among other things, Plaintiff Meshberg and members of the Illinois Sub-Class did not determine these time limitations, the terms of which unreasonably favored MNAO. A gross disparity in bargaining power existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

448. Plaintiff Meshberg and members of the Illinois Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

/ / /

CLASS ACTION COMPLAINT

449.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XXII**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the Nationwide Class or, alternatively,**
**on behalf of the Illinois Sub-Class against MNAO and MMC**)

450.   Plaintiff Meshberg incorporates and re-alleges each preceding paragraph as though fully set forth herein.

451.   Plaintiff Meshberg brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the Illinois Sub-Class.

452.   Plaintiff Meshberg satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

453.   Plaintiff Meshberg and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

454.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

455.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

456.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

457.   Defendant MNAO provided Plaintiff Meshberg and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).   For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years

or 60,000 miles.[22]  Under the warranties provided to Plaintiff Meshberg and members of the Illinois Sub-Class, MNAO promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, MNAO breached these warranties.

458.  Plaintiff Meshberg and members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiff Meshberg and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

459.  Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

460.  Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here.  Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to protect Plaintiff Meshberg and members of the Classes.  Among other things, Plaintiff Meshberg and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO.  A gross disparity in bargaining power existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

461.  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

---

[22] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

1    462.  Defendants breached these warranties by failing to disclose and
2    fraudulently concealing information regarding the standard, quality or grade of the
3    Class Vehicles and/or the presence of the Water Pump Defect and corresponding
4    safety risk.  Without limitation, the Class Vehicles share a common defect in design,
5    material, manufacturing and/or workmanship that fails to operate as represented by
6    Defendants and presents a safety risk.

7    463.  Affording Defendants a reasonable opportunity to cure its breach of
8    warranties would be unnecessary and futile.  At the time of sale or lease of each Class
9    Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not
10   knowing, of the material omissions concerning the standard, quality or grade of the
11   Class Vehicles and the presence of the Water Pump Defect and corresponding safety
12   risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect.
13   Under the circumstances, the remedies available under any informal settlement
14   procedure would be inadequate and any requirement that Plaintiff Meshberg resort to
15   an informal dispute resolution procedure and/or afford Defendants a reasonable
16   opportunity to cure their breach of warranties is excused and thereby deemed
17   satisfied.

18   464.  Plaintiff Meshberg and members of the Classes would suffer economic
19   hardship if they returned their Class Vehicles, but did not receive the return of all
20   payments made by them to Defendants.  Thus, Plaintiff Meshberg and members of
21   the Classes have not re-accepted their Class Vehicles by retaining them.

22   465.  The amount in controversy of Plaintiff Meshberg's individual claims
23   meets or exceeds the sum of $25.  The amount in controversy of this action exceeds
24   the sum of $50,000, exclusive of interest and costs, computed on the basis of all
25   claims to be determined in this lawsuit.

26   466.  Plaintiff Meshberg, individually and on behalf of members of the
27   Classes, seek all damages permitted by law, including diminution in the value of the
28   Class Vehicles, in an amount to be proven at trial.

CLASS ACTION COMPLAINT

**COUNT XXIII**
**Fraud by Omission or Fraudulent Concealment**
**(On behalf of the Illinois Sub-Class against MNAO and MMC)**

467.   Plaintiff Meshberg incorporates and re-alleges each preceding paragraph as though fully set forth herein.

468.   Plaintiff Meshberg brings this count on behalf of himself and the members of the Illinois Sub-Class.

469.   Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Class Vehicles contain a Water Pump Defect and corresponding safety risk, with the intent that Plaintiff Meshberg and members of the Illinois Sub-Class rely on Defendants' omissions.  As a direct result of Defendants' fraudulent conduct, Plaintiff Meshberg and members of the Illinois Sub-Class have suffered actual damages.

470.   Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Water Pump Defect, concealed the defect and never intended to repair or replace the Water Pump Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Meshberg and members of the Illinois Sub-Class with a repair or remedy for the Water Pump Defect.

471.   Defendants owed a duty to disclose the Water Pump Defect and its corresponding safety risk to Plaintiff Meshberg and members of the Illinois Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and made a partial disclosure regarding the safety of the Class Vehicles. Rather than disclose the defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

CLASS ACTION COMPLAINT

472.   The Water Pump Defect is material to Plaintiff Meshberg and members of the Illinois Sub-Class because Plaintiff Meshberg and members of the Illinois Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Water Pump Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

473.   Plaintiff Meshberg and members of the Illinois Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

474.   Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Water Pump Defect would sell more Class Vehicles and would discourage Plaintiff Meshberg and members of the Illinois Sub-Class from seeking replacement or repair of the Water Pump Defect during the applicable warranty periods.  Further, Defendants intended to induce Plaintiff Meshberg and members of the Illinois Sub-Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Water Pump Defect in order to decrease costs and increase profits.

475.   Defendants acted with malice, oppression and fraud.

476.   Plaintiff Meshberg and members of the Illinois Sub-Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Water Pump Defect and associated safety risk, Plaintiff Meshberg and

CLASS ACTION COMPLAINT

members of the Illinois Sub-Class have suffered actual damages in an amount to be determined at trial.

## COUNT XXIV
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),
### 815 ILCS 505/1, *et seq.*
### (On behalf of the Illinois Sub-Classagainst MNAO and MMC)

477.   Plaintiff Meshberg incorporates and re-alleges each preceding paragraph as though fully set forth herein.

478.   Plaintiff Meshberg brings this count on behalf of himself and the members of the Illinois Sub-Class.

479.   Defendants are each a "person" as that term is defined in 815 ILCS 505/1(c).

480.   Plaintiffs and the Illinois Subclass are "consumers" as that term is defined in 815 ILCS 505/1(e).

481.   The ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

482.   Defendants participated in misleading, false, or deceptive practices that violated the ICFA.  By failing to disclose and actively concealing that the Class Vehicles possessed the Water Pump Defect, failing to include the water pump as a component that required inspection, servicing, or routine maintenance, by marketing their Class Vehicles as safe and of high quality, and by presenting themselves as a reputable manufacturer that value safety and stood behind its vehicles after they were sold, Defendants engaged in deceptive business practices prohibited by the ICFA.

/ / /

483.   In the course of its business, Defendants willfully failed to disclose and actively concealed the Water Pump Defect discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.   Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

484.   Defendants have known, or should have known, for years about the Water Pump Defect in the Class Vehicles, but failed to disclose that the Class Vehicles possessed the Water Pump Defect.   Defendants also knew they were manufacturing, selling, and distributing Class Vehicles that did not perform as advertised and jeopardized the safety of the vehicle's occupants but failed to disclose this information to Plaintiff Meshberg and members of the Illinois Sub-Class.

485.   Defendants committed unconscionable, deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of materials facts concerning the Class Vehicles' Water Pump Defect and corresponding safety risk in connection with the sale and/or advertisement of Class Vehicles.

486.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Meshberg and members of the Illinois Sub-Class that the water pump in the Class Vehicles would not require maintenance, repair or replacement and fraudulently omitted the water pump from its maintenance schedules.

487.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Meshberg and members of the Illinois Sub-Class the characteristics of Class Vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.

/ / /

CLASS ACTION COMPLAINT

488.   Defendants intended that Plaintiff Meshberg and members of the Illinois Sub-Class would, in the course of their decision to expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of Class Vehicle engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals.

489.   Information regarding the Water Pump Defect as described in this Complaint is material to consumers in that the defect results in exorbitant repair or replacement costs, can cause catastrophic engine failure and poses a safety risk.

490.   If Defendants had not concealed the defect from Plaintiff Meshberg and members of the Illinois Sub-Class within the express warranty period, the Water Pump Defect would have been repaired without cost to purchasers as promised under the original warranty.

491.   Defendants violated the ICFA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicle engines were defectively designed and/or manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

492.   Defendants violated the ICFA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicle engines contained defects and would require replacement of expensive internal engine components.

493.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Meshberg and members of the Illinois Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm.

494.   Plaintiff Meshberg and members of the Illinois Sub-Class experienced ascertainable losses in the form of premature failure of the water pump and/or engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and other substantial monetary damages and inconvenience.

CLASS ACTION COMPLAINT

495.   The conduct of Defendants offends public policy as established by statutes and common law, is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to Class Vehicle owners and lessees (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

496.   Pursuant to 815 ILCS 505/10a(a), Plaintiff Meshberg and the Illinois Sub-Class seek monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

497.   Plaintiff Meshberg and the Illinois Sub-Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under the 815 ILCS 505/1 *et seq.*

**E.   Louisiana Counts**

**COUNT XXV**
**Breach of Warranty Against Redhibitory Defects,**
**La. Civ. Code Ann. Art. 2520, 2524**
**(On behalf of the Louisiana Sub-Class against MNAO and MMC)**

498.   Plaintiff Brian Hume incorporates and re-alleges each preceding paragraph as through fully set forth herein.

499.   Plaintiff Brian Hume brings this count on behalf of himself and the members of the Louisiana Sub-Class.

500.   Defendants are and were at all times relevant "sellers" with respect to motor vehicle under La. Civ. Code Ann. art. 2520, 2524.

501.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to La. Civ. Code Ann. Art. 2520, 2524.

502.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect, the

CLASS ACTION COMPLAINT

Water Pump Defect, in their engines (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers, passengers, and other motorists. Thus, Defendants breached the implied warranty of merchantability.

503. Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

504. Defendants were further provided notice by Plaintiff Hume of its breach of warranties when he took his vehicle to Paretti Mazda in Metairie, Louisiana on or around May 14, 2019. Upon information and belief, Paretti Mazda is an authorized dealer of MNAO and its duly authorized agent to perform warranty repairs. Despite this notice, Defendants did not fully cure the breach of warranties and failed to provide a suitable repair or replacement of the defective water pump free of charge within a reasonable time. Instead, Paretti Mazda charged Plaintiff Hume nearly $2,500 to replace the water pump in his Class Vehicle.

505. Defendant MNAO cannot disclaim its implied warranties as it knowingly sold or leased a defective product.

506. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Hume and members of the Louisiana Sub-Class have been damaged in an amount to be proven at trial.

507. Any attempt by MNAO to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods were also unconscionable and inadequate to protect

CLASS ACTION COMPLAINT

Plaintiff Hume and members of the Louisiana Sub-Class.   Among other things, Plaintiff Hume and members of the Louisiana Sub-Class did not determine these time limitations, the terms of which unreasonably favored MNAO.  A gross disparity in bargaining power existed between MNAO and members of the Louisiana Sub-Class, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

508.   Further, as sellers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limited consumer remedies for breach of this warranty.

509.   Plaintiff Hume and members of the Louisiana Sub-Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

510.   The Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of the Water Pump Defect rendering their vehicles inoperable without warning.  Defendants are estopped by their conduct, as alleged herein, from disclaiming any and all implied warranties with respect to the defective water pumps in Class Vehicles.

511.   The Water Pump Defect in the Class Vehicles renders their use so inconvenient that Plaintiff Hume and members of the Louisiana Sub-Class would not have purchased or leased the Class Vehicles had they known of the defect. Accordingly, Plaintiff Hume and the Louisiana Sub-Class are entitled to obtain a rescission of the sale of their Class Vehicles.

512.   Alternatively, the Water Pump Defect diminishes the usefulness of the Class Vehicles or their value so that Plaintiff Hume and members of the Louisiana Sub-Class would still have bought their Class Vehicles but for a lesser price. Accordingly, Plaintiff Hume and the Louisiana Sub-Class are entitled to obtain a reduction of the price.

CLASS ACTION COMPLAINT

513.   The applicable period of prescription for the implied warranty claim has been tolled by the discovery rule and Defendants' fraudulent concealment of the Water Pump Defect, as well as the terms of the express warranty.

514.   Pursuant to La. Civ. Code Ann. Arts. 2531 and 2545, Plaintiff Hume and the Louisiana Sub-Class seek to recover the purchase price with interest from the time it was paid; or else the difference in value of the defective Class Vehicles at the time of sale compared to their value warranted by Defendants; reasonable expenses occasioned by the sales; reasonable attorneys' fees; and any other just and proper relief available.

## COUNT XXVI
### Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* (On behalf of the Nationwide Class and the Louisiana Sub-Class against MNAO and MMC)

515.   Plaintiff Hume incorporates and re-alleges each preceding paragraph as though fully set forth herein.

516.   Plaintiff Hume brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the Louisiana Sub-Class.

517.   Plaintiff Hume satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

518.   Plaintiff Hume and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

519.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

520.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

521.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

522.   Defendant MNAO provided Plaintiff Hume and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[23] Under the warranties provided to Plaintiff Hume and members of the Louisiana Sub-Class, MNAO promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time. As alleged herein, MNAO breached these warranties.

523.   Plaintiff Hume and members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiff Hume and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

524.   Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

525.   Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here. Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to protect Plaintiff Hume and members of the Classes.  Among other things, Plaintiff Hume and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO.  A gross disparity in bargaining power

---

[23] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

526.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

527.   Defendants breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk.  Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendants and presents a safety risk.

528.   Affording Defendants a reasonable opportunity to cure its breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff Hume resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

529.   Plaintiff Hume and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Hume and members of the Classes have not re-accepted their Class Vehicles by retaining them.

530.   The amount in controversy of Plaintiff Hume's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum

of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

531.   Plaintiff Hume, individually and on behalf of members of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT XXVII
### Violation of the Louisiana Product Liability Act ("LPLA"),
### L.A. R.S. 9:2800.51, *et seq.*
### (On behalf of the Louisiana Sub-Class against MNAO and MMC)

532.   Plaintiff Hume incorporates and re-alleges each preceding paragraph as though fully set forth herein.

533.   Plaintiff Hume brings this count on behalf of himself and the members of the Louisiana Sub-Class.

534.   Defendants are "manufacturers" within the meaning of La. R.S. 9:2800.53(1).

535.   Plaintiff Hume and the Louisiana Sub-Class are "claimants" within the meaning of La. R.S. 9:2800.53(4).

536.   Defendants placed the Class Vehicles into trade or commerce, which are "products" within the meaning of La. R.S. 9:2800.53(3).

537.   The LPLA makes manufacturers liable for the damages caused by their products which are "unreasonably dangerous" in one of four ways: 1) in construction or composition; 2) design; 3) inadequate warning; and 4) nonconformity to express warranty.  La. R.S. 9:2800.55-58.

538.  Defendants manufactured, sold and distributed the Class Vehicles including the Water Pump Defect, which render the Class Vehicles unreasonably dangers the Water Pump Defect has an associated safety risk which can lead Class Vehicles to lose power, the ability to steer or brake, and becoming inoperable while driving, putting vehicle operators, passengers, and other motorists at risk for injury.

1   Plaintiff Hume and the Louisiana Sub-Class used the Class Vehicles in a reasonably

2   foreseeable manner by using the vehicles to transport themselves and others.

3       539.   The water pumps within the Cyclone Engines in Class Vehicles are

4   unreasonably dangerous in construction or composition because the sudden loss of

5   power, or the ability to steer or brake does not meet performance standards for

6   engines in any vehicle and deviates in a material way from the manufacturer's

7   specifications.  Furthermore, the Water Pump Defect and its associated safety risk put

8   vehicle operators, passengers, and other motorist at risk for injury due to accidents.

9   The performance standards for engines do not include the risk that their internal water

10  pump will suddenly fail without warning and Defendants' specifications for the Class

11  Vehicles do not include such a risk.

12      540.   The Cyclone Engines, with their Water Pump Defect, are unreasonably

13  dangerous in design because they fail to perform safely when used as intended by

14  ordinary customers in a reasonably foreseeable manner.  When driving the Class

15  Vehicles, Plaintiff Hume and members of the Louisiana Sub-Class are exposed to the

16  risk that their Class Vehicles may suddenly lose power, and become unable to steer

17  or brake the vehicles.  The risk of serious injury and/or exorbitant repair costs from

18  the Water Pump Defect greatly exceeds any benefit from having an internal water

19  pump in their engines and there exist safer alternative methods and designs for the

20  engines in Class Vehicles, such as the engines which are currently being placed into

21  current model year versions of the Class Vehicles.

22      541.   The Class Vehicles are unreasonably dangerous due to the Water Pump

23  Defect and Defendants' failure to give adequate warnings to Plaintiff Hume and the

24  Louisiana Sub-Class about the defect.  At the time Plaintiff Hume and members of

25  the Louisiana Sub-Class purchased their Class Vehicles, Defendants knew, or should

26  have known, the Water Pump Defect in the Class Vehicles could cause the engine to

27  lose power and make it impossible to steer or brake.  Further, Defendants knew, or

28  should have known, that this associated safety risk could cause the Class Vehicles to

become involved in accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

542.   Defendants knowingly concealed, suppressed and/or omitted the existence of the Water Pump Defect and its associated safety risk in the Class Vehicles at the time of their sale or lease and at all relevant times thereafter. Defendants failed to inform Plaintiff Hume and the members of the Louisiana Sub-Class of the Water Pump Defect in their Class Vehicles at the time of purchase or lease and all times thereafter and Plaintiff Hume and the members of the Louisiana Sub-Class had no independent knowledge that Class Vehicles incorporate the Water Pump Defect.

543.   Had Defendants disclosed that the Class Vehicles had the Water Pump Defect and associated safety risk, Plaintiff Hume and the members of the Louisiana Sub-Class would not have purchased or leased the Class Vehicles, would have paid less for their vehicles, or would have had the defective water pumps replaced free of charge within the applicable warranty periods.

544.   The Class Vehicles are also unreasonably dangerous because they do not conform to Defendant MNAO's express warranties that no routine maintenance or inspection is required for the water pump, and that its product is safe and that they will stand being their vehicles, covering any defects with their New Vehicle Limited Warranty.  These express warranties induced Plaintiff Hume and the members of the Louisiana Sub-Class to purchase their Class Vehicles, exposing them to the Water Pump Defect and associated safety risk.  These express warranties were false because the Class Vehicles do require periodic service and/or inspection, the Water Pump Defect exposes Plaintiff Hume and the members of the Louisiana Sub-Class to an associated safety risk,  and because Defendant MNAO refuses to replace defective water pumps and further concealed the existence of the Water Pump Defect so that Plaintiff Hume and members of the Louisiana Sub-Class did not have the defective water pump replaced free of charge within the applicable warranty periods.

CLASS ACTION COMPLAINT

545.   As a proximate and direct result of Defendants' conduct by placing the defective water pumps in the Class Vehicles and selling the Class Vehicles, Plaintiff Hume and the members of the Louisiana Sub-Class have suffered and continue to suffer harm by the threat of sudden engine power loss, and a loss of the ability to steer and/or brake while driving as well as the exorbitant replace costs and actual damages in the amount of the costs of parts and labor to replace the defective water pumps and other vehicle parts damaged by the Water Pump Defect, as well expenses incurred to obtain alternative transportation during the repair and replacement of the water pumps in their Class Vehicles, future cost of repair or replacement of the defective water pumps, and other damages to be determined at trial.  Plaintiff Hume and members of the Louisiana Sub-Class have also suffered the ascertainable loss of the diminished value of their Class Vehicles.

546.   The conduct of Defendants caused unavoidable and substantial injury to Class Vehicle owners and lessees (who were unable to have reasonably avoided the injury due to no fault of their own and Defendants' concealment of the Water Pump Defect) without any countervailing benefits to consumers.

547.   The applicable period of prescription for the LPLA has been tolled by the discovery rule, fraudulent concealment, and the terms of the express warranty.

548.   Pursuant to La. Civ. Code Ann. Art 2315, Plaintiff Hume and the Louisiana Sub-Class seek to recover compensatory damages for past and future harms in an amount to be determined at trial; and any other just and proper relief available.

**F.    Massachusetts Counts**

**COUNT XXVIII**
**Breach of Express Warranty**
**(On behalf of the Massachusetts Sub-Class against MNAO)**

549.   Plaintiffs Amie and Jean Levasseur incorporate and re-allege each preceding paragraph as though fully set forth herein.

CLASS ACTION COMPLAINT

550. Plaintiffs Amie and Jean Levasseur bring this count on behalf of themselves and the members of the Massachusetts Sub-Class.

551. Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to provide maintenance, service, inspection, or repair for the water pumps during the useful life of the engine. Such representations formed the basis of the bargain in Plaintiffs Amie and Jean Levasseur's and members of the Massachusetts Sub-Class's decisions to purchase or lease the Class Vehicles.

552. Defendant MNAO also marketed the Class Vehicles as safe, built to last and reliable vehicles. These statements helped conceal the existence of the Water Pump Defect and its corresponding safety risk from Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class.

553. Defendant MNAO is and was at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

554. With respect to leases, Defendant MNAO is and was at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

555. The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

556. In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO provides maintenance schedules and warranty guides which omit any mention of the water pumps as a component requiring routine inspection, service, or replacement.

557. In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO also provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, Defendant MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold

CLASS ACTION COMPLAINT

under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[24]   Under the warranties provided to Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class, Defendant MNAO promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendant MNAO breached these warranties.

558.   Defendant MNAO's warranties formed a basis of the bargain that was reached when Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Water Pump Defect, Defendant MNAO knew or should have known that the majority of the water pump failures (and corresponding engine damage) occur outside of the warranty periods.

559.   Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect and associated safety risk, which were known and concealed by Defendant MNAO.  Despite the existence of the warranties, Defendant MNAO failed to adequately inform Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class that the Class Vehicles contained the Water Pump Defect and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

560.   Defendant MNAO breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

561.   On information and belief, Defendant MNAO has not suitably repaired or replaced the Water Pump Defect free of charge for Plaintiffs Amie and Jean

---

[24] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

Levasseur, and members of the Massachusetts Sub-Class Class despite the existence of the defect in the Class Vehicles at the time of sale or lease.

562.   Defendant MNAO further breached its express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the water pump although Defendant MNAO knew of the Water Pump Defect and that the water pump required periodic inspection and service.

563.   Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

564.   Defendant MNAO was provided notice of the Water Pump Defect by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA and through its own testing. Affording Defendant MNAO a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant MNAO has known of and concealed the Water Pump Defect and has failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

565.   Defendant MNAO was further provided notice by Plaintiffs Amie and Jean Levasseur of its breach of express warranties they contacted Liberty Mazda in Wakefield, Massachusetts via email on or around May 31, 2019.  Upon information and belief, Liberty Mazda is an authorized dealer of Defendant MNAO and its duly authorized agent to perform warranty repairs.  Despite this notice, Defendant MNAO did not fully cure its breach of written warranties and failed to provide a suitable repair or replacement of the defective water pump free of charge within a reasonable time.  Instead, Liberty Mazda provided them with a rough estimate of $9,500 to replace the engine.

CLASS ACTION COMPLAINT

566.   Any attempt by Defendant MNAO to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Defendant MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendant MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class.  Among other things, Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendant MNAO. A gross disparity in bargaining power existed between Defendant MNAO and members of the Massachusetts Sub-Class, and Defendant MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

567.   Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class whole because, on information and belief, Defendant MNAO has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

568.   Defendant MNAO knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

569.   Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by Defendant MNAO.  Despite the existence of the warranties, Defendant MNAO failed to inform Plaintiffs Amie and Jean Levasseur, and members of the

Massachusetts Sub-Class that the Class Vehicles contained the Water Pump Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the water pump and damaged engine parts to Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class.

570.   Because of the Water Pump Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

571.   As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class have been damaged in an amount to be determined at trial.

572.   Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT XXIX**
**Breach of Implied Warranty of Merchantability**
**(On behalf of the Massachusetts Sub-Class against MNAO and MMC)**

573.   Plaintiffs Amie and Jean Levasseur incorporate and re-allege each preceding paragraph as though fully set forth herein.

574.   Plaintiffs Amie and Jean Levasseur bring this count on behalf of themselves and the members of the Massachusetts Sub-Class.

575.   Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought

CLASS ACTION COMPLAINT

from a third party.   At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

576.   Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

577.   With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

578.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

579.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

580.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.   Thus, Defendants breached the implied warranty of merchantability.

581.   Through its maintenance schedules, MNAO further represented that the water pump would not need inspection, service, repair or replacement and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules.  MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

582.   Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be

CLASS ACTION COMPLAINT

1    unnecessary and futile here because Defendants have known of and concealed the

2    Water Pump Defect and, on information and belief, have refused to repair or replace

3    the Water Pump Defect free of charge within a reasonable time.

4        583.  Defendants were further provided notice by Plaintiffs Amie and Jean

5    Levasseur of their breach of implied warranties when they contacted Liberty Mazda

6    in Wakefield, Massachusetts via email on or around May 31, 2019.  Upon

7    information and belief, Liberty Mazda is an authorized dealer of MNAO and its duly

8    authorized agent to perform warranty repairs.  Despite this notice, Defendants did not

9    fully cure its breach of written warranties and failed to provide a suitable repair or

10   replacement of the defective water pump free of charge within a reasonable time.

11   Instead, Liberty Mazda provided them with a rough estimate of $9,500 to replace the

12   engine.

13       584.  As a direct and proximate result of Defendants' breach of the implied

14   warranty of merchantability, Amie and Jean Levasseur, and members of the

15   Massachusetts Sub-Class have been damaged in an amount to be proven at trial.

16       585.  Any attempt by MNAO to disclaim or limit the implied warranty of

17   merchantability vis-à-vis consumers is unconscionable and unenforceable here.

18   Specifically, MNAO's warranty limitation is unenforceable because it knowingly

19   sold or leased a defective product without informing consumers about the defect.

20   The time limits contained in MNAO's warranty periods were also unconscionable

21   and inadequate to protect Plaintiffs Amie and Jean Levasseur, and members of the

22   Massachusetts Sub-Class.  Among other things, Plaintiffs Amie and Jean Levasseur,

23   and members of the Massachusetts Sub-Class did not determine these time

24   limitations, the terms of which unreasonably favored MNAO.  A gross disparity in

25   bargaining power existed between MNAO and members of the Massachusetts Sub-

26   Class, and MNAO knew or should have known that the Class Vehicles were

27   defective at the time of sale or lease and that the Water Pump Defect posed a safety

28   risk.

586. Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

587. The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XXX**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the Nationwide Class and the Massachusetts**
**Sub-Class against MNAO and MMC)**

588. Plaintiffs Amie and Jean Levasseur incorporate and re-allege each preceding paragraph as though fully set forth herein.

589. Plaintiffs Amie and Jean Levasseur bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Massachusetts Sub-Class.

590. Plaintiffs Amie and Jean Levasseur satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

591. Plaintiffs Amie and Jean Levasseur, and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

592. Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

593. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

594. The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

/ / /

CLASS ACTION COMPLAINT

595.   Defendant MNAO provided Plaintiffs Amie and Jean Levasseur and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[25]  Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, MNAO breached these warranties.

596.   Plaintiffs Amie and Jean Levasseur, and members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiffs and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

597.   Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

598.   Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here. Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to protect Plaintiffs Amie and Jean Levasseur, and members of the Classes.  Among other things, Plaintiffs Amie and Jean Levasseur, and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO.

---

[25] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

A gross disparity in bargaining power existed between MNAO and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

599.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

600.   Defendants breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk.  Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendant MNAO and presents a safety risk.

601.   Affording Defendants a reasonable opportunity to cure its breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

602.   Plaintiffs Amie and Jean Levasseur, and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs Amie and Jean Levasseur, and members of the Classes have not re-accepted their Class Vehicles by retaining them.

603.   The amount in controversy of Plaintiffs Amie and Jean Levasseur's individual claim meets or exceeds the sum of $25.  The amount in controversy of this

CLASS ACTION COMPLAINT

1   action exceeds the sum of $50,000, exclusive of interest and costs, computed on the
2   basis of all claims to be determined in this lawsuit.

3        604.   Plaintiffs Amie and Jean Levasseur, individually and on behalf of
4   members of the Classes, seek all damages permitted by law, including diminution in
5   the value of the Class Vehicles, in an amount to be proven at trial.

6                                   **COUNT XXXI**
7                   **Fraud by Omission or Fraudulent Concealment**
8        **(On behalf of the Massachusetts Sub-Class against MNAO and MMC)**

9        605.   Plaintiffs Amie and Jean Levasseur incorporate and re-allege each
10  preceding paragraph as though fully set forth herein.

11       606.   Plaintiffs Amie and Jean Levasseur bring this count on behalf of
12  themselves and the members of the Massachusetts Sub-Class.

13       607.   Defendants intentionally and knowingly concealed, suppressed and/or
14  omitted material facts including the standard, quality or grade of the Class Vehicles
15  and the fact that the Class Vehicles contain a Water Pump Defect and corresponding
16  safety risk, with the intent that Plaintiffs Amie and Jean Levasseur, and members of
17  the Massachusetts rely on Defendants' omissions.  As a direct result of Defendants'
18  fraudulent conduct, Plaintiffs Amie and Jean Levasseur, and members of the
19  Massachusetts Sub-Class have suffered actual damages.

20       608.   Defendants knew (at the time of sale or lease and thereafter) that the
21  Class Vehicles contained the Water Pump Defect, concealed the defect and never
22  intended to repair or replace the Water Pump Defect during the warranty periods.  To
23  date, Defendants have not provided Plaintiffs Amie and Jean Levasseur, and
24  members of the Massachusetts Sub-Class with a repair or remedy for the Water Pump
25  Defect.

26       609.   Defendants owed a duty to disclose the Water Pump Defect and its
27  corresponding safety risk to Plaintiffs Amie and Jean Levasseur, and members of the
28  Massachusetts Sub-Class because Defendants possessed superior and exclusive

knowledge regarding the defect and made a partial disclosure regarding the safety of the Class Vehicles.  Rather than disclose the defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

610.  The Water Pump Defect is material to Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class because Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Water Pump Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

611.  Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

612.  Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Water Pump Defect would sell more Class Vehicles and would discourage Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class from seeking replacement or repair of the Water Pump Defect during the applicable warranty periods.  Further, Defendants intended to induce Plaintiffs Amie and Jean Levasseur, and members of

CLASS ACTION COMPLAINT

the Massachusetts Sub-Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Water Pump Defect in order to decrease costs and increase profits.

613.   Defendants acted with malice, oppression and fraud.

614.   Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class reasonably relied upon Defendants' knowing concealment and omissions. As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Water Pump Defect and associated safety risk, Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class have suffered actual damages in an amount to be determined at trial.

## COUNT XXXII
### Violation of the Massachusetts Consumer Protection Act ("MCPA")
### Mass. Gen. Laws 93A, § 1, *et seq.*
### (On behalf of the Massachusetts Sub-Class against MNAO and MMC)

615.   Plaintiff Amie and Jean Levasseur incorporate and re-allege each preceding paragraph as though fully set forth herein.

616.   Plaintiffs Amie and Jean Levasseur bring this count on behalf of themselves and the Massachusetts Sub-Class.

617.   Defendants, Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class are "persons" within the meaning of Mass. Gen. Laws 93A, § 1(a).

618.   Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws 93A, § 1(b).

619.   The MCPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws 93A, § 2(a).

620.   In the course of their businesses, Defendants violated the MCPA by misrepresenting to Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class that the water pump in the Class Vehicles would not require maintenance, repair or replacement and fraudulently omitted the water pump from its

CLASS ACTION COMPLAINT

maintenance schedules. Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class the characteristics of Class Vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.

621.  Defendants committed unconscionable, deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of materials facts concerning the Class Vehicles' Water Pump Defect and corresponding safety risk with the intent that Amie and Jean Levasseur, and members of the Massachusetts Sub-Class would rely upon their omissions in connection with the sale and/or advertisement of Class Vehicles.

622.  As such, Defendants violated the Massachusetts Act by:

> (a)  representing that the Class Vehicles have characteristics, uses, benefits, or qualities that they do not have;

> (b)  representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and/or

> (c)  advertising the Class Vehicles with the intent not to sell them as advertised.

623.  Defendants intended that Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class would, in the course of their decision to expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of Class Vehicle engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals.

624.  Information regarding the Water Pump Defect as described in this Complaint is material to consumers in that the defect results in exorbitant repair or replacement costs, can cause catastrophic engine failure and poses a safety risk.

625.   If Defendants had not concealed the defect from Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class within the express warranty period, the Water Pump Defect would have been repaired without cost to purchasers as promised under the original warranty.

626.   Defendants failed to disclose and omitted the existence of the Water Pump Defect in the Class Vehicles. Defendants' omissions caused Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class to be unaware at the time of their purchase of their Class Vehicles that the Water Pump Defect and its accompanying safety hazard existed.

627.   Defendants owed a duty to disclose the material fact that the Class Vehicles contained the Water Pump Defect to Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class, but failed to do so. Defendants had a duty to disclose that the water pumps were defective because, having volunteered to provide information to Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class regarding the safety and reliability of the Class Vehicles, Defendants had a duty to disclose not just the partial truth, but the entire truth: that contrary to Defendants' representations, the Class Vehicles contained a Water Pump Defect and associated safety hazard, the repair of which would likely cost thousands of dollars. Further, knowledge of the existence of the Water Pump Defect was in the superior control of Defendants.

628.   Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class used Defendants' products and had business dealings with Defendants either directly or indirectly through Defendants' authorized dealers and other third parties, and were the intended recipients of the Class Vehicles designed, manufactured and distributed by Defendants.

629. Defendants intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and members of the Massachusetts Class.

CLASS ACTION COMPLAINT

630.  Defendants' deceptive conduct was likely to deceive a reasonable consumer, and did in fact deceive reasonable consumers including Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class.

631.  Plaintiff Amie and Jean Levasseur, and members of the Massachusetts Sub-Class reasonably relied upon Defendants' material omissions and misrepresentations. They had no way of knowing that Defendants' representations were false and misleading. Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts and members of the Massachusetts Class did not (and could not) unravel Defendants' deception on their own.

632.  The facts concealed and omitted by Defendants from Plaintiff Amie and Jean Levasseur, and members of the Massachusetts Sub-Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease.  Had Plaintiff Amie and Jean Levasseur, and members of the Massachusetts Sub-Class known the Water Pump Defect in the Class Vehicles, they would not have purchased or leased their Class Vehicles, or would have paid less for their Class Vehicles.

633.  As Defendants do not maintain a place of business or any assets in the Commonwealth of Massachusetts, Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class are excused from providing a pre-suit demand to Defendants.

634.  Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' conduct.  Pursuant to Mass. Gen. Laws 93A, § 9, Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class seek monetary relief against Defendants measures as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for Plaintiffs Amie and Jean Levasseur, and each member of the Massachusetts Sub-Class.  Because Defendants' conduct was committed willfully and knowingly,

CLASS ACTION COMPLAINT

1   Plaintiffs Amie and Jean Levasseur, and members of the Massachusetts Sub-Class are

2   entitled to recover, for Plaintiffs Amie and Jean Levasseur and each member of the

3   Massachusetts Sub-Class, up to three times actual damages, but no less than two

4   times actual damages.

### G.   Michigan Counts

### COUNT XXXIII
### Breach of Implied Warranty
### (On behalf of the Michigan Sub-Class against MNAO and MMC)

8   635.   Plaintiff Terry Sonneveldt incorporates and re-alleges each preceding

9   paragraph as though fully set forth herein.

10   636.   Plaintiff Sonneveldt brings this count on behalf of himself and the

11   Michigan Sub-Class.

12   637.    Plaintiff Sonneveldt and members of the Michigan Sub-Class purchased

13   or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by

14   and through its authorized agents for retail sales, or were otherwise expected to be the

15   eventual purchasers of the Class Vehicles when bought from a third party.  At all

16   relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller

17   of Class Vehicles.  Defendants knew or had reason to know of the specific use for

18   which the Class Vehicles were purchased or leased.

19   638.   Defendants are and were at all relevant times a merchant and seller of

20   motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform

21   Commercial Code.

22   639.   With respect to leases, Defendants are and were at all relevant times a

23   lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform

24   Commercial Code.

25   640.   The Class Vehicles are and were at all relevant times goods within the

26   meaning of the Uniform Commercial Code.

27   641.   Defendants impliedly warranted that the Class Vehicles were in

28   merchantable condition and fit for the ordinary purpose for which vehicles are used.

642.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.   Thus, Defendants breached the implied warranty of merchantability.

643.   Through its maintenance schedules, MNAO further represented that the water pump would not need repair or replacement and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules.   MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

644.   Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

645.   Defendants were further provided notice by Plaintiff Sonneveldt of its breach of implied warranties by letter dated May 13, 2019 directed to MNAO. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

646.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Sonneveldt and members of the Michigan Sub-Class have been damaged in an amount to be proven at trial.

647.   Any attempt by MNAO to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

CLASS ACTION COMPLAINT

1   Specifically, MNAO's warranty limitation is unenforceable because it knowingly

2   sold or leased a defective product without informing consumers about the defect.

3   The time limits contained in MNAO's warranty periods were also unconscionable

4   and inadequate to protect Plaintiff Sonneveldt and members of the Michigan Sub-

5   Class.  Among other things, Plaintiff Sonneveldt and members of the Michigan Sub-

6   Class did not determine these time limitations, the terms of which unreasonably

7   favored MNAO.  A gross disparity in bargaining power existed between MNAO and

8   members of the Classes, and MNAO knew or should have known that the Class

9   Vehicles were defective at the time of sale or lease and that the Water Pump Defect

10  posed a safety risk.

11      648.   Plaintiff Sonneveldt and members of the Michigan Sub-Class have been

12  excused from performance of any warranty obligations as a result of Defendants'

13  conduct described herein.

14      649.   The applicable statute of limitations for the implied warranty claim has

15  been tolled by the discovery rule and/or fraudulent concealment.

## COUNT XXXIV
### Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*
### (On behalf of the Nationwide Class and the Michigan Sub-Class against MNAO and MMC)

20      650.   Plaintiff Sonneveldt incorporates and re-alleges each preceding

21  paragraph as though fully set forth herein.

22      651.   Plaintiff Sonneveldt brings this count on behalf of himself and the

23  members of the Nationwide Class or, alternatively, on behalf of the Michigan Sub-

24  Class.

25      652.   Plaintiff Sonneveldt satisfies the MMWA jurisdictional requirement

26  because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

27      653.   Plaintiff Sonneveldt and members of the Classes are "consumers" within

28  the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

654. Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

655. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

656. The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

657. Defendant MNAO provided members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[26] Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles. As alleged herein, MNAO breached these warranties.

658. Members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiffs and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

659. Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

660. Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here. Specifically, MNAO's

---

[26] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to protect members of the Classes. Among other things, members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO. A gross disparity in bargaining power existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

661. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

662. Defendants breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendants and presents a safety risk.

663. Affording Defendants a reasonable opportunity to cure its breach of warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

664. Plaintiff Sonneveldt and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all

CLASS ACTION COMPLAINT

payments made by them to Defendants.  Thus, Plaintiff Sonneveldt and members of the Classes have not re-accepted their Class Vehicles by retaining them.

665.   The amount in controversy of Plaintiff Sonneveldt individual claim meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

666.   Plaintiff Sonneveldt, individually and on behalf of members of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT XXXV
### Fraud by Omission or Fraudulent Concealment
### (On behalf of the Michigan Sub-Class against MNAO and MMC)

667.   Plaintiff Sonneveldt incorporates and re-alleges each preceding paragraph as though fully set forth herein.

668.   Plaintiff Sonneveldt brings this count on behalf of himself and the members of the Michigan Sub-Class.

669.   Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Class Vehicles contain a Water Pump Defect and corresponding safety risk, with the intent that Plaintiff Sonneveldt and members of the Michigan Sub-Class rely on Defendants' omissions.   As a direct result of Defendants' fraudulent conduct, Plaintiff Sonneveldt and members of the Michigan Sub-Class have suffered actual damages.

670.   Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Water Pump Defect, concealed the defect and never intended to repair or replace the Water Pump Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Sonneveldt and members of the Michigan Sub-Class with a repair or remedy for the Water Pump Defect.

671.  Defendants owed a duty to disclose the Water Pump Defect and its corresponding safety risk to Plaintiff Sonneveldt and members of the Michigan Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect.  Further, Defendants had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because it consistently marketed the Class Vehicles as safe.

672.  Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.  Rather than disclose the defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

673.  The Water Pump Defect is material to Plaintiff Sonneveldt and members of the Michigan Sub-Class because Plaintiff Sonneveldt and members of the Michigan Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Water Pump Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

674.  Plaintiff Sonneveldt and members of the Michigan Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and

CLASS ACTION COMPLAINT

concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

675.   Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Water Pump Defect would sell more Class Vehicles and would discourage Plaintiff Sonneveldt and members of the Michigan Sub-Class from seeking replacement or repair of the Water Pump Defect during the applicable warranty periods.  Further, Defendants intended to induce Plaintiff Sonneveldt and members of the Michigan Sub-Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Water Pump Defect in order to decrease costs and increase profits.

676.   Defendants acted with malice, oppression and fraud.

677.   Plaintiff Sonneveldt and members of the Michigan Sub-Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Water Pump Defect and associated safety risk, Plaintiff Sonneveldt and members of the Michigan Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT XXXVI**
**Violation of the Michigan Consumer Protection Act ("Michigan CPA"),**
**Mich. Comp. Laws § 445.903, *et seq.***
**(On behalf of the Michigan Sub-Class against MNAO and MMC)**

678.  Plaintiff Sonneveldt incorporates and re-alleges each preceding paragraph as though fully set forth herein.

679.  Plaintiff Sonneveldt brings this count on behalf of himself and the members of the Michigan Sub-Class.

680.  Plaintiffs Sonneveldt and the members of the Michigan Sub-Class are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

CLASS ACTION COMPLAINT

681.   Defendants engaged in the conduct of "trade or commerce" in Michigan within the meaning of Mich. Comp. Laws § 445.902(1)(g).

682.   The Michigan CPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."  Mich. Comp. Laws. § 445.903(1).  Prohibited acts include: "[r]epresenting that goods services have … characteristics … that they do not have;" "[r]epresenting that goods or services are of a particular standard … if they are of another;" "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "[m]aking a representation of fact or statement of fact material to the transaction such that a personal reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."   Mich. Comp. Laws. § 445.903(1)(c), (e), (s), (bb), and (cc).

683.   In violation of the Michigan CPA, Defendants employed deceptive and/or unconscionable acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles in Michigan.  Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Water Pump Defect and corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff Sonneveldt and members of the Michigan Sub-Class.

684.   Defendants intentionally and knowingly misrepresented and omitted facts regarding the Water Pump Defect with the intent to mislead Plaintiff Sonneveldt and members of the Michigan Sub-Class.  Defendants knew, or should have known, that the Water Pump Defect was a latent defect and that the Water Pump Defect was likely to fail outside of the periods of the manufacturer's warranties.  Defendants also

CLASS ACTION COMPLAINT

knew, or should have known, that the Water Pump Defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating.  Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers and other motorists at risk for injury.

685.  Defendants owed a duty to disclose the Water Pump Defect and its corresponding safety risk to Plaintiff Sonneveldt and members of the Michigan Sub-Class because it possessed superior and exclusive knowledge regarding the defect and the risks associated with the Water Pump Defect's failure.  Further, Defendants had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because it consistently marketed the Class Vehicles as safe.

686.  Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.  Rather than disclose the defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

687.  The Water Pump Defect is material to Plaintiff Sonneveldt and members of the Michigan Sub-Class because Plaintiff Sonneveldt and members of the Michigan Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Water Pump Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer

CLASS ACTION COMPLAINT

expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

688.   Rather than disclose the defect, Defendants engaged in deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Water Pump Defect, damaged engine parts and/or the entire engine to Plaintiff Sonneveldt and members of the Michigan Sub-Class.

689.   Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect were intended to mislead consumers and misled Plaintiff Sonneveldt and members of the Michigan Sub-Class.

690.   At all relevant times, Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Water Pump Defect and its corresponding safety risk were material to Plaintiff Sonneveldt and members of the Michigan Sub-Class.  When Plaintiff Sonneveldt and members of the Michigan Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would not contain the Water Pump Defect and would not pose an unavoidable safety risk.  Had Defendants disclosed that the Water Pump Defect existed in the Class Vehicle and/or presented an unavoidable safety risk, Plaintiff Sonneveldt and members of the Michigan Sub-Class would not have purchased or leased the Class Vehicles or would have paid less for their vehicles.  Further, had Defendants disclosed that the Water Pump Defect existed in the Class Vehicles and/or presented an unavoidable safety risk, Plaintiff Sonneveldt and members of the Michigan Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendant MNAO's warranties.

691.   Defendants had a continuous duty to Plaintiff Sonneveldt and members of the Michigan Sub-Class to refrain from unfair and deceptive practices under the MCPA and to disclose the Water Pump Defect.   Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect and its corresponding safety risk are substantially injurious to consumers.   As a result of Defendants' knowing, intentional concealment and/or omission of the Water Pump Defect and corresponding safety risk in violation of the MCPA, Plaintiff Sonneveldt and members of the Michigan Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the water pump and/or actual damages in the amount of the cost to replace the Water Pump Defect, essential engine parts or the entire engine, and damages to be determined at trial.   Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of their business.

692.   Defendants' unlawful acts and practices occurred in the conduct of business activities and commerce.

693.   Defendants has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.   Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

694.   Defendants' unlawful acts and practices affect the public interest and present a continuing safety risk to Plaintiff Sonneveldt and members of the Michigan Sub-Class, as well as the public.

695.   As a direct and proximate result of Defendants' violations of the Michigan CPA, Plaintiff Sonneveldt and members of the Michigan Sub-Class have suffered actual financial loss, actual damages and/or injury-in-fact.

696.   Plaintiff Sonneveldt and members of the Michigan Sub-Class seek actual damages against Defendants in an amount to be determined at trial because Defendants acted wantonly or with such conscious indifference to the consequences that malice may be inferred.

697.   Plaintiff Sonneveldt and members of the Michigan Sub-Class also seek an order enjoining Defendants' unfair, unlawful and/or deceptive practices, awarding costs and attorneys' fees and any other just and proper relief available under the Michigan CPA.

**H.     North Carolina Counts**

**COUNT XXXVII**
**Breach of Express Warranty**
**(On behalf of the North Carolina Sub-Class against MNAO)**

698.   Plaintiff Christopher Lacasse incorporates and re-alleges each preceding paragraph as though fully set forth herein.

699.   Plaintiff Lacasse brings this count on behalf of himself and the members of the North Carolina Sub-Class.

700.   Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to provide maintenance, service, inspection, or repair for the water pumps during the useful life of the engine.   Such representations formed the basis of the bargain in Plaintiff Lacasse's and members of the North Carolina Class' decisions to purchase or lease the Class Vehicles.

701.   Defendant MNAO also marketed the Class Vehicles as safe, built to last and reliable vehicles.   These statements helped conceal the existence of the Water Pump Defect and its corresponding safety risk from Plaintiff Lacasse and members of the North Carolina Sub-Class.

/ / /

/ / /

154                          CLASS ACTION COMPLAINT

702.   Defendant MNAO is and was at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

703.   With respect to leases, Defendant MNAO is and was at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

704.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

705.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO provides maintenance schedules and warranty guides which omit any mention of the water pumps as a component requiring routine inspection, service, or replacement.

706.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO also provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendant MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[27]  Under the warranties provided to Plaintiff Lacasse and members of the North Carolina Sub-Class, Defendant MNAO promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendant MNAO breached these warranties.

707.   Defendant MNAO's warranties formed a basis of the bargain that was reached when Plaintiff Lacasse and members of the North Carolina Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Water Pump

---

[27]  *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

1    Defect, Defendant MNAO knew or should have known that the majority of the water

2    pump failures (and corresponding engine damage) occur outside of the warranty

3    periods.

4         708.   Plaintiff Lacasse and members of the North Carolina Sub-Class

5    experienced the existence of the Water Pump Defect within the warranty periods but

6    had no knowledge of the existence of the defect and associated safety risk, which

7    were known and concealed by Defendant MNAO.   Despite the existence of the

8    warranties, Defendant MNAO failed to adequately inform Plaintiff Lacasse and

9    members of the North Carolina Sub-Class that the Class Vehicles contained the

10   Water Pump Defect and failed to provide a suitable repair or replacement of the

11   Water Pump Defect free of charge within a reasonable time.

12        709.   Defendant MNAO breached the express warranty promising to repair

13   and correct a manufacturing defect or defect in materials or workmanship of any parts

14   it supplied.

15        710.   On information and belief, Defendant MNAO has not suitably repaired

16   or replaced the Water Pump Defect free of charge for Plaintiff Lacasse and members

17   of the North Carolina Sub-Class Class despite the existence of the defect in the Class

18   Vehicles at the time of sale or lease.

19        711.   Defendant MNAO further breached its express warranties by selling

20   Class Vehicles that were defective with respect to engine materials, workmanship,

21   design and manufacture, and were accompanied by an owner's manual and/or

22   maintenance schedule that incorporated no inspection and service intervals for the

23   water pump although Defendant MNAO knew of the Water Pump Defect and that the

24   water pump required periodic inspection and service.

25        712.   Class Vehicles were not of merchantable quality and were unfit for the

26   ordinary purposes for which passenger vehicles are used because of engine materials,

27   workmanship, design and/or manufacturing defects which cause engine failure and/or

28   failure to perform as warranted.

713.   Defendant MNAO was provided notice of the Water Pump Defect by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA and through its own testing.   Affording Defendant MNAO a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant MNAO has known of and concealed the Water Pump Defect and has failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

714.   Defendant MNAO was further provided notice by Plaintiff Lacasse of its breach of express warranties by letter dated February 4, 2019. Despite this notice, Defendant MNAO did not cure its breach of written warranties and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

715.   Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, Defendant MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in Defendant MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiff Lacasse and members of the North Carolina Sub-Class.   Among other things, Plaintiff Lacasse and the members of the North Carolina Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendant MNAO.   A gross disparity in bargaining power existed between Defendant MNAO and members of the North Carolina Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

716.   Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Lacasse and members of the North Carolina Sub-Class

CLASS ACTION COMPLAINT

whole because, on information and belief, Defendant MNAO has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

717. Defendant MNAO knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Lacasse and members of the North Carolina Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

718. Plaintiff Lacasse and the members of the North Carolina Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by Defendant MNAO. Despite the existence of the warranties, Defendant MNAO failed to inform Plaintiff Lacasse and members of the North Carolina Sub-Class that the Class Vehicles contained the Water Pump Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the water pump and damaged engine parts to Plaintiff Lacasse and members of the North Carolina Sub-Class.

719. Because of the Water Pump Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

720. As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiff Lacasse and members of the North Carolina Sub-Class have been damaged in an amount to be determined at trial.

721. Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiff Lacasse and members of the North Carolina Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Lacasse and members of the North Carolina Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

/ / /

CLASS ACTION COMPLAINT

**COUNT XXXVIII**
**Breach of Implied Warranty of Merchantability**
**(On behalf of the North Carolina Sub-Class against MNAO and MMC)**

722.   Plaintiff Lacasse incorporates and re-alleges each preceding paragraph as though fully set forth herein.

723.   Plaintiff Lacasse brings this count on behalf of himself and the members of the North Carolina Sub-Class.

724.   Plaintiff Lacasse and members of the North Carolina Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.   At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.   Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

725.   Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

726.   With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

727.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

728.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

729.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.   The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and

present an undisclosed safety risk to drivers and occupants.   Thus, Defendants breached the implied warranty of merchantability.

730.   Through its maintenance schedules, MNAO further represented that the water pump would not need service, inspection, or repair and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules.  MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

731.  Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

732.  Defendants were further provided notice by Plaintiff Lacasse of its breach of implied warranties by letter dated February 4, 2019 directed to MNAO. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

733.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Lacasse and members of the North Carolina Class have been damaged in an amount to be proven at trial.

734.  Any attempt by MNAO to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiff Lacasse and members of the North Carolina Sub-

CLASS ACTION COMPLAINT

1    Class.   Among other things, Plaintiff Lacasse and members of the North Carolina

2    Sub-Class did not determine these time limitations, the terms of which unreasonably

3    favored MNAO.  A gross disparity in bargaining power existed between MNAO and

4    members of the North Carolina Sub-Class, and MNAO knew or should have known

5    that the Class Vehicles were defective at the time of sale or lease and that the Water

6    Pump Defect posed a safety risk.

7        735.   Plaintiff Lacasse and members of the North Carolina Sub-Class have

8    been  excused  from  performance  of  any  warranty  obligations  as  a  result  of

9    Defendants' conduct described herein.

10       736.   The applicable statute of limitations for the implied warranty claim has

11   been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XXXIX**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the Nationwide Class and the North Carolina Sub-Class against**
**MNAO and MMC)**

16       737.   Plaintiff Lacasse incorporates and re-alleges each preceding paragraph

17   as though fully set forth herein.

18       738.   Plaintiff Lacasse brings this count on behalf of himself and the members

19   of the Nationwide Class or, alternatively, on behalf of the North Carolina Sub-Class.

20       739.   Plaintiff  Lacasse  satisfies  the  MMWA  jurisdictional  requirement

21   because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

22       740.   Plaintiff Lacasse and members of the Classes are "consumers" within

23   the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

24       741.   Defendants are "suppliers" and "warrantors" within the meaning of the

25   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

26       742.   The Class Vehicles are "consumer products" within the meaning of the

27   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

28   / / /

743.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

744.   Defendant MNAO provided Plaintiff Lacasse and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).   For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[28]   Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles.   As alleged herein, MNAO breached these warranties.

745.   Plaintiff Lacasse and members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiffs and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

746.   Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

747.   Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here.   Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to

---

[28]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

1    protect Plaintiff Lacasse and members of the Classes.  Among other things, Plaintiff

2    Lacasse and members of the Classes did not determine these time limitations, the

3    terms of which unreasonably favored MNAO.  A gross disparity in bargaining power

4    existed between MNAO and members of the Classes, and MNAO knew or should

5    have known that the Class Vehicles were defective at the time of sale or lease and

6    that they posed a safety risk.

7        748.   The Class Vehicles' implied warranties are covered under 15 U.S.C. §

8    2301(7).

9        749.   Defendants breached these warranties by failing to disclose and

10   fraudulently concealing information regarding the standard, quality, or grade of the

11   Class Vehicles, and/or the presence of the Water Pump Defect and corresponding

12   safety risk.  Without limitation, the Class Vehicles share a common defect in design,

13   material, manufacturing and/or workmanship that fails to operate as represented by

14   Defendants and presents a safety risk.

15       750.   Affording Defendants a reasonable opportunity to cure its breach of

16   warranties would be unnecessary and futile.  At the time of sale or lease of each Class

17   Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not

18   knowing, of the material omissions concerning the standard, quality or grade of the

19   Class Vehicles and the presence of the Water Pump Defect and corresponding safety

20   risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect.

21   Under the circumstances, the remedies available under any informal settlement

22   procedure would be inadequate and any requirement that Plaintiffs resort to an

23   informal dispute resolution procedure and/or afford Defendants a reasonable

24   opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

25       751.   Plaintiff Lacasse and members of the Classes would suffer economic

26   hardship if they returned their Class Vehicles, but did not receive the return of all

27   payments made by them to Defendants.  Thus, Plaintiff Lacasse and members of the

28   Classes have not re-accepted their Class Vehicles by retaining them.

752.   The amount in controversy of Plaintiff Lacasse individual claim meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

753.   Plaintiff Lacasse, individually and on behalf of members of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT XL
### Violation of the North Carolina Deceptive Trade Practice Act ("NCDTPA"), N.C. Gen. Stat § 75-1.1, *et seq.*
### (On behalf of the North Carolina Sub-Class against MNAO and MMC)

754.   Plaintiff Lacasse incorporates and re-alleges each preceding paragraph as though fully set forth herein.

755.   Plaintiff Lacasse brings this count on behalf of himself and the members of the North Carolina Sub-Class.

756.   Defendants engaged in "commerce" in North Carolina within the meaning of the NCDTPA.  *See* N.C. Gen. Stat. § 75-1.1(b).

757.   The NCDTPA prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat § 75-1.1(a).

758.   In violation of the NCDTPA, Defendants employed deceptive and/or unconscionable acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles in North Carolina.   Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Water Pump Defect and corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff Lacasse and members of the North Carolina Sub-Class.

/ / /

759.   Defendants intentionally and knowingly misrepresented and omitted facts regarding the Water Pump Defect with the intent to mislead Plaintiff Lacasse and members of the North Carolina Sub-Class.  Defendants knew, or should have known, that the Water Pump Defect was a latent defect and that the Water Pump Defect was likely to fail outside of the periods of the manufacturer's warranties. Defendants also knew, or should have known, that the Water Pump Defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating.  Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers and other motorists at risk for injury.

760.   Defendants owed a duty to disclose the Water Pump Defect and its corresponding safety risk to Plaintiff Lacasse and members of the North Carolina Sub-Class because it possessed superior and exclusive knowledge regarding the defect and the risks associated with the Water Pump Defect's failure.  Rather than disclose the defect, Defendants engaged in deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Water Pump Defect, damaged engine parts and/or the entire engine to Plaintiff Lacasse and members of the North Carolina Sub-Class.

761.   Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect were intended to mislead consumers and misled Plaintiff Lacasse and members of the North Carolina Sub-Class.

762.   At all relevant times, Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Water Pump Defect and its corresponding safety risk were material to Plaintiff Lacasse and members of the North Carolina Sub-Class.  When Plaintiff Lacasse and members of the North Carolina Sub-Class purchased or leased their Class Vehicles, they

reasonably relied on the reasonable expectation that the Class Vehicles would not contain the Water Pump Defect and would not pose an unavoidable safety risk.  Had Defendants disclosed that the Water Pump Defect existed in the Class Vehicle and/or presented an unavoidable safety risk, Plaintiff Lacasse and members of the North Carolina Sub-Class would not have purchased or leased the Class Vehicles or would have paid less for their vehicles.  Further had Defendants disclosed that the Water Pump Defect existed in the Class Vehicles and/or presented an unavoidable safety risk, Plaintiff Lacasse and members of the North Carolina Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendant MNAO's warranties.

763.   Defendants had a continuous duty to Plaintiff Lacasse and members of the North Carolina Sub-Class to refrain from unfair and deceptive practices under the NCDTPA and to disclose the Water Pump Defect.  Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect and its corresponding safety risk are substantially injurious to consumers.  As a result of Defendants' knowing, intentional concealment and/or omission of the Water Pump Defect and corresponding safety risk in violation of the NCDTPA, Plaintiff Lacasse and members of the North Carolina Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the water pump and/or actual damages in the amount of the cost to replace the Water Pump Defect, essential engine parts or the entire engine, and damages to be determined at trial.  Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of their business.

764.   Defendants' unlawful acts and practices occurred in the conduct of business activities and commerce.

/ / /

765. Defendants has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

766. Defendants' unlawful acts and practices affect the public interest and present a continuing safety risk to Plaintiff Lacasse and members of the North Carolina Sub-Class, as well as the public.

767. As a direct and proximate result of Defendants' violations of the NCDTPA, Plaintiff Lacasse and members of the North Carolina Sub-Class have suffered actual financial loss, actual damages and/or injury-in-fact.

768. Plaintiff Lacasse and members of the North Carolina Sub-Class seek actual damages and treble damages against Defendants in an amount to be determined at trial because Defendants acted wantonly or with such conscious indifference to the consequences that malice may be inferred.

769. Plaintiff Lacasse and members of the North Carolina Sub-Class also seek an order enjoining Defendants' unfair, unlawful and/or deceptive practices, awarding costs and attorneys' fees and any other just and proper relief available under the NCDTPA.

## I.   Pennsylvania Counts

### COUNT XLI
### Breach of Express Warranty
### (On behalf of the Pennsylvania Sub-Class against MNAO)

770. Plaintiffs Beth and Dan Pickerd incorporate and re-allege each preceding paragraph as though fully set forth herein.

771. Plaintiffs Beth and Dan Pickerd bring this count on behalf of themselves and the members of the Pennsylvania Sub-Class.

/ / /

CLASS ACTION COMPLAINT

772.   Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to provide maintenance, service, inspection, or repair for the water pumps during the useful life of the engine.  Such representations formed the basis of the bargain in Plaintiffs Beth and Dan Pickerd's and members of the Pennsylvania Sub-Class's decisions to purchase or lease the Class Vehicles.

773.   Defendant MNAO also marketed the Class Vehicles as safe, built to last and reliable vehicles. These statements helped conceal the existence of the Water Pump Defect and its corresponding safety risk from Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class.

774.   Defendant MNAO is and was at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

775.   With respect to leases, Defendant MNAO is and was at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

776.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

777.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO provides maintenance schedules and warranty guides which omit any mention of the water pumps as a component requiring routine inspection, service, or replacement.

778.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO also provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendant MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage

for Powertrain components for 5 years or 60,000 miles.[29]   Under the warranties provided to Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class, Defendant MNAO promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendant MNAO breached these warranties.

779.   Defendant MNAO's warranties formed a basis of the bargain that was reached when Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Water Pump Defect, Defendant MNAO knew or should have known that the majority of the water pump failures (and corresponding engine damage) occur outside of the warranty periods.

780.   Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect and associated safety risk, which were known and concealed by Defendant MNAO.  Despite the existence of the warranties, Defendant MNAO failed to adequately inform Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class that the Class Vehicles contained the Water Pump Defect and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

781.   Defendant MNAO breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

782.   On information and belief, Defendant MNAO has not suitably repaired or replaced the Water Pump Defect free of charge for Plaintiffs Beth and Dan

---

[29] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

1   Pickerd, and members of the Pennsylvania Sub-Class Class despite the existence of

2   the defect in the Class Vehicles at the time of sale or lease.

3       783.   Defendant MNAO further breached its express warranties by selling

4   Class Vehicles that were defective with respect to engine materials, workmanship,

5   design and manufacture, and were accompanied by an owner's manual and/or

6   maintenance schedule that incorporated no inspection and service intervals for the

7   water pump although Defendant MNAO knew of the Water Pump Defect and that the

8   water pump required periodic inspection and service.

9       784.   Class Vehicles were not of merchantable quality and were unfit for the

10   ordinary purposes for which passenger vehicles are used because of engine materials,

11   workmanship, design and/or manufacturing defects which cause engine failure and/or

12   failure to perform as warranted.

13      785.   Defendant MNAO was provided notice of the Water Pump Defect by

14   numerous consumer complaints made to its authorized dealers nationwide,

15   complaints to NHTSA and through its own testing.  Affording Defendant MNAO a

16   reasonable opportunity to cure its breach of written warranties would be unnecessary

17   and futile here because Defendant MNAO has known of and concealed the Water

18   Pump Defect and has failed to provide a suitable repair or replacement of the Water

19   Pump Defect free of charge within a reasonable time.

20      786.   Defendant MNAO was further provided notice by Plaintiffs Beth and

21   Dan Pickerd of its breach of express warranties they took their vehicle in for repair to

22   Piazza Mazda in West Chester, Pennsylvania on or around January 24, 2019.  Upon

23   information and belief, Piazza Mazda is an authorized dealer of Defendant MNAO

24   and its duly authorized agent to perform warranty repairs.  Despite this notice,

25   Defendant MNAO did not fully cure its breach of written warranties and failed to

26   provide a suitable repair or replacement of the defective water pump free of charge

27   within a reasonable time.

28   / / /

787. Any attempt by Defendant MNAO to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Defendant MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendant MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class. Among other things, Plaintiffs Beth and Dan Pickerd, and the members of the Pennsylvania Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendant MNAO and members of the Pennsylvania Sub-Class, and Defendant MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

788. Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class whole because, on information and belief, Defendant MNAO has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

789. Defendant MNAO knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

790. Plaintiffs Beth and Dan Pickard, and the members of the Pennsylvania Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by Defendant MNAO. Despite the existence of the warranties, Defendant MNAO failed to inform Plaintiffs Beth and Dan Pickerd, and members of the

CLASS ACTION COMPLAINT

Pennsylvania Sub-Class that the Class Vehicles contained the Water Pump Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the water pump and damaged engine parts to Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class.

791.   Because of the Water Pump Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

792.   As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class have been damaged in an amount to be determined at trial.

793.   Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT XLII
### Breach of Implied Warranty of Merchantability
### (On behalf of the Pennsylvania Sub-Class against MNAO and MMC)

794.   Plaintiffs Beth and Dan Pickerd incorporate and re-allege each preceding paragraph as though fully set forth herein.

795.   Plaintiffs Beth and Dan Pickerd bring this count on behalf of themselves and the members of the Pennsylvania Sub-Class.

796.   Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a

CLASS ACTION COMPLAINT

third party.  At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

797.   Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

798.   With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

799.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

800.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

801.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached the implied warranty of merchantability.

802.   Through its maintenance schedules, MNAO further represented that the water pump would not need inspection, service, repair or replacement and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules.  MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

803.   Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be

unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

804.   Defendants were further provided notice by Plaintiffs Beth and Dan Pickerd of their breach of implied warranties when they took their vehicle in for repair to Piazza Mazda in West Chester, Pennsylvania on or around January 24, 2019. Upon information and belief, Piazza Mazda is an authorized dealer of MNAO and its duly authorized agent to perform warranty repairs.  Despite this notice, Defendants did not fully cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective water pump free of charge within a reasonable time.

805.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class have been damaged in an amount to be proven at trial.

806.   Any attempt by MNAO to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class.  Among other things, Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class did not determine these time limitations, the terms of which unreasonably favored MNAO.  A gross disparity in bargaining power existed between MNAO and members of the Pennsylvania Sub-Class, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

/ / /

/ / /

807.   Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

808.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XLIII**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301,** *et seq.*
**(On behalf of the Nationwide Class and the Pennsylvania Sub-Class against**
**MNAO and MMC)**

809.   Plaintiffs Beth and Dan Pickerd incorporate and re-allege each preceding paragraph as though fully set forth herein.

810.   Plaintiffs Beth and Dan Pickerd bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Pennsylvania Sub-Class.

811.   Plaintiffs Beth and Dan Pickerd satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

812.   Plaintiffs Beth and Dan Pickerd, and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

813.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

814.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

815.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

/ / /

816. Defendant MNAO provided Plaintiffs Beth and Dan Pickerd and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[30] Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles. As alleged herein, MNAO breached these warranties.

817. Plaintiffs Beth and Dan Pickerd, and members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiffs and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

818. Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

819. Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here. Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to protect Plaintiffs Beth and Dan Pickerd, and members of the Classes. Among other things, Plaintiffs Beth and Dan Pickerd, and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO.

---

[30] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

A gross disparity in bargaining power existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

820. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

821. Defendants breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendants and presents a safety risk.

822. Affording Defendants a reasonable opportunity to cure its breach of warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

823. Plaintiffs Beth and Dan Pickerd, and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants. Thus, Plaintiffs Beth and Dan Pickerd, and members of the Classes have not re-accepted their Class Vehicles by retaining them.

824. The amount in controversy of Plaintiffs Beth and Dan Pickerd's individual claim meets or exceeds the sum of $25. The amount in controversy of this

1    action exceeds the sum of $50,000, exclusive of interest and costs, computed on the

2    basis of all claims to be determined in this lawsuit.

3        825.   Plaintiffs Beth and Dan Pickerd, individually and on behalf of members

4    of the Classes, seek all damages permitted by law, including diminution in the value

5    of the Class Vehicles, in an amount to be proven at trial.

6                                **COUNT XLIV**

7                  **Fraud by Omission or Fraudulent Concealment**

8        **(On behalf of the Pennsylvania Sub-Class against MNAO and MMC)**

9        826.   Plaintiffs Beth and Dan Pickerd incorporate and re-allege each preceding

10   paragraph as though fully set forth herein.

11       827.   Plaintiffs Beth and Dan Pickerd bring this count on behalf of themselves

12   and the members of the Pennsylvania Sub-Class.

13       828.   Defendants intentionally and knowingly concealed, suppressed and/or

14   omitted material facts including the standard, quality or grade of the Class Vehicles

15   and the fact that the Class Vehicles contain a Water Pump Defect and corresponding

16   safety risk, with the intent that Plaintiffs Beth and Dan Pickerd, and members of the

17   Pennsylvania Sub-Class rely on Defendants' omissions.   As a direct result of

18   Defendants' fraudulent conduct, Plaintiffs Beth and Dan Pickerd, and members of the

19   Pennsylvania Sub-Class have suffered actual damages.

20       829.   Defendants knew (at the time of sale or lease and thereafter) that the

21   Class Vehicles contained the Water Pump Defect, concealed the defect and never

22   intended to repair or replace the Water Pump Defect during the warranty periods.  To

23   date, Defendants have not provided Plaintiffs Beth and Dan Pickerd, and members of

24   the Pennsylvania Sub-Class with a repair or remedy for the Water Pump Defect.

25       830.   Defendants owed a duty to disclose the Water Pump Defect and its

26   corresponding safety risk to Plaintiffs Beth and Dan Pickerd, and members of the

27   Pennsylvania Sub-Class because Defendants possessed superior and exclusive

28   knowledge regarding the defect and made a partial disclosure regarding the safety of

                                        178                    CLASS ACTION COMPLAINT

the Class Vehicles.  Rather than disclose the defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

831.   The Water Pump Defect is material to Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class because Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Water Pump Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

832.   Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

833.   Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Water Pump Defect would sell more Class Vehicles and would discourage Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class from seeking replacement or repair of the Water Pump Defect during the applicable warranty periods.  Further, Defendants intended to induce Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class into purchasing or leasing the Class Vehicles and to

CLASS ACTION COMPLAINT

1  discourage them from seeking replacement or repair of the Water Pump Defect in

2  order to decrease costs and increase profits.

3      834.   Defendants acted with malice, oppression and fraud.

4      835.   Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-

5  Class reasonably relied upon Defendants' knowing concealment and omissions.  As a

6  direct and proximate result of Defendants' omissions and active concealment of

7  material facts regarding the Water Pump Defect and associated safety risk, Plaintiffs

8  Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class have suffered

9  actual damages in an amount to be determined at trial.

**COUNT XLV**
**Violation of the Pennsylvania Unfair Trade Practices and**
**Consumer Protection Law ("PUTPCPL"),**
**73 P.S. §§ 201-1,** *et seq.*
**(On behalf of the Pennsylvania Sub-Class against MNAO and MMC)**

14     836.   Plaintiffs Beth and Dan Pickerd incorporate and re-allege each preceding

15  paragraph as though fully set forth herein.

16     837.   Plaintiffs Beth and Dan Pickerd bring this count on behalf of themselves

17  and the members of the Pennsylvania Sub-Class.

18     838.   Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-

19  Class are persons within the context of the PUTPCPL, *see* 73 P.S. § 201-1, who

20  purchased and/or leased class vehicles for personal, family, or household use.

21     839.   Defendants are "persons" within the context of the PUTPCPL.  *See* 73

22  P.S. § 201(2).

23     840.   Defendants engaged in trade and commerce within the context of

24  PUTPCPL, 73 P.S. § 201-2(3).

25     841.   Defendants violated 73 P.S. § 201-2(4)(v) by representing that Class

26  Vehicles have characteristics, uses, benefits and/or qualities that they do not possess.

27     842.   Defendants violated 73 P.S. § 201-2(4)(vii) by representing that Class

28  Vehicles are of a particular standard, quality or grade, when they are of another.

843.   Defendants violated 73 P.S. § 201-2(4)(iv) by advertising Class Vehicles without intent to sell or lease as advertised.

844.   Defendants violated 73 P.S. § 201-2(4)(xxi) by deception, fraud, false pretense, false promise, misrepresentation, knowing concealment, suppression and/or omission of material facts concerning Class Vehicles with the intent to deceive Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class.

845.   Defendants committed unconscionable, deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of materials facts concerning the Class Vehicles' Water Pump Defect and corresponding safety risk with the intent that Plaintiffs Beth and Dan Pickerd and members of the Pennsylvania Sub-Class would rely upon their omissions in connection with the sale and/or advertisement of Class Vehicles.

846.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiffs Beth and Dan Pickerd and members of the Pennsylvania Sub-Class that the water pump in the Class Vehicles would not require maintenance, repair or replacement and fraudulently omitted the water pump from its maintenance schedules.

847.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class the characteristics of Class Vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.

848.   Defendants intended that Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class would, in the course of their decision to expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of Class Vehicle engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals.

CLASS ACTION COMPLAINT

849.   Information regarding the Water Pump Defect as described in this Complaint is material to consumers in that the defect results in exorbitant repair or replacement costs, can cause catastrophic engine failure and poses a safety risk.

850.   If Defendants had not concealed the defect from Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class within the express warranty period, the Water Pump Defect would have been repaired without cost to purchasers as promised under the original warranty.

851.   Defendants violated the PUTPCPL by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicle engines were defectively designed and/or manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

852.   Defendants violated the PUTPCPL by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicle engines contained defects and would require replacement of expensive internal engine components.

853.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm.

854.   Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class experienced premature failure of the water pump and/or engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and other substantial monetary damages and inconvenience.

855.   The conduct of Defendants offends public policy as established by statutes and common law, is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to Class Vehicle owners and lessees (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

CLASS ACTION COMPLAINT

856.   Plaintiffs Beth and Dan Pickerd, and members of the Pennsylvania Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages, including multiple damages, interest, costs, and attorneys' fees and injunctive relief, including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices as described in the Complaint.

**J.     Texas Counts**

**COUNT XLVI**
**Breach of Express Warranty**
**(On behalf of the Texas Sub-Class against MNAO)**

857.   Plaintiffs Erin Matheny and Tim Halwas incorporate and re-allege each preceding paragraph as though fully set forth herein.

858.   Plaintiffs Matheny and Halwas bring this count on behalf of themselves and the members of the Texas Sub-Class.

859.   Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to provide maintenance, service, inspection, or repair for the water pumps during the useful life of the engine.  Such representations formed the basis of the bargain in Plaintiffs Matheny and Halwas' and members of the Texas Sub-Class's decisions to purchase or lease the Class Vehicles.

860.   Defendant MNAO also marketed the Class Vehicles as safe, built to last and reliable vehicles. These statements helped conceal the existence of the Water Pump Defect and its corresponding safety risk from Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class.

861.   Defendant MNAO is and was at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

/ / /

/ / /

862.   With respect to leases, Defendant MNAO is and was at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

863.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

864.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO provides maintenance schedules and warranty guides which omit any mention of the water pumps as a component requiring routine inspection, service, or replacement.

865.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO also provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties.   For illustrative purposes, Defendant MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[31]   Under the warranties provided to Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class, Defendant MNAO promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.   As alleged herein, Defendant MNAO breached these warranties.

866.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class purchased or leased their Class Vehicles.   Given the latent nature of the Water Pump Defect, Defendant MNAO knew or should have known that the majority of the water pump failures (and corresponding engine damage) occur outside of the warranty periods.

/ / /

---

[31]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

867. Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect and associated safety risk, which were known and concealed by Defendant MNAO. Despite the existence of the warranties, Defendant MNAO failed to adequately inform Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class that the Class Vehicles contained the Water Pump Defect and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

868. Defendant MNAO breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

869. On information and belief, Defendant MNAO has not suitably repaired or replaced the Water Pump Defect free of charge for Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class Class despite the existence of the defect in the Class Vehicles at the time of sale or lease.

870. Defendant MNAO further breached its express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the water pump although Defendant MNAO knew of the Water Pump Defect and that the water pump required periodic inspection and service.

871. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

872. Defendant MNAO was provided notice of the Water Pump Defect by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA and through its own testing. Affording Defendant MNAO a

CLASS ACTION COMPLAINT

1  reasonable opportunity to cure its breach of written warranties would be unnecessary
2  and futile here because Defendant MNAO has known of and concealed the Water
3  Pump Defect and has failed to provide a suitable repair or replacement of the Water
4  Pump Defect free of charge within a reasonable time.

5      873.   Defendant MNAO was further provided notice by Plaintiff Matheny of
6  its breach of express warranties by phone call in July 2018 as well as when she took
7  her vehicle in for repair to Classic Chrysler Jeep Dodge Mazda ("Classic Mazda") in
8  Denton, Texas on or around June 21, 2018.  Upon information and belief, Classic
9  Mazda is an authorized dealer of Defendant MNAO and its duly authorized agent to
10  perform warranty repairs.  Despite these notices, Defendant MNAO did not fully cure
11  its breach of written warranties and failed to provide a suitable repair or replacement
12  of the defective water pump free of charge within a reasonable time.  Instead, MNAO
13  instructed its authorized dealership to only charge Plaintiff Matheny half the cost to
14  repair her Class Vehicle.

15      874.   Defendant MNAO was further provided notice by Plaintiff Halwas of its
16  breach of express warranties when he took his vehicle in for repair to Town North
17  Mazda in Richardson, Texas on or around May 21, 2019.  Upon information and
18  belief, Town North Mazda is an authorized dealer of Defendant MNAO and its duly
19  authorized agent to perform warranty repairs.  Despite this notice, Defendant MNAO
20  did cure its breach of written warranties and failed to provide a suitable repair or
21  replacement of the defective water pump free of charge within a reasonable time.
22  Instead submitting this as a warranty repair, Town North Mazda quoted Plaintiff
23  Halwas an engine replacement cost of over $11,400.

24      875.   Defendant MNAO was also provided further written notice by Plaintiffs
25  Matheny and Halwas on June 28, 2019.

26      876.   Any attempt by Defendant MNAO to disclaim or limit recovery to the
27  terms of the express warranties is unconscionable and unenforceable here.
28  Specifically, Defendant MNAO's warranty limitation is unenforceable because it

knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendant MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class. Among other things, Plaintiffs Matheny, Halwas, and the members of the Texas Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendant MNAO. A gross disparity in bargaining power existed between Defendant MNAO and members of the Texas Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

877. Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class whole because, on information and belief, Defendant MNAO has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

878. Defendant MNAO knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

879. Plaintiffs Matheny, Halwas, and the members of the Texas Sub-Class experienced the existence of the Water Pump Defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by Defendant MNAO. Despite the existence of the warranties, Defendant MNAO failed to inform Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class that the Class Vehicles contained the Water Pump Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the water pump and damaged engine parts to Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class.

/ / /

CLASS ACTION COMPLAINT

880.   Because of the Water Pump Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

881.   As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class have been damaged in an amount to be determined at trial.

882.   Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Matheny, Halwas, and members of the Texas Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT XLVII
### Breach of Implied Warranty of Merchantability
### (On behalf of the Texas Sub-Class against MNAO and MMC)

883.   Plaintiffs Matheny and Halwas incorporate and re-allege each preceding paragraph as though fully set forth herein.

884.   Plaintiffs Matheny and Halwas bring this count on behalf of themselves and the members of the Texas Sub-Class.

885.   Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.   At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

/ / /

/ / /

CLASS ACTION COMPLAINT

886.   Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

887.   With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

888.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

889.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

890.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached the implied warranty of merchantability.

891.   Through its maintenance schedules, MNAO further represented that the water pump would not need inspection, service, repair or replacement and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules.  MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

892.   Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

893.   Defendants were further provided notice by Plaintiff Matheny of their breach of implied warranties by phone call to MNAO in July 2018 and as well as when she took her vehicle in for repair to Classic Mazda in Denton, Texas on or about June 21, 2018.  Upon information and belief, Classic Mazda is an authorized dealer of MNAO and its duly authorized agent to perform warranty repairs.  Despite these notices, Defendants did not fully cure their breach of implied warranties and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.  Instead, MNAO instructed its authorized dealership to only charge Plaintiff Matheny half the cost to repair her Class Vehicle.

894.   Defendants were further provided notice by Plaintiff Halwas of their breach of implied warranties when he took his vehicle in for repair to Town North Mazda in Richardson, Texas on or around May 21, 2019.  Upon information and belief, Town North Mazda is an authorized dealer of MNAO and its duly authorized agent to perform warranty repairs.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective water pump free of charge within a reasonable time.  Instead, Town North Mazda quoted Plaintiff Halwas an engine replacement cost of over $11,400.

895.   Defendants were also provided further written notice by Plaintiffs Matheny and Halwas on June 28, 2019 directed to MNAO.

896.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class have been damaged in an amount to be proven at trial.

897.   Any attempt by MNAO to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiffs Matheny, Halwas, and members of the Texas

190                    CLASS ACTION COMPLAINT

Sub-Class.   Among other things, Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class did not determine these time limitations, the terms of which unreasonably favored MNAO.   A gross disparity in bargaining power existed between MNAO and members of the Texas Sub-Class, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

898.   Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

899.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XLVIII**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the Nationwide Class and the Texas Sub-Class against MNAO and MMC)**

900.   Plaintiffs Matheny and Halwas incorporate and re-allege each preceding paragraph as though fully set forth herein.

901.   Plaintiffs Matheny and Halwas bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Texas Sub-Class.

902.   Plaintiffs Matheny and Halwas satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

903.   Plaintiffs Matheny, Halwas, and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

904.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

905.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

906.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

907.   Defendant MNAO provided Plaintiffs Matheny, Halwas, and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).   For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[32]   Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles.   As alleged herein, MNAO breached these warranties.

908.   Plaintiffs Matheny, Halwas, and members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiffs and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

909.   Defendants were provided notice by letter dated May 13, 2019, directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

910.   Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here.   Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a

---

[32]   *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet).   *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

defective product without informing consumers about the defect.  The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to protect Plaintiffs Matheny, Halwas, and members of the Classes.  Among other things, Plaintiffs Matheny, Halwas, and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO.  A gross disparity in bargaining power existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

911.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

912.   Defendants these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendants and presents a safety risk.

913.   Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

914.   Plaintiffs Matheny, Halwas, and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return

1    of all payments made by them to Defendants.  Thus, Plaintiffs Matheny, Halwas, and

2    members of the Classes have not re-accepted their Class Vehicles by retaining them.

3         915.   The amount in controversy of Plaintiffs Matheny's and Halwas'

4    individual claim meets or exceeds the sum of $25.  The amount in controversy of this

5    action exceeds the sum of $50,000, exclusive of interest and costs, computed on the

6    basis of all claims to be determined in this lawsuit.

7         916.   Plaintiffs Matheny and Halwas, individually and on behalf of members

8    of the Classes, seek all damages permitted by law, including diminution in the value

9    of the Class Vehicles, in an amount to be proven at trial.

10                           **COUNT XLIX**
11        **Violation of the Texas Deceptive Trade Practices-Consumer**
                        **Protection Act ("TDTPCPA"),**
12                 **Tex. Bus. & Com. Code § 17.41, *et seq.***
13        **(On behalf of the Texas Sub-Class against MNAO and MMC)**

14        917.   Plaintiffs Matheny and Halwas incorporate and re-allege each preceding

15   paragraph as though fully set forth herein.

16        918.   Plaintiffs Matheny and Halwas bring this count on behalf of themselves

17   and the members of the Texas Sub-Class.

18        919.   Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class are

19   "consumers" within the meaning of the TDTPCPA.  *See* Tex. Bus. & Com. Code §

20   17.45(4).

21        920.   Defendants are "persons" within the meaning of the TDTPCPA.  *See*

22   Tex. Bus. & Com. Code § 17.45(3).

23        921.   The Class Vehicles are "goods" within the meaning of the TDTPCPA.

24   *See* Tex. Bus. & Com. Code § 17.45(1).

25        922.   Defendants engaged in "commerce" in Texas within the meaning of the

26   TDTPCPA.  *See* Tex. Bus. & Com. Code § 17.45(6).

27   / / /

28   / / /

                              194                CLASS ACTION COMPLAINT

923.   The TDTPCPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a).

924.   Defendants violated Tex. Bus. & Com. Code § 17.46(a) and 17.46(b)(5) by representing that Class Vehicles have characteristics, uses, benefits and/or qualities that they do not possess.

925.   Defendants violated Tex. Bus. & Com. Code § 17.46(a) and 17.46(b)(7) by representing that Class Vehicles are of a particular standard, quality or grade, when they are not.

926.   Defendants violated Tex. Bus. & Com. Code § 17.46(a) and 17.46(b)(9) by advertising Class Vehicles without intent to sell or lease as advertised.

927.   Defendants violated Tex. Bus. & Com. Code § 17.46(a) and 17.46(b)(11) by selling Class Vehicles knowing that a service, replacement or repair was needed and failing to disclose that fact.

928.   Defendants violated Tex. Bus. & Com. Code § 17.46(a) and 17.46(b)(24) by failing to disclose the existence of the Water Pump Defect with the intent to deceive Plaintiff Matheny and members of the Texas Sub-Class and to induce them into purchasing the Class Vehicles.

929.   Defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the TDTPCPA as described in this Complaint in violation of Tex. Bus. & Com. Code § 17.46(a) and (b).

930.   Defendant MNAO also violated the TDTPCPA by breaching express and implied warranties as described in this Complaint. *See* Tex. Bus. & Com. Code § 17.50(a)(2).

931.   In violation of the TDTPCPA, Defendants employed deceptive and/or unconscionable acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or

195                          CLASS ACTION COMPLAINT

1   lease of Class Vehicles in Texas.   Defendants knowingly concealed, suppressed

2   and/or omitted material facts regarding the Water Pump Defect and corresponding

3   safety risk, and misrepresented the standard, quality or grade of the Class Vehicles,

4   which directly caused harm to Plaintiffs Matheny, Halwas, and members of the Texas

5   Sub-Class who relied upon those representations and/or omissions.

6       932.   Defendants intentionally and knowingly misrepresented and omitted

7   facts regarding the Water Pump Defect with the intent to mislead Plaintiffs Matheny,

8   Halwas, and members of the Texas Sub-Class.   Defendants knew, or should have

9   known, that the Water Pump Defect was a latent defect and that the Water Pump

10  Defect was likely to fail outside of the periods of the manufacturer's warranties.

11  Defendants also knew, or should have known, that the Water Pump Defect in the

12  Class Vehicles could cause catastrophic engine failure leading to a loss of engine

13  power while the vehicle was operating.   Further, Defendants knew, or should have

14  known, that such loss of power could cause the Class Vehicles to become involved in

15  rear-end collisions or other accidents, putting vehicle operators, passengers and other

16  motorists at risk for injury.

17      933.   Defendants owed a duty to disclose the Water Pump Defect and its

18  corresponding safety risk to Plaintiffs Matheny, Halwas, and members of the Texas

19  Sub-Class because it possessed superior and exclusive knowledge regarding the

20  defect and the risks associated with the Water Pump Defect's failure.   Rather than

21  disclose the defect, Defendants engaged in deceptive trade practices in order to sell

22  additional Class Vehicles and wrongfully transfer the cost of repair or replacement of

23  the Water Pump Defect, damaged engine parts and/or the entire engine to Plaintiffs

24  Matheny, Halwas, and members of the Texas Sub-Class.

25      934.   Defendants' unconscionable or deceptive acts or practices, affirmative

26  misrepresentations and/or material omissions regarding the Water Pump Defect were

27  intended to mislead consumers and misled Plaintiffs Matheny, Halwas, and members

28  of the Texas Sub-Class.

196                 CLASS ACTION COMPLAINT

935.   At all relevant times, Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Water Pump Defect and its corresponding safety risk were material to Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class.   When Plaintiff Matheny, Halwas, and members of the Texas Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would not contain the Water Pump Defect and would not pose an unavoidable safety risk.  Had Defendants disclosed that the Water Pump Defect existed in the Class Vehicle and/or presented an unavoidable safety risk, Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class would not have purchased or leased the Class Vehicles or would have paid less for their vehicles.  Further, had Defendants disclosed that the Water Pump Defect existed in the Class Vehicles and/or presented an unavoidable safety risk, Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendant MNAO's warranties.

936.   Defendants had a continuous duty to Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class to refrain from unfair and deceptive practices under the TDTPCPA and to disclose the Water Pump Defect.  Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect and its corresponding safety risk are substantially injurious to consumers.  As a result of Defendants' knowing, intentional concealment and/or omission of the Water Pump Defect and corresponding safety risk in violation of the TDTPCPA, Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the water pump and/or actual damages in the amount of the cost to replace the Water Pump Defect, essential engine parts or the entire engine, and damages to be determined at trial.  Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of

197                                CLASS ACTION COMPLAINT

1  their vehicles as a result of Defendants' deceptive and unfair acts and practices in the
2  course of their business.

3      937.   Defendants' unlawful acts and practices occurred in the conduct of
4  business activities and commerce.

5      938.   Defendants have knowingly and willfully engaged in the unfair and
6  deceptive trade practices alleged herein.   Further, Defendants unconscionably
7  marketed the Class Vehicles to uninformed consumers in order to maximize profits
8  by selling additional Class Vehicles containing the undisclosed latent defect and
9  corresponding safety risk.

10     939.   Defendants' unlawful acts and practices affect the public interest and
11  present a continuing safety risk to Plaintiffs Matheny, Halwas, and members of the
12  Texas Sub-Class, as well as the public.

13     940.   Defendants were provided written notice of the claims of Plaintiffs
14  Matheny, Halwas, and members of the Texas Sub-Class on June 28, 2019, directed to
15  MNAO.

16     941.   As a direct and proximate result of Defendants' violations of the
17  TDTPCPA, Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class have
18  suffered actual financial loss, actual damages and/or injury-in-fact.

19     942.   Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class seek
20  actual damages and treble damages against Defendants in an amount to be
21  determined at trial because Defendants acted wantonly or with such conscious
22  indifference to the consequences that malice may be inferred.

23     943.   Plaintiffs Matheny, Halwas, and members of the Texas Sub-Class also
24  seek an order enjoining Defendants' unfair, unlawful and/or deceptive practices,
25  awarding costs and attorneys' fees and any other just and proper relief available
26  under the TDTPCPA.

27  / / /

28  / / /

198                     CLASS ACTION COMPLAINT

**K.     Virginia Counts**

**COUNT L**
**Breach of Express Warranty**
**(On behalf of the Virginia Sub-Class against MNAO)**

944.   Plaintiffs Lewis Delvecchio and Jon Sowards incorporate and re-allege each preceding paragraph as though fully set forth herein.

945.   Plaintiffs Delvecchio and Sowards bring this count on behalf of themselves and the members of the Virginia Sub-Class.

946.   Defendant MNAO represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to provide maintenance, service, inspection, or repair for the water pumps during the useful life of the engine.   Such representations formed the basis of the bargain in Plaintiffs Delvecchio's and Soward's and members of the Virginia Class' decisions to purchase or lease the Class Vehicles.

947.   Defendant MNAO also marketed the Class Vehicles as safe, built to last and reliable vehicles.   These statements helped conceal the existence of the Water Pump Defect and its corresponding safety risk from Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class.

948.   Defendant MNAO is and was at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

949.   With respect to leases, Defendant MNAO is and was at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

950.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

951.   In connection with the purchase or lease of each of the Class Vehicles, Defendant MNAO provides maintenance schedules and warranty guides which omit

1   any mention of the water pumps as a component requiring routine inspection, service,
2   or replacement.

3       952.   In connection with the purchase or lease of each of the Class Vehicles,
4   Defendant MNAO also provides warranty coverage for the Class Vehicles under one
5   or more manufacturer's warranties.   For illustrative purposes, Defendant MNAO
6   currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold
7   under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage
8   for Powertrain components for 5 years or 60,000 miles.[33]   Under the warranties
9   provided to Plaintiff Delvecchio, Sowards, and members of the Virginia Sub-Class,
10  Defendant MNAO promised to repair or replace covered components arising out of
11  defects in materials and/or workmanship, including the Water Pump Defect, at no
12  cost to owners and lessees of the Class Vehicles and within a reasonable time.   As
13  alleged herein, Defendant MNAO breached these warranties.

14      953.   Defendant MNAO's warranties formed a basis of the bargain that was
15  reached when Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-
16  Class purchased or leased their Class Vehicles.   Given the latent nature of the Water
17  Pump Defect, Defendant MNAO knew or should have known that the majority of the
18  water pump failures (and corresponding engine damage) occur outside of the
19  warranty periods.

20      954.   Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class
21  experienced the existence of the Water Pump Defect within the warranty periods but
22  had no knowledge of the existence of the defect and associated safety risk, which
23  were known and concealed by Defendant MNAO.   Despite the existence of the
24  warranties, Defendant MNAO failed to adequately inform Plaintiffs Delvecchio,
25  Sowards, and members of the Virginia Sub-Class that the Class Vehicles contained

26
27
28
[33] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also*
https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

the Water Pump Defect and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

955.   Defendant MNAO breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

956.   On information and belief, Defendant MNAO has not suitably repaired or replaced the Water Pump Defect free of charge for Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class Class despite the existence of the defect in the Class Vehicles at the time of sale or lease.

957.   Defendant MNAO further breached its express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the water pump although Defendant MNAO knew of the Water Pump Defect and that the water pump required periodic inspection and service.

958.   Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

959.   Defendant MNAO was provided notice of the Water Pump Defect by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA and through its own testing.  Affording Defendant MNAO a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant MNAO has known of and concealed the Water Pump Defect and has failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

960.   Defendant MNAO was further provided notice by Plaintiff Delvecchio when he presented his vehicle for repair at Whitten Brothers Mazda in Richmond,

CLASS ACTION COMPLAINT

1   Virginia on November 20, 2017. Upon information and belief, Whitten Brothers
2   Mazda is an authorized dealer of Defendant MNAO and its duly authorized agent to
3   perform warranty repairs.  Upon diagnosing the water pump failure in his Class
4   Vehicle, Whitten Brothers Mazda charged Plaintiff Delvecchio over $1,700 to
5   replace the water pump as well as perform the associated repairs.  Despite this notice,
6   Defendant MNAO did not cure its breach of written warranties and failed to provide
7   a suitable repair or replacement of the Water Pump Defect free of charge within a
8   reasonable time.

9      961.   Defendant MNAO was further provided notice by Plaintiff Sowards
10  when he presented his vehicle for repair at Nelson Mazda in Murfreesboro,
11  Tennessee on January 15, 2019.  Upon information and belief, Nelson Mazda is an
12  authorized dealer of Defendant MNAO and its duly authorized agent to perform
13  warranty repairs.  Upon diagnosing the water pump failure in his Class Vehicle,
14  Nelson Mazda charged Plaintiff Sowards over $8,600 to replace the engine with a
15  rebuilt engine.  Plaintiff Sowards subsequently provided written notice directly to
16  Defendant MNAO via first class mail on January 29, 2019.  Despite these notices,
17  Defendant MNAO did not cure its breach of written warranties and failed to provide
18  a suitable repair or replacement of the Water Pump Defect free of charge within a
19  reasonable time.

20     962.   Any attempt by Defendant MNAO to disclaim or limit recovery to the
21  terms of the express warranties is unconscionable and unenforceable here.
22  Specifically, Defendant MNAO's warranty limitation is unenforceable because it
23  knowingly sold or leased a defective product without informing consumers about the
24  defect.  The time limits contained in Defendant MNAO's warranty periods were also
25  unconscionable and inadequate to protect Plaintiffs Delvecchio, Sowards, and
26  members of the Virginia Sub-Class.  Among other things, Plaintiffs Delvecchio,
27  Sowards, and the members of the Virginia Sub-Class did not determine these time
28  limitations, the terms of which unreasonably favored Defendant MNAO.  A gross

1   disparity in bargaining power existed between Defendant MNAO and members of the

2   Virginia Sub-Class, and Defendant MNAO knew or should have known that the

3   Class Vehicles were defective at the time of sale or lease and that the Water Pump

4   Defect posed a safety risk.

5       963.   Further, the limited warranty promising to repair and/or correct a

6   manufacturing defect fails in its essential purpose because the contractual remedy is

7   insufficient to make Plaintiffs Delvecchio, Sowards and members of the Virginia

8   Sub-Class whole because, on information and belief, Defendant MNAO has failed

9   and/or has refused to adequately provide the promised remedies within a reasonable

10  time.

11      964.   Defendant MNAO knew that the Class Vehicles were inherently

12  defective and did not conform to their warranties, and Plaintiffs Delvecchio,

13  Sowards, and members of the Virginia Sub-Class were induced to purchase or lease

14  the Class Vehicles under false and/or fraudulent pretenses.

15      965.   Plaintiffs Delvecchio, Sowards, and the members of the Virginia Sub-

16  Class experienced the existence of the Water Pump Defect within the warranty

17  periods but had no knowledge of the existence of the defect, which was known and

18  concealed by Defendant MNAO. Despite the existence of the warranties, Defendant

19  MNAO failed to inform Plaintiffs Delvecchio, Sowards, and members of the Virginia

20  Sub-Class that the Class Vehicles contained the Water Pump Defect during the

21  warranty periods, and, thus, wrongfully transferred the costs of repair or replacement

22  of the water pump and damaged engine parts to Plaintiffs Delvecchio, Sowards, and

23  members of the Virginia Sub-Class.

24      966.   Because of the Water Pump Defect, the Class Vehicles are not reliable

25  and owners of these vehicles have lost confidence in the ability of Class Vehicles to

26  perform the function of safe reliable transportation.

27  / / /

28  / / /

967.   As a direct and proximate result of Defendant MNAO's breach of express warranties, Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class have been damaged in an amount to be determined at trial.

968.   Finally, because of Defendant MNAO's breach of express warranty as set forth herein, Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT LI
### Breach of Implied Warranty of Merchantability
### (On behalf of the Virginia Sub-Class against MNAO and MMC)

969.   Plaintiffs Delvecchio and Sowards incorporate and re-allege each preceding paragraph as though fully set forth herein.

970.   Plaintiffs Delvecchio and Sowards bring this count on behalf of themselves and the members of the Virginia Sub-Class.

971.   Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class purchased or leased the Class Vehicles, manufactured by MMC and/or MNAO, from MNAO by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.   At all relevant times, Defendants were the manufacturer, distributor, warrantor and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

972.   Defendants are and were at all relevant times a merchant and seller of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

/ / /

/ / /

973.   With respect to leases, Defendants are and were at all relevant times a lessor of motor vehicles (i.e., the Class Vehicles) within the meaning of the Uniform Commercial Code.

974.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

975.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

976.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Water Pump Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.   Thus, Defendants breached the implied warranty of merchantability.

977.   Through its maintenance schedules, MNAO further represented that the water pump would not need service, inspection, or repair and/or fraudulently concealed the need for repair or replacement of the water pump by omitting the water pump from the maintenance schedules.  MNAO cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

978.   Defendants were provided notice of the Water Pump Defect by numerous consumer complaints made to MNAO's authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Water Pump Defect and, on information and belief, have refused to repair or replace the Water Pump Defect free of charge within a reasonable time.

979.   Defendants were further provided notice by Plaintiff Delvecchio when he presented his vehicle for repair at Whitten Brothers Mazda in Richmond, Virginia on November 20, 2017. Upon information and belief, Whitten Brothers Mazda is an

authorized dealer of Defendant MNAO and its duly authorized agent to perform warranty repairs. Upon diagnosing the water pump failure in his Class Vehicle, Whitten Brothers Mazda charged Plaintiff Delvecchio over $1,700 to replace the water pump as well as perform the associated repairs. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

980. Defendants were further provided notice by Plaintiff Sowards when he presented his vehicle for repair at Nelson Mazda in Murfreesboro, Tennessee on January 15, 2019. Upon information and belief, Nelson Mazda is an authorized dealer of Defendant MNAO and its duly authorized agent to perform warranty repairs. Upon diagnosing the water pump failure in his Class Vehicle, Nelson Mazda charged Plaintiff Sowards over $8,600 to replace the engine with a rebuilt engine. Plaintiff Sowards subsequently provided written notice directly to MNAO via first class mail on January 29, 2019. Despite these notices, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the Water Pump Defect free of charge within a reasonable time.

981. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs Delvecchio, Sowards, and members of the Virginia Class have been damaged in an amount to be proven at trial.

982. Any attempt by MNAO to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, MNAO's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in MNAO's warranty periods were also unconscionable and inadequate to protect Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class. Among other things, Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class did not determine these time limitations, the terms of which unreasonably favored MNAO. A gross disparity in bargaining power

CLASS ACTION COMPLAINT

existed between MNAO and members of the Virginia Sub-Class, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Water Pump Defect posed a safety risk.

983.   Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

984.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT LII
### Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*
### (On behalf of the Nationwide Class and the Virginia Sub-Class against MNAO and MMC)

985.   Plaintiffs Delvecchio and Sowards incorporate and re-allege each preceding paragraph as though fully set forth herein.

986.   Plaintiffs Delvecchio and Sowards bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the Virginia Sub-Class.

987.   Plaintiffs Delvecchio and Sowards satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

988.   Plaintiffs Delvecchio, Sowards, and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

989.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

990.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

/ / /

CLASS ACTION COMPLAINT

991.  The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

992.  Defendant MNAO provided Plaintiffs Delvecchio, Sowards, and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, MNAO currently offers New Vehicle Limited Warranty coverage for Class Vehicles sold under the Mazda brand for 3 years or 36,000 miles and extended warranty coverage for Powertrain components for 5 years or 60,000 miles.[34]  Under warranties provided to members of the Classes, MNAO promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Water Pump Defect, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, MNAO breached these warranties.

993.  Plaintiffs Delvecchio, Sowards, and members of the Classes experienced the Water Pump Defect within the warranty periods but MNAO failed to inform Plaintiffs and members of the Classes of the existence of the Water Pump Defect and associated safety risk, and failed to provide a suitable remedy or repair of the Water Pump Defect free of charge within a reasonable time.

994.  Defendants were provided notice by letter dated May 13, 2019 directed to MNAO that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

995.  Any attempt by MNAO to disclaim or limit its express or implied warranties is unconscionable and unenforceable here. Specifically, MNAO's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in MNAO's warranty periods are also unconscionable and inadequate to

---

[34] *See, e.g.*, Exhibit A (2012 Mazda CX-9 Warranty Booklet). *See also* https://www.mazdausa.com/owners/warranty.

CLASS ACTION COMPLAINT

protect Plaintiffs Delvecchio, Sowards, and members of the Classes.  Among other things, Plaintiffs Delvecchio, Sowards, and members of the Classes did not determine these time limitations, the terms of which unreasonably favored MNAO.  A gross disparity in bargaining power existed between MNAO and members of the Classes, and MNAO knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

996.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

997.   Defendants breached these warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Water Pump Defect and corresponding safety risk. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendants and presents a safety risk.

998.   Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Water Pump Defect and corresponding safety risk, but failed to repair or replace the Water Pump Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

999.   Plaintiffs Delvecchio, Sowards, and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs Delvecchio,

Sowards, and members of the Classes have not re-accepted their Class Vehicles by retaining them.

1000. The amount in controversy of Plaintiffs Delvecchio's and Sowards' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

1001. Plaintiffs Delvecchio and Sowards, individually and on behalf of members of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT LIII**
**Violation of the Virginia Consumer Protection Act ("VCPA"),**
**(On behalf of the Virginia Sub-Class against MNAO and MMC)**

1002. Plaintiffs Delvecchio and Sowards incorporate and re-allege each preceding paragraph as though fully set forth herein.

1003. Plaintiffs Delvecchio and Sowards bring this count on behalf of themselves and the members of the Virginia Sub-Class.

1004. Plaintiffs Delvecchio, Sowards, members of the Virginia Sub-Class, and Defendants are "persons" as defined by Va. Code Ann. § 59.1-198.

1005. The sale or lease of the Class Vehicles by Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class were for personal, family or household purposes and are "consumer transaction[s]" as defined by Va. Code Ann. § 59.1-198.

1006. The Class Vehicles are "goods" as defined by Va. Code Ann. § 59.1-198.

1007. Defendants are "suppliers" as defined by Va. Code Ann. § 59.1-198.

1008. Defendants violated the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-200(A), by *inter alia*: (1) "[m]isrepresenting that the Class Vehicles have certain quantities, characteristics, ingredients, uses, or benefits;" (2)

"[m]isrepresenting that the goods or services are of a particular standard, quality, grade, style, or model;" (3) "[a]dvertising goods or services with the intent not to sell them as advertised;" and (4) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

1009. In the course of its business, Defendants willfully failed to disclose and actively concealed the Water Pump Defect and otherwise engaged in activities with a tendency or capacity to deceive as discussed herein.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that other rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1010. In violation of the VCPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles.  Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Water Pump Defect and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiffs Delvecchio, Sowards, and the Virginia Sub-Class.

1011. Defendants actively suppressed the fact that the water pump in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design and/or manufacturing defects. Further, Defendants employed unfair and deceptive trade practices to deny repair or replacement of the Water Pump Defect within a reasonable time in violation of the VCPA. Defendant MNAO also breached its warranties as alleged herein in violation of the VCPA.

1012. Defendants' unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class had no reasonable way to know that Class Vehicles contained water pumps

CLASS ACTION COMPLAINT

which were defective in materials, workmanship, design and/or manufacture and posed a safety risk.  Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Water Pump Defect and associated safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions as the Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class did.

1013. Defendants intentionally and knowingly misrepresented and omitted facts regarding the Water Pump Defect and associated safety hazard with the intent to mislead Plaintiffs Delvecchio, Sowards, and Virginia Sub-Class members. Defendants knew, or should have known, that the water pump is defective and its failure could and would cause catastrophic engine failure, leading to the Class Vehicles suddenly losing all power while in operation and/or other associated safety hazards.

1014. Defendants owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to Plaintiffs Delvecchio, Sowards, and Virginia Sub-Class members because Defendants possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Water Pump Defect.  Rather than disclose the defect, Defendants engaged in unfair and deceptive trade practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Water Pump Defect.

1015. Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect were intended to mislead consumers and misled Plaintiffs Delvecchio, Sowards, and Virginia Sub-Class members.

1016. At all relevant times, Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Water Pump Defect and its corresponding safety hazard were material to Plaintiffs Delvecchio, Sowards, and Virginia Sub-Class members.   When Plaintiffs Delvecchio, Sowards, and

CLASS ACTION COMPLAINT

Virginia Sub-Class members purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from safety defects and/or pose an unavoidable safety hazard.  Had Defendants disclosed that the water pump was defective and would fail, causing the coolant to mix with the engine oil and irreparably damage the engine, and/or pose an unavoidable safety hazard, Plaintiffs Delvecchio, Sowards, and Virginia Sub-Class members would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

1017. Defendants had a continuous duty to Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class to refrain from unfair and deceptive practices under the VCPA and to disclose the defect and associated safety hazard.  Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Water Pump Defect and corresponding safety hazard are substantially injurious to consumers.  As a result of Defendants' knowing, intentional concealment and/or omission of the Water Pump Defect and associated safety hazard in violation of the VCPA, Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class have suffered harm and/or continue to suffer harm by the threat of their engines being damaged by a water pump failure and/or an unavoidable safety hazard, and damages to be determined at trial.  Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Water Pump Defect, and the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of its business.

1018. Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

1019. Defendants' deceptive acts or practices occurred in the conduct of trade or commerce. Defendants knew or should have known that its unlawful conduct violated the VCPA.

1020. Defendants' unlawful acts and practices affect the public interest, and trade and commerce in the State of Virginia, and present a continuing safety hazard to Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class.

1021. As a direct and proximate result of Defendants' violations of the VCPA, Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective water pump; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Water Pump Defect; and/or (3) the diminished resale value of the Class Vehicles containing the Water Pump Defect.

1022. Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class seek actual damages against Defendants in an amount to be determined at trial and/or statutory damages pursuant to the VCPA based on Defendants' wanton and willful conduct, costs, attorneys' fees, restitution, disgorgement of funds, and any other just and proper relief available under the VCPA. *See* Va. Code § 59.1-204.

**COUNT LIV**
**Fraud By Omission or Fraudulent Concealment**
**(On behalf of the Virginia Sub-Class against MNAO and MMC)**

1023. Plaintiffs Delvecchio and Sowards incorporate and re-allege each preceding paragraph as though fully set forth herein.

1024. Plaintiff Delvecchio and Sowards bring this count on behalf of themselves and the members of the Virginia Sub-Class.

1025. Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Class Vehicles contain a Water Pump Defect and corresponding

CLASS ACTION COMPLAINT

1   safety risk, with the intent that Plaintiffs Delvecchio, Sowards, and members of the
2   Virginia Sub-Class rely on Defendants' omissions.  As a direct result of Defendants'
3   fraudulent conduct, Plaintiffs Delvecchio, Sowards, and members of the Virginia
4   Sub-Class have suffered actual damages.

5       1026. Defendants knew (at the time of sale or lease and thereafter) that the
6   Class Vehicles contained the Water Pump Defect, concealed the defect and never
7   intended to repair or replace the Water Pump Defect during the warranty periods.  To
8   date, Defendants have not provided Plaintiffs Delvecchio, Sowards, and members of
9   the Virginia Sub-Class with a repair or remedy for the Water Pump Defect.

10      1027. Defendants owed a duty to disclose the Water Pump Defect and its
11  corresponding safety risk to Plaintiffs Delvecchio, Sowards, and members of the
12  Virginia Sub-Class because Defendants possessed superior and exclusive knowledge
13  regarding the defect. Further, Defendants had a duty to disclose any information
14  relating to the safety, quality, functionality and reliability of Class Vehicles because
15  they consistently marketed the Class Vehicles as safe. Once Defendants made
16  representations to the public about safety, quality, functionality, and reliability,
17  Defendants was under a duty to disclose these omitted facts, because where one does
18  speak one must speak the whole truth and not conceal any facts which materially
19  qualify those facts stated. One who volunteers information must be truthful, and the
20  telling of a half-truth calculated to deceive is fraud.  Rather than disclose the defect,
21  Defendants intentionally and knowingly concealed, suppressed and/or omitted
22  material facts including the standard, quality or grade of the Class Vehicles and the
23  presence of the Water Pump Defect and corresponding safety risk, to sell additional
24  Class Vehicles and avoid the cost of repair or replacement.

25      1028. The Water Pump Defect is material to Plaintiffs Delvecchio, Sowards,
26  and members of the Virginia Sub-Class because Plaintiffs Delvecchio, Sowards, and
27  members of the Virginia Sub-Class had a reasonable expectation that the vehicles
28  would not contain a defect, such as the Water Pump Defect, that leads to exorbitant

CLASS ACTION COMPLAINT

repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Water Pump Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

1029. Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Water Pump Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

1030. Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Water Pump Defect would sell more Class Vehicles and would discourage Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class from seeking replacement or repair of the Water Pump Defect during the applicable warranty periods.  Further, Defendants intended to induce Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Water Pump Defect in order to decrease costs and increase profits.

1031. Defendants acted with malice, oppression, and fraud.

1032. Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Water Pump Defect and associated safety risk, Plaintiffs Delvecchio, Sowards, and members of the Virginia Sub-Class have suffered actual damages in an amount to be determined at trial.

CLASS ACTION COMPLAINT

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Classes, and award the following relief:

- An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as counsel for the Classes;

- An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful and unfair business conduct and practices alleged herein;

- Appropriate injunctive and equitable relief;

- A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

- An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, loss of benefit-of-the-bargain, and out-of-pocket costs in an amount to be determined at trial;

- An order awarding any applicable statutory and civil penalties;

- An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

- An award of costs, expenses, and attorneys' fees as permitted by law; and

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

1
2

- Such other or further relief as the Court may deem appropriate, just, and equitable.

3   DATED: June 28, 2019            Respectfully submitted,

4                                        */s/ Jeffrey A. Koncius*
5                                   Paul R. Kiesel
6                                   Jeffrey A Koncius
                                    Cherisse H. Cleofe
7

8                                   Joseph H. Meltzer [to be admitted *Pro Hac Vice*]
                                    Melissa L. Troutner [to be admitted *Pro Hac Vice*]
9                                   Tyler S. Graden [to be admitted *Pro Hac Vice*]
                                    Natalie Lesser [to be admitted *Pro Hac Vice*]
10                                  Abigail J. Gertner [to be admitted *Pro Hac Vice*]
11                                  **KESSLER TOPAZ**
                                      **MELTZER & CHECK, LLP**
12                                  280 King of Prussia Road
13                                  Radnor, PA 19087
                                    Tel.:      (610) 667-7706
14                                  Fax:      (610) 667-7056
15                                  jmeltzer@ktmc.com
                                    mtroutner@ktmc.com
16                                  tgraden@ktmc.com
17                                  nlesser@ktmc.com
                                    agertner@ktmc.com
18

19                                  Jason H. Alperstein [to be admitted *Pro Hac Vice*]
                                    Christopher C. Gold [to be admitted *Pro Hac Vice*]
20                                  **ROBBINS GELLER**
21                                    **RUDMAN & DOWD LLP**
                                    120 East Palmetto Park Road, Suite 500
22                                  Boca Raton, FL 33432
23                                  Tel.:      (561) 750-3000
                                    Fax:      (561) 750-3364
24                                  jalperstein@rgrdlaw.com
25                                  cgold@rgrdlaw.com

26                                  E. Powell Miller [to be admitted *Pro Hac Vice*]
27                                  Sharon S. Almonrode [to be admitted *Pro Hac Vice*]
28                                  **THE MILLER LAW FIRM, P.C.**

                                    218              CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.:  (248) 841-2200
Fax:  (248) 652-2852
epm@miller.law
ssa@miller.law


John C. Goodson [to be admitted *Pro Hac Vice*]
Matt Keil [to be admitted *Pro Hac Vice*]
**KEIL & GOODSON P.A.**
406 Walnut Street
Texarkana, Arkansas 71854
Tel: (870) 772-4113
Fax: (870) 773-2967
jgoodson@kglawfirm.com
mkeil@kglawfirm.com


Robert H. Edwards [to be admitted *Pro Hac Vice*]
**THE EDWARDS FIRM, P.L.L.C.**
711 West Third Street
Little Rock, AR 72201
Tel.: (501) 372-1329


*Attorneys for Plaintiffs and the Proposed Classes*

219                    CLASS ACTION COMPLAINT

## IX.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: June 28, 2019              Respectfully submitted,

_____*/s/ Jeffrey A. Koncius*_____
Paul R. Kiesel
Jeffrey A Koncius
Cherisse H. Cleofe

Joseph H. Meltzer [to be admitted *Pro Hac Vice*]
Melissa L. Troutner [to be admitted *Pro Hac Vice*]
Tyler S. Graden [to be admitted *Pro Hac Vice*]
Natalie Lesser [to be admitted *Pro Hac Vice*]
Abigail J. Gertner [to be admitted *Pro Hac Vice*]
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel.:      (610) 667-7706
Fax:      (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
tgraden@ktmc.com
nlesser@ktmc.com
agertner@ktmc.com

Jason H. Alperstein [to be admitted *Pro Hac Vice*]
Christopher C. Gold [to be admitted *Pro Hac Vice*]
**ROBBINS GELLER**
  **RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel.:      (561) 750-3000
Fax:      (561) 750-3364
jalperstein@rgrdlaw.com
cgold@rgrdlaw.com

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

E. Powell Miller [to be admitted *Pro Hac Vice*]
Sharon S. Almonrode [to be admitted *Pro Hac Vice*]
**THE MILLER LAW FIRM, P.C.**
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.:  (248) 841-2200
Fax:  (248) 652-2852
epm@miller.law
ssa@miller.law

John C. Goodson [to be admitted *Pro Hac Vice*]
Matt Keil [to be admitted *Pro Hac Vice*]
**KEIL & GOODSON P.A.**
406 Walnut Street
Texarkana, Arkansas 71854
Tel: (870) 772-4113
Fax: (870) 773-2967
jgoodson@kglawfirm.com
mkeil@kglawfirm.com

Robert H. Edwards [to be admitted *Pro Hac Vice*]
**THE EDWARDS FIRM, P.L.L.C.**
711 West Third Street
Little Rock, AR 72201
Tel.: (501) 372-1329

*Attorneys for Plaintiffs and the Proposed Classes*