1  Michael L. Mallow (SBN 188745)
   mmallow@shb.com
2  Darlene M. Cho (SBN 251167)
   dcho@shb.com
3  SHOOK, HARDY & BACON L.L.P.
   2049 Century Park East, Suite 3000
4  Los Angeles, CA 90067
   Telephone:  (424) 285-8330
5  Facsimile:   (424) 204-9093

6

7  Attorneys for Defendant
   Mazda Motor of America, Inc.
8  d/b/a Mazda North American Operations

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12 TERRY SONNEVELDT, ESTHER            Case No. 8:19-cv-01298-JLS-KES
   WRIGHT SCHNEIDER, SHANNON
   PROVEN, MICHAEL BIBBO, ALAN        Assigned to: Hon. Josephine L. Staton
13 MESHBERG, BRIAN HUME, AMIE
   LEVASSEUR, JEAN LEVASSEUR,
14 CHRISTOPHER LACASSE, BETH          **MEMORANDUM OF POINTS AND**
   PICKERD, DAN PICKERD, TIM          **AUTHORITIES IN SUPPORT OF**
15 HALWAS, ERIN MATHENY, LEWIS        **MAZDA MOTOR OF AMERICA, INC.**
   DELVECCHIO, JON SOWARDS,           **D/B/A MAZDA NORTH AMERICAN**
16 LAWRENCE BOHANA, MONIKA            **OPERATION'S MOTION TO**
   BOHANA, DAVID DENNIS,              **DISMISS AMENDED CLASS ACTION**
17 JACQUELINE S. ASLAN, MICHAEL       **COMPLAINT**
   GILREATH, and RENATTA
18 GILREATH, individually and on behalf  Date:      Feb. 21, 2020
   of all others similarly situated,      Time:      10:30 a.m.
19                                         Place:     411 W. Fourth St.
                 Plaintiffs,                          Santa Ana, CA, 92701
20                                                    Courtroom 10A, 10th Floor

21       vs.                               [Filed concurrently with Notice of Motion
                                           and Motion; Declaration of Michael
22 MAZDA MOTOR OF AMERICA, INC.           Mallow; and [Proposed] Order]
   D/B/A MAZDA NORTH AMERICAN
23 OPERATIONS and MAZDA MOTOR
   CORPORATION,                            Complaint Filed: June 28, 2019
24
                 Defendants.
25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ..................................................................1

II.     FACTS ALLEGED IN THE COMPLAINT ..............................................2

III.    LEGAL STANDARD ..............................................................3

IV.     ARGUMENT ....................................................................4

    A.   Plaintiffs' Entire Complaint Fails Because They Do Not Adequately Allege a "Defect" ..............................................4

    B.   Plaintiffs' Warranty-Based Claims Are Deficient ..............................5

        1.   Plaintiffs fail to state express-warranty claims ..........................6

        2.   Plaintiffs fail to state claims for breach of the PLW because none plead in-warranty failure or presentment ..............................7

        3.   Plaintiffs' claim for breach of the PLW fails as a matter of law because they allege a design issue ..............................9

        4.   Plaintiffs fail to state implied-warranty or redhibition claims ....9

        5.   Plaintiffs fail to state a Magnuson-Moss Warranty Act claim .14

        6.   The PLW's time and mileage limits are not unconscionable ...15

    C.   Plaintiffs' Fraud-Based Claims Are Deficient ....................................18

        1.   Plaintiffs' allegations fail to meet Rule 9(b) ...........................18

        2.   Plaintiffs' affirmative or partial misrepresentation theory fails19

        3.   Plaintiffs' omission theory fails based on their failure to adequately allege MNAO's pre-sale knowledge .........................21

        4.   Plaintiffs' omission theory is not viable because Plaintiffs do not plead a duty to disclose ...........................................24

        5.   Schneider and the Bohanas' claim for negligent misrepresentation fails ........................................................25

        6.   The economic loss doctrine bars several fraud-based claims ...26

        7.   Hume's LA PLA claim fails on numerous other grounds ........26

        8.   Certain consumer-fraud claims are also untimely ...................27

    D.   All Claims for Injunctive Relief Fail ...............................................28

ii

E.    Non-California Plaintiffs May Not Pursue CLRA and UCL Claims .30

    1.    Material differences exist...........................................................31

    2.    Under Mazza, California does not have a predominant interest in applying its laws to govern out-of-state transactions ...............34

V.    CONCLUSION ...............................................................................35

MEMO. OF PS & AS I/S/O MNAO'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986) .................................................................. 17

*Adams v. Nissan N. Am., Inc.*,
395 F. Supp. 3d 838 (S.D. Tex. 2018) .................................................. 12

*Allen v. FCA US LLC*,
2017 WL 1957068 (W.D. Va. May 10, 2017) ....................................... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 4

*Beck v. FCA US LLC*,
273 F. Supp. 3d 735 (E.D. Mich. 2017) ............................ 19, 20, 22, 23

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 4

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ................................................................ 21

*Breeden v. Richmond Cmty. Coll.*,
171 F.R.D. 189 (M.D.N.C. 1997) ........................................................ 21

*Bruce Martin Constr. v. CTB, Inc.*,
735 F.3d 750 (8th Cir. 2013) ................................................................. 9

*Cadena v. Am. Honda Motor Co., Inc.*,
2019 WL 3059931 (C.D. Cal. May 29, 2019) .................................. 22, 23

*Canal Elec. Co. v. Westinghouse Elec. Co.*,
973 F.2d 988 (1st Cir. 1992) .................................................................. 7

*Cargill, Inc. v. Degesch Am., Inc.*,
875 F. Supp. 2d 667 (E.D. La. 2012) .................................................. 32

*Carlson v. General Motors Corp.*,
883 F.2d 287 (4th Cir. 1989) .............................................................. 10

*Carlton v. Paccar Inc.*,
  2016 WL 6921127 (C.D. Cal. May 2, 2016) ............................................................. 10

*Chiron Corp. v. Abbott Labs.*,
  156 F.R.D. 219 (N.D. Cal. 1994) ........................................................................... 19

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992) .............................................................................................. 7

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................... 29

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................. 29

*Clark v. Green Tree Servicing LLC*,
  69 F. Supp. 3d 1203 (D. Colo. 2014) .................................................................... 26

*Classick, Jr. v. Schell & Kampeter, Inc.*,
  2019 WL 3530403 (E.D. Cal. Aug. 2, 2019) ......................................................... 30

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ................................................................... 7, 13, 14

*Coba v. Ford Motor Co.*,
  932 F.3d 114 (3d Cir. 2019) ................................................................................... 9

*Cover v. Windsor Surry Co.*,
  2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ................................................... 31, 33

*Darisse v. Nest Labs, Inc.*,
  2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ...................................................... 33

*Darne v. Ford Motor Co.*,
  2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) .................................................. 16, 17

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ........................................................................... 28, 29

*Davison v. Kia Motors Am., Inc.*,
  2015 WL 3970502 (C.D. Cal. June 29, 2015) ....................................................... 32

*Demaria v. Nissan N. Am., Inc.*,
  2016 WL 374145 (N.D. Ill. Feb. 1, 2016) ............................................................ 21

MEMO. OF PS & AS I/S/O MNAO'S MOTION TO DISMISS

*Deras v. Volkswagen Group of Am.*,
2018 WL 2267448 (N.D. Cal. May 17, 2018) ........................................ 23

*Divis v. General Motors LLC*,
2019 WL 4735405 (E.D. Mich. Sept. 27, 2019) .................................... 24

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
66 F.3d 604 (3d Cir. 1995) ................................................................ 7, 8

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ............................................................................ 28

*Eberts v. Goderstad*,
569 F.3d 757 (7th Cir. 2009) .............................................................. 25

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ............................................................................ 35

*Eisen v. Porsche Cars N. Am., Inc.*,
2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ........................................ 18

*Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*,
428 F. Supp. 364 (E.D. Mich. 1977) ................................................... 11

*Fisher v. Honda N. Am., Inc.*,
2014 WL 2808188 (C.D. Cal. June 12, 2014) ..................................... 17

*Fonseca v. Goya Foods Inc.*,
2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ...................................... 30

*Frezza v. Google Inc.*,
2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ..................................... 31

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
2015 WL 4036319 (D. Colo. July 1, 2015) ......................................... 33

*Gandhi v. Sitara Capital Mgmt., LLC*,
689 F. Supp. 2d 1004 (N.D. Ill. 2010) ................................................ 26

*Gardner v. Safeco Ins. Co. of Am.*,
2014 WL 2568895 (N.D. Cal. June 6, 2014) ....................................... 30

*Gavron v. Weather Shield Mfg., Inc.*,
819 F. Supp. 2d 1297 (S.D. Fla. 2011) ............................................... 32

*Gertz v. Toyota Motor Corp.*,
2011 WL 3681647 (C.D. Cal. Aug. 22, 2011), *aff'd sub nom. Troup v. Toyota Motor Corp.*, 545 F. App'x. 668 (9th Cir. 2013) ........................... 9

*Gonzalez v. Mazda Motor Corp.*,
2017 WL 345878 (N.D. Cal. Jan. 5, 2017)........................................... 31

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
525 F. App'x 94 (3d Cir. 2013) .......................................................... 23

*Grenier v. Med. Eng'g Corp.*,
243 F.3d 200 (5th Cir. 2001) .............................................................. 27

*Grodzitsky v. Am. Honda Motor Co.*,
2013 WL 2631326 (C.D. Cal. June 12, 2013) ..................................... 17

*Haskins v. Symantec Corp.*,
654 F. App'x 338 (9th Cir. 2016) ....................................................... 19

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .............................................................. 24

*Hornberger v. Gen. Motors Corp.*,
929 F. Supp. 884 (E.D. Pa. 1996)....................................................... 18

*Hovsepian v. Apple, Inc.*,
2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) .................................... 12

*Hovsepian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ..................................... 24

*Huffman v. Electrolux N. Am., Inc.*,
961 F. Supp. 2d 875 (N.D. Ohio 2013) ............................................... 12

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
379 F.3d 159 (5th Cir. 2004) .............................................................. 15

*In re Myford Touch Consumer Litig.*,
2015 WL 5118308 (N.D. Cal. Aug. 31, 2015) ...................................... 8

*In re Nexus 6P Prods. Liab. Litig.*,
293 F. Supp. 3d 999 (N.D. Cal. 2018).................................................. 23

*In re OnStar Contract Litig.*,
278 F.R.D. 352 (E.D. Mich. 2011) ...................................................... 19

MEMO. OF PS & AS I/S/O MNAO'S MOTION TO DISMISS

*In re OnStar Contract Litig.*,
   600 F. Supp. 2d 861 (E.D. Mich. 2009) ................................................................. 7

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
   155 F. Supp. 3d 772 (N.D. Ill. 2016) .................................................................. 25

*In re Seagate Tech. LLC Litig.*,
   233 F. Supp. 3d 776 (N.D. Cal. 2017) .................................................................. 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
   *Practices, & Prod. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................. 7

*Kacsuta v. Lenovo (United States) Inc.*,
   2013 WL 12126775 (C.D. Cal. July 16, 2013) .................................................. 10

*Kamath v. Robert Bosch LLC*,
   2014 WL 2916570 (C.D. Cal. June 26, 2014) ..................................................... 4

*Karpowicz v. Gen. Motors Corp.*,
   1998 WL 142417 (N.D. Ill. Mar. 26, 1998) ........................................................ 7

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
   634 F.3d 883 (7th Cir. 2011) ............................................................................. 28

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ............................................................................. 19

*Kuns v. Ford*,
   543 F. App'x 572 (6th Cir. 2013) ...................................................................... 15

*LaFontaine v. Mitsubishi Motors No. Am., Inc.*,
   2017 WL 8220705 (C.D. Cal. Feb. 23, 2017) ................................................... 30

*Leach v. Honeywell Int'l Inc.*,
   2014 WL 12585799 (D. Mass. Nov. 17, 2014) ................................................. 16

*Leadsinger, Inc. v. BMG Music Publ'g*,
   429 F. Supp. 2d 1190 (C.D. Cal. 2005) ............................................................... 4

*Lee v. Fairfax Cty. Sch. Bd.*,
   621 F. App'x 761 (4th Cir. 2015) ...................................................................... 16

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) ............................................................. 26

viii

*Licul v. Volkswagen Grp. of Am., Inc.*,
2013 WL 6328734 (S.D. Fla. Dec. 5, 2013).......................................................... 15, 17

*Littlehale v. Hain Celestial Grp., Inc.*,
2012 WL 5458400 (N.D. Cal. July 2, 2012) .......................................................... 33

*Mack Trucks, Inc. v. Borg Warner Turbo Sys., Inc.*,
508 F. App'x. 180 (3d Cir. 2012).......................................................................... 9

*Madrigal v. Hint, Inc.*,
2017 WL 6940534 (C.D. Cal. Dec. 14, 2017)....................................................... 30

*Marchionna v. Ford Motor Co.*,
1995 WL 476591 (N.D. Ill. Aug. 10, 1995) .......................................................... 15

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) .......................................................................... passim

*McCoy v. Nestle USA, Inc.*,
173 F. Supp. 3d 954 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 462 (9th
Cir. 2018)........................................................................................................ 25

*McQueen v. BMW of N. Am., LLC*,
2013 WL 4607353 (D.N.J. Aug. 29, 2013) ........................................................... 5

*McQueen v. BMW of N. Am., LLC*,
2014 WL 656619 (D.N.J. Feb. 20, 2014)............................................................. 24

*Miller v. Gen. Motors, LLC*,
2018 WL 2740240 (E.D. Mich. June 7, 2018) ..................................................... 12

*Minkler v. Apple, Inc.*,
65 F. Supp. 3d 810 (N.D. Cal. 2014)................................................................... 26

*Montgomery v. Kraft Foods Glob., Inc.*,
822 F.3d 304 (6th Cir. 2016) .............................................................................. 10

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)........................................................................................... 29

*Mullins v. Premier Nutrition Corp.*,
2016 WL 3440600 (N.D. Cal. June 20, 2016) ..................................................... 34

*Mullins v. Premier Nutrition Corp.*,
2018 WL 510139 (N.D. Cal. Jan. 23, 2018)................................................... 29, 34

ix

*Neuser v. Carrier Corp.*,
  2007 WL 484779 (W.D. Wis. Feb. 9, 2007) .......................................................... 12

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................. 24

*Ontario Hydro v. Zallea Sys., Inc.*,
  569 F. Supp. 1261 (D. Del. 1983) ......................................................................... 5

*Osness v. Lasko Prod., Inc.*,
  868 F. Supp. 2d 402 (E.D. Pa. 2012) .................................................................. 16

*Patterson Oil Co. v. Verifone, Inc.*,
  2015 WL 6149594 (W.D. Mo. Oct. 19, 2015) ...................................................... 26

*Perez v. DirecTV Grp. Holdings, LLC*,
  251 F. Supp. 3d 1328, 1343 (C.D. Cal. 2017), *aff'd sub nom. Perez v.*
  *DirecTV, LLC*, 740 F. App'x 560 (9th Cir. 2018) ............................................... 15

*Perez v. Volkswagen Grp. of Am., Inc.*,
  2013 WL 1661434 (W.D. Ark. Apr. 17, 2013) ..................................................... 17

*Philips v. Ford Motor Co.*,
  2015 WL 4111448 (N.D. Cal. July 7, 2015), *aff'd*, 726 F. App'x 608
  (9th Cir. June 8, 2018) ...................................................................................... 30

*Philips v. Ford Motor Co.*,
  726 F. App'x 608 (9th Cir. June 8, 2018) ........................................................... 29

*Post v. Liberty Mut. Grp., Inc.*,
  2014 WL 2777396 (E.D. Pa. June 18, 2014) ....................................................... 32

*Priebe v. Autobarn, Ltd.*,
  240 F.3d 584 (7th Cir. 2001) .............................................................................. 11

*Punian v. Gillette Co.*,
  2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ....................................................... 6

*Rivera v. Ford Motor Co.*,
  2017 WL 3485815 (E.D. Mich. Aug. 15, 2017) ................................................... 17

*Robbins v. Hyundai Motor Am.*,
  2014 WL 4723505 (C.D. Cal. Aug. 7, 2014) ....................................................... 15

*Robinson v. Am. Honda Motor Co.*,
   551 F.3d 218 (4th Cir. 2009) ................................................................ 7

*Roe v. Ford Motor Co.*,
   2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) .................................. passim

*Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*,
   625 F. Supp. 2d 508 (E.D. Mich. 2008) .............................................. 14

*Santos v. SANYO Mfg. Corp.*,
   2013 WL 1868268 (D. Mass. May 3, 2013)........................................ 17

*Schiesser v. Ford Motor Co.*,
   2017 WL 1283499 (N.D. Ill. Apr. 6, 2017)........................................... 8

*Sciacca v. Apple, Inc.*,
   362 F. Supp. 3d 787 (N.D. Cal. 2019).................................................. 5

*Scott v. Honeywell Int'l Inc.*,
   2015 WL 1517527 (D. Colo. Mar. 30, 2015)....................................... 17

*Sheris v. Nissan N. Am. Inc.*,
   2008 WL 2354908 (D.N.J. June 3, 2008)............................................ 11

*Simchon v. Highgate Hotels, LP*,
   2016 WL 6595918 (M.D. Pa. Nov. 7, 2016)........................................ 26

*Sims v. Kia Motors Am., Inc.*,
   2014 WL 12558251 (C.D. Cal. Oct. 8, 2014) ...................................... 18

*Sloan v. General Motors LLC*,
   2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ....................................... 23

*Smith v. Ford Motor Co.*,
   462 F. App'x 660 (9th Cir. 2011).......................................................... 25

*Smith v. Ford Motor Co.*,
   749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd,* 462 F. App'x 660 (9th
   Cir. 2011) ................................................................................. 16, 17, 25

*Speier-Roche v. Volksw Agen Grp. of Am. Inc.*,
   2014 WL 1745050 (S.D. Fla. Apr. 30, 2014).................................. 28, 33

*State Farm Mut. Auto Ins. Co. v. Cambell*,
   538 U.S. 408 (2003)............................................................................ 35

*Stewart v. Electrolux Home Prod., Inc.*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018) ..................................................... 26

*Storey v. Attends Healthcare Prod., Inc.*,
  2016 WL 3125210 (E.D. Mich. June 3, 2016) ......................................... 21

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................... 29

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) ..................................................... 11

*Taragan v. Nissan N. Am., Inc.*,
  2013 WL 3157918 (N.D. Cal. June 20, 2013) .................................... 23, 24

*Temple v. Fleetwood Enters., Inc.*,
  133 F. App'x 254 (6th Cir. 2005) ............................................................. 15

*Varner v. Domestic Corp.*,
  2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) ............................................. 21

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
  857 F. Supp. 2d 1135 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D.
  Colo. 2013) ................................................................................................ 15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................. 18

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................ 6

*Vitt v. Apple Computer, Inc.*,
  469 F. App'x 605 (9th Cir. 2012) ............................................................. 24

*Voelker v. Porsche Cars N.A., Inc.*,
  353 F.3d 516 (7th Cir. 2003) ...................................................................... 9

*Webb v. Volvo Cars of N.A., LLC*,
  2018 WL 1470470 (E.D. Pa. Mar. 26, 2018) ........................................... 13

*Werwinski v. Ford Motor Co.*,
  2000 WL 1201576 (E.D. Pa. Aug. 15, 2000) ........................................... 12

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002) ..................................................................... 16

xii

*Williams v. United Techs. Corp.*,
  2015 WL 7738370 (W.D. Mo. Nov. 30, 2015) ............................................ 8, 16, 18

*Williams v. Yamaha Motor Co. Ltd.*,
  851 F.3d 1015 (9th Cir. 2017) .................................................................... 21, 25

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ............................................................. 18

*Wilson v. Hewlett-Packard Co., Inc.*,
  668 F.3d 1136 (9th Cir. 2012) .................................................................... 21, 24

*Wiltz v. Bayer CropScience, Ltd. P'ship*,
  645 F.3d 690 (5th Cir. 2011) ............................................................................. 26

*Wozniak v. Ford Motor Company*,
  2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ........................................... 8, 20, 22

*Yagman v. Gen. Motors Co.*,
  2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) ..................................................... 5

*Zambrano v. CarMax Auto Superstores, LLC*,
  2014 WL 228435 (S.D. Cal. Jan. 21, 2014) ....................................................... 10

*Zaremba v. Marvin Lumber and Cedar Co.*,
  458 F. Supp. 2d 545 (N.D. Ohio 2006) ........................................................ 28, 33

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180, amended, 273 F.3d 1266 (9th Cir. 2001) ................................... 35

STATE: CASES

*Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*,
  491 S.E.2d 731 (Va. 1997) ................................................................................. 13

*Bierlein v. Bernie's Motor Sales, Inc.*,
  1986 WL 6757 (Ohio Ct. App. June 12, 1986) ................................................... 21

*Brewer v. Missouri Title Loans*,
  364 S.W.3d 486 (Mo. banc 2012) ...................................................................... 16

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
  169 Cal. App. 4th 116 (2008) ............................................................................. 13

*Connick v. Suzuki Motor Co.*,
  675 N.E.2d 584 (Ill. 1996)................................................................ 32

*Consumer Advocates v. DaimlerChrysler Corp.*,
  2005 WL 327053 (Cal. Ct. App. 2005) (unpublished)........................... 29

*Crowe v. Tull*,
  126 P.3d 196 (Colo. 2006)................................................................ 32

*Curl v. Volkswagen of Am., Inc.*,
  871 N.E.2d 1141 (Ohio 2007) ........................................................... 13

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ....................................................... 24, 25

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
  907 S.W.2d 472 (Tex. 1995) ............................................................. 21

*Evitts v. DaimlerChrysler Motors Corp.*,
  504 N.E.2d 942 (Ill. App. 2005)......................................................... 17

*Hagan v. Chrysler Corp.*,
  339 So. 2d 401 (La. Ct. App. 1976) .................................................... 11

*Hanlon v. Monsanto Ag Prod., LLC*,
  124 So. 3d 535 (La. Ct. App. 10/9/13) ................................................ 16

*Hernandez v. Burger*,
  102 Cal. App. 3d 795 (1980) ............................................................. 35

*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*,
  N.W.2d 541 (Mich. App. 1995)........................................................... 26

*Lambert v. Downtown Garage, Inc.*,
  553 S.E.2d 714 (Va. 2001) .......................................................... 22, 32

*Laura v. DaimlerChrysler Corp.*,
  711 N.W.2d 792 (Mich. App. 2006) .................................................... 33

*Liparoto Constr., Inc. v. Gen. Shale Brick, Inc.*,
  284 Mich. App. 25 (2009) ................................................................. 16

*Lopez v. Nissan N. Am., Inc.*,
  201 Cal. App. 4th 572 (2011) ............................................................ 25

*Maillet v. ATF-Davidson Co.*,
    407 Mass. 185 (1990) ........................................................................... 32

*McCann v. Foster Wheeler LLC*,
    48 Cal. 4th 68 (2010) .......................................................................... 31

*Mesa v. BMW of N. Am., LLC*,
    904 So.2d 450 (Fla. Dist. Ct. App. 2005) .......................................... 13

*Moore v. Coachmen Indus., Inc.*,
    499 S.E.2d 772 (N.C. App. 1998) ....................................................... 18

*Mydlach v. DaimlerChrysler Corp.*,
    875 N.E.2d 1047 (Ill. 2007) .................................................................. 5

*Pearce v. American Defender Life Ins. Co.*,
    316 N.C. 461, 343 S.E.2d 174 (1986) ................................................ 32

*Prudential Home Mortg. Co. v. Superior Court*,
    66 Cal. App. 4th 1236 (1998) ............................................................. 29

*Pruitt v. Strong Style Fitness*,
    2011-Ohio-5272 (Ohio Ct. App. Oct. 13, 2011) ................................ 16

*Rose v. Zaring Homes, Inc.*,
    122 Ohio App. 39 739, 745, 702 N.E.2d 952, 956 (Ohio Ct. App. 1997) .................................................................................................... 32

*Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*,
    467 S.W.3d 494 (Tex. 2015) ............................................................... 16

*Safeway Stores, Inc. v. Certainteed Corp.*,
    710 S.W.2d 544 (Tex. 1986) ............................................................... 13

*Sharrad, McGee & Co. v. Suz's Software, Inc.*,
    396 S.E.2d 815 (N.C. Ct. App. 1990) ................................................ 13

*Smith v. Herco, Inc.*,
    900 S.W.2d 852 (Tex. App. 1995) ...................................................... 32

*State ex rel. Nixon v. Beer Nuts*,
    29 S.W.3d 828 (Mo. Ct. App. 2000) .................................................. 32

*Szajna v. Gen. Motors Corp.*,
    115 Ill. 2d 294, 503 N.E.2d 760 (1986) ............................................. 13

*Tillman v. Commercial Credit Loans, Inc.*,
    655 S.E.2d 362 (N.C. 2008) ................................................................. 16

*Tucci v. Club Mediterranee*,
    89 Cal. App. 4th 180 (2001) ............................................................... 35

*Underwood v. Risman*,
    605 N.E.2d 832 (Mass. 1993) ............................................................. 21

*Wilson v. Massey-Ferguson, Inc.*,
    315 N.E.2d 580 (Ill. App. 1974) ......................................................... 14

**FEDERAL: STATUTES**

15 U.S.C. § 2304(a)(4) .......................................................................... 15

15 U.S.C. § 2310(e) ............................................................................... 15

Magnuson-Moss Warranty Act ................................................... 6, 14, 15

**FEDERAL: RULES**

Fed. R. Civ. P. 8(a)(2) .............................................................................. 3

Fed. R. Civ. P. 9(b) ......................................................................... 18, 19

Fed. R. Civ. P. 12(b)(2) ........................................................................... 1

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 4

**STATE: STATUTES**

13 Pa. Cons. Stat. § 2314 ......................................................... 10, 12, 14

13 Pa. Cons. Stat. § 2725 ...................................................................... 13

42 Pa. Cons. Stat. § 5525(8) ................................................................. 33

73 Pa. Cons. Stat. § 201-9.2(a) ............................................................ 34

810 Ill. Comp. Stat. § 5/2–314(c) ........................................................ 10

810 Ill. Comp. Stat. § 5/2-316 ............................................................. 12

810 Ill. Comp. Stat. § 5/2-725 ............................................................. 14

815 Ill. Comp. Stat. § 505/10a(e) ........................................................ 33

Cal. Bus. & Prof. Code § 17203 ................................................................. 33

Cal. Bus. & Prof. Code § 17208 ................................................................. 32

Cal. Civ. Code § 1780(a) ........................................................................... 33

Cal. Civ. Code § 1783 ................................................................................ 32

Cal. Civ. Code § 1791.1 ............................................................................. 10

Cal. Civ. Code § 1791.1(c) ........................................................................ 12

Cal. Com. Code § 2314 ......................................................................... 10, 13

Cal. Com. Code § 2316 .............................................................................. 12

Cal. Com. Code § 2725 .............................................................................. 14

Colo. Rev.Stat. § 4–2–314 ......................................................................... 10

Colo. Rev. Stat. § 4-2-316 ......................................................................... 12

Colo. Rev. Stat. § 4-2-725 ......................................................................... 14

Colo. Rev. Stat. § 6-1-105(1)(u) ............................................................... 21

Colo. Rev. Stat. § 6-1-113(2)(a)(III) ......................................................... 33

Colo. Rev. Stat. § 6-1-115 ......................................................................... 33

Colo. Rev. Stat. § 13-80-101 ..................................................................... 14

Fla. Stat. § 95.11(3)(f) ................................................................... 27, 28, 33

Fla. Stat. § 95.11(3)(k) .............................................................................. 14

Fla. Stat. § 501.211(2) ............................................................................... 33

Fla. Stat. § 672.314 ................................................................................... 10

Fla. Stat. § 672.316 ................................................................................... 12

La. Civ. Code Article § 2520 ..................................................................... 10

La. Rev. Stat. § 9:2800.52 ......................................................................... 27

La. Rev. Stat. § 9:2800.53(5) ..................................................................... 26

La. Rev. Stat. § 9:2800.54(A) .......................................................................... 27

La. Rev. Stat. § 9:2800.54(B)(1)—(4) ............................................................. 27

La. Rev. Stat. § 9:2800.55 ............................................................................... 27

La. Rev. Stat. § 9:2800.56 ............................................................................... 27

La. Rev. Stat. § 9:2800.57 ............................................................................... 27

La. Rev. Stat. § 9:2800.58 ............................................................................... 27

La. Rev. Stat. § 9:2800.59 ............................................................................... 27

La. Rev. Stat. § 51:1409(A) ............................................................................ 27

La. Rev. Stat. § 51:1409(E) ....................................................................... 27, 33

Louisiana's Products Liability Act, La. Rev. Stat. § 9:2800.51 .............................. 26, 27

Louisiana's Unfair Trade Practices Acts, La. Rev. Stat., § 51:1401 ..................... 27, 33

Mass. Gen. Laws c. 106, § 2–314 .................................................................... 10

Mass. Gen. Laws c. 106, § 2–725 .................................................................... 14

Mass. Gen. Laws c. 106, § 2-316A ................................................................. 12

Mass. Gen. Laws c. 260 § 5A ........................................................................... 33

Mich. Comp. Laws § 440.2314(2) .................................................................. 10

Mich. Comp. Laws § 440.2316(2) .................................................................. 12

Mich. Comp. Laws § 440.2725 ....................................................................... 14

Mich. Comp. Laws § 445-911(7) .................................................................... 33

Mich. Comp. Laws § 445.903(1)(g), (h) ......................................................... 32

Mo. Code Regs. Title 15, § 60-9.110 .............................................................. 21

Mo. Stat. § 400.2-314 ..................................................................................... 10

Mo. Stat. § 400.2-316 ..................................................................................... 12

Mo. Stat. § 400.2-725 ..................................................................................... 14

Mo. Stat. § 516.120 ..................................................................................... 33

N.C. Gen. Stat. § 25–2–314(2) ................................................................... 10

N.C. Gen. Stat. § 25–2–316 ........................................................................ 12

N.C. Gen. Stat. § 25-2-725 .......................................................................... 14

N.C. Gen. Stat. § 75-16.2 ............................................................................ 33

N.C. Gen. Stat. § 76-16 ............................................................................... 34

Ohio Rev. Code § 1302.27 ........................................................................... 10

Ohio Rev. Code § 1302.29 ........................................................................... 12

Ohio Rev. Code § 1302.98 ........................................................................... 14

Ohio Rev. Code § 1345.09(B) ...................................................................... 34

Ohio Rev. Code § 1345.10(C) ......................................................... 27, 28, 33

Ohio's Consumer Sales Practices Act ......................................................... 21

Tex. Bus. & Com. Code § 2.314 .................................................................. 10

Tex. Bus. & Com. Code § 2.316 .................................................................. 12

Tex. Bus. & Com. Code § 2.725 .................................................................. 14

Tex. Bus. & Com. Code § 17.46 (b)(9), (10), (13), (24) ............................. 32

Tex. Bus. & Com. Code § 17.50(b)(1) ........................................................ 34

Tex. Bus. & Com. Code § 17.565 ................................................................ 33

Va. Code § 8.2–314 ..................................................................................... 10

Va. Code § 8.2–316 ..................................................................................... 12

Va. Code § 8.2-725 ...................................................................................... 14

Va. Code § 59.1-204.1(A) ............................................................................ 33

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 550 (1977) .............................................. 22

1

U.C.C. § 2-314(1) ................................................................................ 10

U.C.C. § 2-316 ............................................................................. 10, 12

U.C.C. § 2-725 ...................................................................................... 13

UCC Article 2 ....................................................................................... 10

Uniform Commercial Code ........................................................ 10, 12, 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION[1]

Twenty-one plaintiffs who leased or purchased new or used Mazda vehicles over the past twelve years allege that the water pumps in their vehicles failed, causing them out-of-pocket losses—in every instance, outside the vehicle's warranty period, in some cases 40,000-60,000 miles *after* the applicable limited warranty had expired.[2] Plaintiffs claim the water pumps in their vehicles were defective because they did not last for 150,000 to 300,000 miles. Yet nowhere in their 1257-paragraph complaint, do Plaintiffs identify the purported defect that supposedly *caused* the water pumps to fail. Instead, Plaintiffs claim that the water pumps should have been designed to exhibit a manifestation of impending water pump failure by allowing coolant to leak onto the ground. But failing to show signs of impending failure is not a defect that causes such alleged failure. As to that defect, Plaintiffs' Complaint is entirely silent. Clearly, what is motivating this case is not any systemic vehicle defect, but rather, Plaintiffs' displeasure at the cost and inconvenience of having to replace a failed water pump beyond the limited warranty. But repairing a vehicle after a limited express warranty expires is part and parcel of vehicle ownership and simply because a repair may be expensive is not a basis to shift the cost of repair to MNAO.

To begin, no Plaintiff pleads a failure of the water pump during the warranty period. Plaintiffs' allegation that despite the limited warranty's express time and mileage limitations, water pumps should last "between 150,000 and 300,000 miles," provides no legal basis to transform Plaintiffs' subjective, undisclosed and unfounded expectations into cognizable warranty claims. For good reason: absent a limiting principle, consumers could brand a part "defective" just because it failed at any time outside the warranty period. This is not the law in any of the states in which Plaintiffs

---

[1] This Rule 12(b)(6) motion is brought on behalf of MNAO only. MC has concurrently-filed a Rule 12(b)(2) motion. To the extent the Court does not dismiss MC for lack of personal jurisdiction, the arguments asserted herein would apply to MC as well.
[2] For the Court's convenience, MNAO provides a chart summarizing the bases for dismissal as to each of the Plaintiffs. *See* App'x A hereto.

1   purchased their vehicles.[3]

2       Plaintiffs' warranty claims are further barred as a matter of law because (1)

3 Plaintiffs only plead a design issue, (2) Plaintiffs lack privity with MNAO, and/or (3)

4 are time-barred. All of the fraud claims fail because Plaintiffs identify no affirmative

5 or partial representations or omissions by MNAO about the water pumps, Plaintiffs

6 fail to plead MNAO's pre-sale knowledge of, or a legal duty to disclose, the purported

7 "Water Pump Defect," in addition to a host of other fatal defects. The claims for

8 injunctive relief must be dismissed for lack of standing and because Plaintiffs do not

9 plead that legal remedies would be inadequate. If the Court finds that the CLRA and

10 UCL claims are adequately-pled, the Non-California Plaintiffs cannot assert these

11 claims under California's conflict-of-law principles.

12       For these and other reasons developed below, the Court should dismiss the

13 entire complaint with prejudice.

14 **II.    FACTS ALLEGED IN THE COMPLAINT[4]**

15       Plaintiffs from thirteen states bought or leased a new or used 2007-2015 Mazda

16 CX-9 vehicle or a new 2009 Mazda6 equipped with a Cyclone engine. Amended Class

17 Action Complaint ("Compl."), Doc. 54, ¶¶ 23–39. When the vehicles were first sold,

18 they were accompanied by a Powertrain Limited Warranty ("PLW"). *Id.* ¶ 16.[5] The

19 PLW applies to "defects in material or workmanship" in the engine, including the

20 "[w]ater [p]ump," for a period of the first 60 months or 60,000 miles, whichever

21 comes first. *Id.*, Ex. A, pp. 18, 20.[6]

22        [3] All Plaintiffs assert claims based on the states in which they purchased their
23 vehicles, not necessarily where they claim to reside. *See* Compl., at *passim*; *see also*
App'x B *hereto*.
24        [4] For the Court's convenience, MNAO provides a chart summarizing the factual
allegations pertaining to each of the Plaintiffs. *See* App'x B. MNAO lacks sufficient
25 knowledge or information as to the truth of the allegations.
       [5] Plaintiffs also admit that their vehicles were accompanied by a new vehicle
26 limited warranty. *See* Compl. ¶ 16. For purposes of this motion, MNAO focuses on
the PLW because it provided a longer period of coverage than the new vehicle limited
27 warranty.
       [6] Plaintiffs attached as Exhibit A to their Complaint a copy of the 2012 Mazda CX-
28 9 Warranty Booklet. *See* Compl. ¶ 16. For the sake of brevity, MNAO also refers to
the 2012 Mazda CX-9 Warranty Booklet throughout.

Plaintiffs allege that the water pumps in their vehicles were sold with a "defect" that caused them "to suddenly and prematurely fail," which they define as any time before 150,000 miles. *Id.* ¶¶ 1–2. They each claim that the water pump in their new or used Mazda vehicle failed at some point between 67,000 to 120,000 miles. *Id.* ¶¶ 23–39. Some Plaintiffs allege they were able to have the water pump or an unspecified part repaired or replaced and they presumably continue to drive their vehicles. *Id.* ¶¶ 23, 28, 29, 38. Six Plaintiffs have had to replace or rebuild the engines in their vehicles and they too presumably continue to drive their vehicles. *Id.* ¶¶ 27, 31, 33, 35, 36, 39. Some have sold or traded-in their vehicles, *id.* ¶¶ 24, 26, 30, 32, and others claim to have "lost" the use of their vehicles, *id.* ¶¶ 25, 34, 37. Because the PLW was expired for all of the vehicles when the water pump and/or engine failed, Plaintiffs allege they incurred out-of-pocket costs for the diagnosis and/or repair of their vehicles. *Id.* ¶¶ 23–39.

According to Plaintiffs, water pumps were historically "driven by an accessory belt drive system." *Id.* ¶ 47. The water pump in Cyclone engines, however, "relies on the timing chain to deliver its power." *Id.* ¶ 48. Plaintiffs admit that "remov[ing] items from the accessory drive belt" can "improve engine efficiency." *Id.* ¶ 47. But they claim that *if* the chain-driven water pump fails, and then coolant leaks, the "in line" location of the water pump to the "crankshaft and over the main body of the engine" may result in the coolant not leaking onto the ground to give "notice" that the water pump has failed. *See id.* ¶¶ 7, 47, 64. But no Plaintiff actually alleges that the water pumps and/or engines in their own vehicles failed *as a result of* the water pump's "in line" position or that in the absence of the "in line" design, the water pumps would have lasted for 150,000 to 300,000 miles. More significantly, not one of the Plaintiffs even hints as to why the water pump in her vehicle may have failed.

## III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a

complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ.
P. 12(b)(6). A complaint fails to state a claim under Rule 12(b)(6) unless it contains
"enough facts to state a claim for relief that is plausible on its face." *Bell Atl. v.*
*Twombly*, 550 U.S. 544, 547 (2007). The court need not accept unreasonable
inferences or unwarranted deductions of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (noting that "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice"). Rather, Plaintiffs must
allege facts that "raise a right to relief above the speculative level." *Twombly,* 550
U.S. at 545. Where, as here, the complaint contains unsupported factual allegations
and implausible theories of relief, Rule 12(b)(6) requires that the complaint be
dismissed. *Id.* at 547.

While Plaintiffs seek various claims for class relief, "at the motion to dismiss
stage, the Court only considers allegations pertaining to the named plaintiff…."
*Kamath v. Robert Bosch LLC*, 2014 WL 2916570, at *5 (C.D. Cal. June 26, 2014).
And although a motion to dismiss may be granted with leave to amend, leave to
amend is not required where "any amendment would be futile." *See Leadsinger, Inc.*
*v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005).

## IV.   ARGUMENT

### A.   Plaintiffs' Entire Complaint Fails Because They Do Not Adequately Allege a "Defect"

Plaintiffs define the "Water Pump Defect" as "the water pump's *internal*
*placement* in the engine." Compl. ¶ 2 (emphasis added); *see also* ¶¶ 5-6, 47-64.
Plaintiffs explain that the internal water pumps in their vehicles differ from external
water pumps in that "[w]hen external water pumps fail, notice is provided to the driver
of the vehicle in the form of coolant leaking onto the ground, steam coming from the
engine and/or dashboard warning lights indicating that the vehicle is overheating." *Id.*
¶ 47; *see also id.* ¶¶ 7, 47, 64 (describing in line location of water pump and its

purported consequences).[7] In short, Plaintiffs' purported "defect theory" is that the water pumps do not leak if they are about to fail and are hard to fix if they do fail.

Plaintiffs allege no facts *connecting* the internal placement of the water pump to their assertion that the water pumps "prematurely" fail (*i.e.*, somewhere between 67,000 to 120,000 miles). *See, e.g.*, *id.* ¶¶ 2, 57, 223, 518, 818, 970, 1074. This basic failure to allege any facts regarding the existence, cause, or nature of the purported defect that causes water pumps to "prematurely" fail is itself a basis for dismissal of all claims. *See, e.g.*, *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 797 (N.D. Cal. 2019) (dismissing claims under California's consumer protection statutes where aside from the description of symptoms, the plaintiff failed to allege what caused his own Apple Watch's screen to detach); *Yagman v. Gen. Motors Co.*, 2014 WL 4177295, at *3 (C.D. Cal. Aug. 22, 2014) (holding that the plaintiff's allegations of an injury—that the vehicle's engine stopped working and exhibited a total electrical failure—only made it "possible" that a defect was the cause and thus stopped short of *Iqbal*'s and *Twombly*'s "plausibility" threshold); *McQueen v. BMW of N. Am., LLC*, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013).

### B.   Plaintiffs' Warranty-Based Claims Are Deficient

A warranty "related to the quality or description" of goods is distinguishable from a warranty that "promises ... [to] repair or replace defective parts during the warranty period." *See, e.g., Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007); *Ontario Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1266 (D. Del. 1983) ("[A] repair or replacement warranty merely provides a *remedy* if the product becomes defective."). Plaintiffs fail to state either type of claim, as detailed below. The implied-warranty claims likewise fail because Plaintiffs' allegations show their vehicles were merchantable at initial sale. Additionally, the time and mileage

---

[7] Plaintiffs Gilreath, Hume, and Delvecchio admit they were able to have the water pumps replaced. Compl. ¶¶ 28, 29, 38. Thus, Plaintiffs' own allegations undermine their assertion that "catastrophic" engine failure is inevitable because there is no "notice" when the water pump fails.

limitations in the PLW renders any implied warranty coextensive with the now-expired written warranties, and thus, Plaintiffs cannot pursue implied warranty claims. Some Plaintiffs' claims are barred for lack of privity or based on the statute of limitations. And no MMWA claim stands without a predicate state claim. Plaintiffs cannot avoid the dismissal of their claims by claiming the PLW was unconscionable.

### 1. Plaintiffs fail to state express-warranty claims[8]

To prevail on a breach of express-warranty claim, a plaintiff must establish that the seller: "(1) made an affirmation of fact or promise or provided a description of its good; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (citations omitted). Here, Plaintiffs allege MNAO represented in "the maintenance schedules and warranty guides" that "there would be no need to replace or service the water pumps."[9] Plaintiffs come to this illogical conclusion by asserting that since MNAO omitted "any mention of the water pumps as a component requiring routine inspection, service, or replacement," the water pump was intended to last the life of the vehicle.[10] Plaintiffs are wrong on the facts and law.

The very fact that the PLWs expressly address water pumps gives notice that water pumps could fail *during*, and by extension, *after* the limited warranty period. *See* Compl., Ex. A, p. 20. *Punian v. Gillette Co.*, 2016 WL 1029607, at *6 (N.D. Cal. Mar. 15, 2016) ("An express warranty is not a representation that a product has no defects, but rather a promise to repair, replace, or refund a failed product.").

Plaintiffs' argument that the maintenance schedules and warranty guides, by *negative implication*, promised service-free or replacement-free water pumps has been rejected by other courts, including recently by a Michigan district court in a case concerning water pumps in Ford vehicles. *See Roe v. Ford Motor Co.*, 2019 WL

---

[8] Hume and Sonneveldt do not assert breach of express warranty claims.
[9] Compl. ¶¶ 121, 248, 333, 433, 576, 729, 824, 896, 991, 1079, 1168.
[10] *Id.*

3564589, at *2–4 (E.D. Mich. Aug. 6, 2019) (rejecting similar argument raised here because to credit such an argument would lead to the implausible result that the manufacturer guaranteed that the hundred-plus *unidentified* parts would last 150,000 miles); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 224 (4th Cir. 2009) (tire warranty exclusion for "uneven or rapid wear which results from mechanical irregularity" did not imply there *was* warranty coverage for rapid tread wear which did not result from mechanical irregularities). This Court should also reject as implausible Plaintiffs' express-warranty claim.

## 2.   Plaintiffs fail to state claims for breach of the PLW because none plead in-warranty failure or presentment[11]

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992).[12] MNAO agreed to "make necessary repairs…to correct any problem covered by this warranty without charge…." Compl., Ex. A, at p. 18. For powertrain components, including specifically the water pump, the period of coverage was five years or 60,000 miles, whichever came first. *Id.* at p. 18. To obtain a warranted repair, owners were required to take their Mazda vehicle "to a Mazda Dealer." *Id.* at p. 19.

To establish a breach of the PLW, Plaintiffs must allege that they presented their vehicles to an authorized Mazda dealer within the warranty period. *See In re*

---

[11] Again, Hume and Sonneveldt do not assert breach of express warranty claims.

[12] "To allow a customer to seek [relief] beyond the limits specified in [an express] warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would place a burden on the manufacturer for which it did not contract." *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 877 (E.D. Mich. 2009) (collecting cases); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires."); *Karpowicz v. Gen. Motors Corp.*, 1998 WL 142417, at *4 (N.D. Ill. Mar. 26, 1998) ("Case law uniformly holds that time-limited warranties do not protect buyers against defects that existed before but are not discovered until after the expiration of the warranty period."); *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (1st Cir. 1992) ("[T]ime-limited warranties do not protect buyers against hidden defects—defects that may exist before, but typically are not discovered until after, the expiration of the warranty period."); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) ("'[L]atent defects' discovered after the term of the warranty are not actionable.").

1   *Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab.*
2   *Litig.*, 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010); *In re Myford Touch Consumer*
3   *Litig.*, 2015 WL 5118308, at *5 (N.D. Cal. Aug. 31, 2015) (courts "uniformly require
4   the plaintiff to give the defendant a chance to perform warranty service before the
5   defendant can be held liable for breach of warranty"); *Wozniak v. Ford Motor*
6   *Company*, 2019 WL 108845, at *2 (E.D. Mich. Jan. 4, 2019) (plaintiff "must allege
7   both the timeline between the start of the warranty period and the sought-after repairs
8   and the mileage on their vehicles at the time of presentment") (dismissing IL, NJ, NC,
9   OH, and PA claims for failure to present vehicle under warranty); *Duquesne Light Co.*
10  *v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (express warranty "does
11  not cover repairs made after the applicable time has elapsed."); S*chiesser v. Ford*
12  *Motor Co.*, 2017 WL 1283499, at *3–4 (N.D. Ill. Apr. 6, 2017) (dismissing claim for
13  failure to allege presentment before NVLW expired).

14      No Plaintiff meets this basic burden because each of the Plaintiffs have alleged
15  that the part failed *after* the warranty expired. *See* Compl. ¶¶ 23-39. Accordingly,
16  Plaintiffs' claims for breach of the PLW should be dismissed with prejudice. *See Roe*,
17  2019 WL 3564589, at *12 (dismissing claims for breach of repair-or-replace warranty
18  where the plaintiffs did not present their Ford vehicles for a water-pump repair within
19  the durational limits of the warranties). And because no Plaintiff alleges they brought
20  their vehicles in for repair during the PLW period, they also cannot claim that the
21  PLW, the purpose of which was to provide repair or replacement *during* the warranty
22  period, failed its essential purpose. *Roe*, 2019 WL 3564589, at *11 (plaintiffs who did
23  not present vehicles for repair during the warranty period could not plead that the
24  warranties failed their essential purpose); *In re Seagate Tech. LLC Litig.*, 233 F. Supp.
25  3d 776, 783 (N.D. Cal. 2017) (explaining that the essential purpose of a limited
26  warranty is to ensure that customers are not deprived of their remedy during the
27  warranty period); *Williams v. United Techs. Corp.*, 2015 WL 7738370, at *5 (W.D.
28  Mo. Nov. 30, 2015).

### 3. Plaintiffs' claim for breach of the PLW fails as a matter of law because they allege a design issue

MNAO's limited 5-year/60,000-mile PLW covers defects "in Mazda-supplied material or workmanship which result in improper function." *See* Compl., Ex. A, at p. 18. As the laws of numerous states hold, a warranty covering defects in "material or workmanship" does not cover a design defect. *See, e.g.*, *Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019) (holding that "materials" and "workmanship" in the limited warranty carried their plain meaning and therefore did not extend to design defects); *Mack Trucks, Inc. v. Borg Warner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012) (rejecting argument that claims allegedly caused by design defects fell within the scope of the material and workmanship warranty); *Gertz v. Toyota Motor Corp.*, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011), *aff'd sub nom. Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013); *Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750, 754 (8th Cir. 2013) (under Missouri law, "a design defect cannot also be a defect in material and workmanship"); *Voelker v. Porsche Cars N.A., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003) (the plaintiff failed to state a claim for breach of express warranty insofar as he relied on the allegedly defective design of the airbag system).

The "defect" about which Plaintiffs complain is one concerning the alleged *design* of the water pump in *all* 2007-2016 CX-9 and 2009-2013 Mazda6 vehicles, not that the water pumps were installed or made improperly. *See* Compl. ¶¶ 50-53 (describing a "typical water pump" and comparing to Cyclone engine's closed system); ¶ 56, ¶¶ 60-61 (describing findings by Plaintiffs' consultant regarding the design of the water pump). Stated differently, Plaintiffs' claims do not relate to "how" Mazda made or installed the alleged water pump (a defect in material or workmanship), but rather to the "why" Mazda chose a closed system for the Cyclone engine (*i.e.*, a defect in design). Accordingly, Plaintiffs' claim for breach of the PLW fails as a matter of law.

### 4. Plaintiffs fail to state implied-warranty or redhibition claims

U.C.C. § 2-314(1) provides that "[u]nless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[13]  *See also* Cal. Civ. Code § 1791.1. Generally speaking, implied warranties of merchantability cover reasonably foreseeable damages where a product is not merchantable, that is, not "fit for the ordinary purposes for which such goods are used." *Kacsuta v. Lenovo (United States) Inc.*, 2013 WL 12126775, at *3 (C.D. Cal. July 16, 2013).

Here, Plaintiffs' vehicles served their intended purpose; any implied warranty is coextensive with the expired PLW; and Plaintiffs lack privity with MNAO required to enforce an implied warranty. Many of the implied-warranty claims are time-barred.

### (a)    Plaintiffs' vehicles were not unmerchantable

"In the case of automobiles, courts have found that the implied warranty of merchantability requires only that a vehicle is fit for driving." *Carlton v. Paccar Inc.*, 2016 WL 6921127, at *3 (C.D. Cal. May 2, 2016); s*ee also Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable."). "An implied warranty of merchantability does not promise a perfect or even problem-free vehicle—it only assures the buyer that the car will at least function for its intended purpose." *Zambrano v. CarMax Auto Superstores, LLC*, 2014 WL 228435, at *7 (S.D. Cal. Jan. 21, 2014); *Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016) ("Merchantable is not a synonym for perfect[.]"). "[C]ourts across the

---

[13] This provision of the U.C.C. has been adopted and codified in twelve out of the thirteen states at issue. S*ee* Cal. Com. Code § 2314; Colo. Rev.Stat. § 4–2–314; Fla. Stat. § 672.314; 810 Ill. Comp. Stat. § 5/2–314(c); Mass. Gen. Laws c. 106, § 2–314; Mich. Comp. Laws § 440.2314(2); Mo. Stat. § 400.2-314; N.C. Gen. Stat. § 25–2–314(2); Ohio Rev. Code § 1302.27; 13 Pa. Stat. & Cons. Stat. § 2314; Tex. Bus. & Com. Code § 2.314; Va. Code § 8.2–314. Louisiana has not adopted Article 2 of the UCC. Hume asserts a claim for breach of warranty against redhibitory defects pursuant to La. Civ. Code Art. § 2520. *See* Count 25.

country" agree "that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts where plaintiffs have driven their cars without problems for years." *Sheris v. Nissan N. Am. Inc.,* 2008 WL 2354908, at *6 (D.N.J. June 3, 2008).

Here, at the time each Plaintiff's water pump allegedly failed, her vehicle had been driven 67,000 to 120,000 miles, outlasting the PLW, by 7,000 to 60,000 miles. Compl. ¶¶ 23-39. Seven of the seventeen vehicles had prior owners, who, under Plaintiffs' class definition, would be putative class members even though they do not allege that the prior owners experienced a water pump failure. *See id.* ¶¶ 26, 27, 30, 31, 32, 33, 39. Ten vehicles were repaired and Plaintiffs do not allege that they are unable to drive their vehicles following the repairs or that they have experienced any additional water pump failures. *See id.* ¶¶ 23, 27, 28, 29, 31, 33, 35, 36, 38, 39.

These are a far cry from plausible allegations that each vehicle was unmerchantable at the time it was first sold be it to a named Plaintiff or otherwise. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001) (affirming dismissal of an implied warranty claim when Plaintiff claimed the car was "dangerous to drive" but "his actions belie[d]" that allegation because he continued to drive the car); *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied-warranty claims by Plaintiffs who "have not alleged that they stopped using their vehicles"); *cf. Hagan v. Chrysler Corp.*, 339 So. 2d 401, 403 (La. Ct. App. 1976) (evidence lacking to show that vehicle driven over 30,000 miles within nine months after purchase was so absolutely "useless" or "inconvenient" to prove redhibition claim). That Plaintiffs incurred out-of-pocket expenses for their out-of-warranty repairs does not somehow transform their merchantable vehicles into unmerchantable ones. To the contrary, "mechanical failures in new and complex machines are expected"—every failure "does not constitute a breach of warranty." *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364, 370 (E.D. Mich. 1977). Indeed, MNAO's promise to repair defects properly presented within

11

1   established time-and-mileage limits "is a recognition of potential defects (in a

2   statistical sense, the inevitability of defects) in [Mazda's] product and an allocation of

3   risk associated with such defects." *Neuser v. Carrier Corp.*, 2007 WL 484779, at *5

4   (W.D. Wis. Feb. 9, 2007). Plaintiffs cannot retroactively reallocate their share of the

5   risk for alleged failures that occurred after all warranties had expired.

6   **(b)     Any implied warranty is limited to the PLW's terms**

7   Pursuant to U.C.C. § 2-316, manufacturers may impose limitations on implied

8   warranties.[14] *See Hovsepian v. Apple, Inc.*, 2009 WL 2591445, at *8 (N.D. Cal. Aug.

9   21, 2009) ("manufacturers may impose limitations on implied warranties") (citing Cal.

10  Com. Code § 2316); *see also* Cal. Civ. Code § 1791.1(c). The PLW provides that

11  "implied warranties, including but not limited to any regarding marketability or fitness

12  for a particular purpose, are limited respectively to the duration of this warranty."

13  Compl., Ex. A at pp. 17, 19. This limitation is valid and enforceable. *See, e.g.*,

14  *Werwinski v. Ford Motor Co.*, 2000 WL 1201576, at *3 (E.D. Pa. Aug. 15, 2000)

15  (remedies under the implied warranty of merchantability expired no later than with

16  their claim under the express warranties); *Adams v. Nissan N. Am., Inc.*, 395 F. Supp.

17  3d 838, 853–54 (S.D. Tex. 2018) (dismissing implied-warranty claim where the

18  plaintiff did not plead that the defect manifested during the limited written warranty

19  period); *Miller v. Gen. Motors, LLC*, 2018 WL 2740240, at *9 (E.D. Mich. June 7,

20  2018) (dismissing implied-warranty claim because the limited warranty had expired

21  prior to purchase); *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 887 (N.D.

22  Ohio 2013).

23  Because the vehicles were outside the written warranty periods when their

24

25  _____

    [14] This provision of the U.C.C. has been adopted and codified in twelve out of the
    thirteen states at issue. *See* Cal. Com. Code § 2316; Colo. Rev. Stat. § 4-2-316; Fla.

26  Stat. § 672.316; 810 Ill. Comp. Stat. § 5/2-316; Mich. Comp. Laws § 440.2316(2);
    Mo. Stat. § 400.2-316; N.C. Gen. Stat. § 25–2–316; Ohio Rev. Code § 1302.29; 13 Pa.

27  Stat. & Cons. Stat. § 2316; Tex. Bus. & Com. Code § 2.316; Va. Code § 8.2–316; *cf.*
    Mass. Gen. Laws ch. 106, § 2-316A. Louisiana Civil Code art. 2548 also provides

28  "[t]he parties may agree to an exclusion or limitation of the warranty against
    redhibitory defects." La. Civ. Code art. 2548.

engines failed, any implied warranties had likewise expired, and the dismissal of the implied-warranty claims is proper. *See* Compl. ¶¶ 23-39.[15]

### (c)   Plaintiffs lack privity with MNAO

Under California Commercial Code § 2314, the plaintiff "must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Florida, Illinois, North Carolina, Ohio, and Virginia also impose a privity requirement to state a viable implied-warranty claim. *See Mesa v. BMW of N. Am., LLC,* 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005); *Szajna v. Gen. Motors Corp.*, 115 Ill. 2d 294, 311, 503 N.E.2d 760, 767 (1986); *Sharrad, McGee & Co. v. Suz's Software, Inc.*, 396 S.E.2d 815, 818 (N.C. Ct. App. 1990); *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1148 (Ohio 2007); *Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 491 S.E.2d 731, 734 (Va. 1997).

Because the Bohanas, Schneider, Bibbo, Meshberg, the Gilreaths, Lacasse, Dennis, Delvecchio, and Sowards do not allege that they purchased their vehicles from MNAO, *see* Compl. ¶¶ 23, 24, 26, 27, 28, 33, 35, 38, 39, their claims for breach of the implied warranty of merchantability under the Uniform Commercial Code fail for lack of privity.

### (d)   Many of the implied-warranty claims are untimely

To the extent any Plaintiff pleads an implied-warranty claim, those would have accrued at the time of tender, and are untimely for all but Plaintiff Hume, who purchased his vehicle new in 2016, and Plaintiff Sowards, whose vehicle was purchased used, but may have been tendered in 2015 given the model year. *See* U.C.C. § 2-725; *Webb v. Volvo Cars of N.A., LLC*, 2018 WL 1470470, at *8 (E.D. Pa. Mar. 26, 2018) (limitations period for breach of implied warranty under 13 Pa. Cons. Stat. § 2725 runs from the date of tender to the original purchaser).[16]

---

[15]   To the extent Plaintiffs will argue unconscionability, MNAO addresses unconscionability in Section IV.B.6.

[16]   Moreover, it is well-settled that an implied warranty of merchantability, by its very nature, does not explicitly extend to future performance. *See, e.g.*, *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 134 (2008); *Safeway*

| Plaintiff and state | | Tender date or model year[17] | SoL | | Statute | Date SoL Expired |
|---|---|---|---|---|---|---|
| Bohana | CA | 4/6/2010 | ¶ 24 | 4 yrs. | Cal. Com. Code § 2725 | 4/6/2014 |
| Schneider | CA | 10/3/2011 | ¶ 23 | 4 yrs. | Cal. Com. Code § 2725 | 10/3/2015 |
| Proven | CO | 00/00/2007 | ¶ 25 | 3 yrs. | Colo. Rev. Stat. § 4-2-725; *id.* § 13-80-101 | 00/00/2010 |
| Bibbo | FL | 2012MY | ¶ 26 | 4 yrs. | Fla. Stat. § 95.11(3)(k) | 2016 |
| Meshberg | IL | 2008MY | ¶ 27 | 4 yrs. | 810 Ill. Comp. Stat. § 5/2-725 | 2012 |
| Gilreath | IL | 00/00/2013 | ¶ 28 | 4 yrs. | 810 Ill. Comp. Stat. § 5/2-725 | 00/00/2017 |
| Levasseur | MA | 2011MY | ¶ 30 | 4 yrs. | Mass. Gen. Laws c. 106, § 2–725 | 2015 |
| Sonneveldt | MI | 2012MY | ¶ 31 | 4 yrs. | Mich. Comp. Laws § 440.2725 | 2016 |
| Aslan | MO | 2013MY | ¶ 32 | 4 yrs. | Mo. Stat. § 400.2-725 | 2017 |
| Lacasse | NC | 2010MY | ¶ 33 | 4 yrs. | N.C. Gen. Stat. § 25-2-725 | 2014 |
| Dennis | OH | 00/00/2012 | ¶ 35 | 4 yrs. | Ohio Rev. Code § 1302.98 | 2016 |
| Pickerd | PA | 1/00/2013 | ¶ 34 | 4 yrs. | 13 Pa. Cons. Stat. § 2725 | 2017 |
| Halwas | TX | 7/00/2009 | ¶ 37 | 4 yrs. | Tex. Bus. & Com. Code § 2.725 | 2013 |
| Matheny | TX | 1/00/2013 | ¶ 36 | 4 yrs. | Tex. Bus. & Com. Code § 2.725 | 2017 |
| Delvecchio | VA | 4/00/2009 | ¶ 38 | 4 yrs. | Va. Code § 8.2-725 | 2013 |

**5.   Plaintiffs fail to state a Magnuson-Moss Warranty Act claim**

"[C]laims under the Magnuson–Moss Act stand or fall with [Plaintiffs'] express and implied warranty claims under state law." *Clemens*, 534 F.3d at 1022; *accord*

---

*Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 547–48 (Tex. 1986); *Wilson v. Massey-Ferguson, Inc.*, 315 N.E.2d 580, 583 (Ill. App. 1974); *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508, 521–22 (E.D. Mich. 2008).

[17] In this chart, the tender date is provided for new vehicle purchases and the model year is provided for used vehicle purchases. The used-vehicle purchasers do not allege when their vehicles were first tendered, but given the model year, any leave to replead would be futile.

*Robbins v. Hyundai Motor Am.*, 2014 WL 4723505, at \*10 (C.D. Cal. Aug. 7, 2014) (dismissing MMWA claim for failure to adequately allege state warranty claim) (Staton, J.). Plaintiffs, having failed to adequately plead predicate state warranty claims, cannot pursue individual MMWA claims.

Moreover, under 15 U.S.C. § 2310(e), Plaintiffs' MMWA claims also fail unless they each afforded MNAO a "reasonable opportunity to cure" the alleged defect. Because no Plaintiff pleaded she properly presented her vehicle even once, *see* Section IV.B.1, let alone *twice*, as required, their MMWA claims fail for this additional reason. *See Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005); *Marchionna v. Ford Motor Co.*, 1995 WL 476591, at \*11 (N.D. Ill. Aug. 10, 1995) (the word "attempts" in 15 U.S.C. § 2304(a)(4) connotes at least two tries). Their subjective belief that affording MNAO an opportunity to cure would be futile (*e.g.*, Compl. ¶ 134) does not excuse them from these statutory and contractual requirements. *See Kuns v. Ford*, 543 F. App'x 572, 576 (6th Cir. 2013) (finding no "case law indicating that this statutory requirement can be waived if a plaintiff subjectively determines that demand would be futile and does not so much as request the seller to cover the necessary repair").

### 6.    The PLW's time and mileage limits are not unconscionable

Attempting to extend their expired warranties, Plaintiffs allege that MNAO's attempt to "enforce" the warranty limitations is "unconscionable." *See, e.g.*, Compl. ¶¶ 18, 137, 159, 191.[18] In most states at issue, a contract provision can only be found to be unconscionable where both procedural and substantive unconscionability are present. *See Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1343 (C.D. Cal. 2017), *aff'd sub nom. Perez v. DirecTV, LLC*, 740 F. App'x 560 (9th Cir. 2018).[19]

---

[18]   Plaintiffs repeat similar allegations with respect to each of the express and implied-warranty claims. Compl. ¶¶ 262, 282, 295, 348, 369, 382, 449, 471, 484, 509, 532, 550, 592, 613, 626, 676, 689, 744, 765, 778, 839, 858, 871, 911, 932, 945, 1006, 1026, 1039, 1097, 1119, 1132, 1185, 1207, 1220.

[19]   *See also Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1157 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at \*3 (S.D. Fla. Dec. 5, 2013); *Iberia Credit Bureau,*

Under Illinois and Texas law, a contract may be either substantively or procedurally unconscionable, or both. *See Darne v. Ford Motor Co.*, 2015 WL 9259455, at *7 (N.D. Ill. Dec. 18, 2015); *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015). Under Missouri law, whether a contract term is unconscionable depends on the "facts relating to unconscionability impacting the formation of the contract." *See Williams* 2015 WL 7738370, at *3 (quoting *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492 n.3 (Mo. banc 2012)). Here, Plaintiffs can show none of the requirements of unconscionability.

Procedural unconscionability focuses on the factors of surprise and oppression arising from the absence of meaningful choice. *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 993 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th Cir. 2011); *Hanlon v. Monsanto Ag Prod., LLC*, 124 So. 3d 535, 543–44 (La. Ct. App. 10/9/13) (the plaintiffs failed to show unconscionability where the contract involved was not one the plaintiffs were compelled to enter into and the plaintiffs could have purchased goods elsewhere). Here, Plaintiffs cannot claim any surprise by the durational limits of the PLW; indeed, Plaintiffs have alleged the PLW formed the basis of their bargains. *See, e.g.*, Compl. ¶ 121.[20] Moreover, Plaintiffs cannot show that meaningful alternatives were lacking when they purchased or leased their vehicles. It is beyond dispute that consumers have meaningful choices to purchase extended warranties or purchase goods from other manufacturers, including those who may offer longer warranty coverage. *See, e.g.*, *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 673 (3d Cir. 2002) (purchasers certainly do not lack bargaining power as they have the

---

*Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004) (in order to invalidate a contract provision under Louisiana jurisprudence, the provision must possess features of both adhesionary formation and unduly harsh substance); *Leach v. Honeywell Int'l Inc.*, 2014 WL 12585799, at *7 (D. Mass. Nov. 17, 2014); *Liparoto Constr., Inc. v. Gen. Shale Brick, Inc.*, 284 Mich. App. 25, 30 (2009); *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008); *Pruitt v. Strong Style Fitness*, 2011-Ohio-5272, ¶ 18 (Ohio Ct. App. Oct. 13, 2011); *Osness v. Lasko Prod., Inc.*, 868 F. Supp. 2d 402, 411 (E.D. Pa. 2012); *Lee v. Fairfax Cty. Sch. Bd.*, 621 F. App'x 761, 763 (4th Cir. 2015) (Virginia law).

[20] *See also* Compl. ¶¶ 248, 333, 433, 576, 729, 824, 896, 991, 1079, 1168.

freedom to choose among manufacturers and warranty options); *Roe*, 2019 WL 3564589, at *10 (rejecting claim of procedural unconscionability where plaintiffs could have purchased vehicles from other manufacturers including those who offered longer warranty coverage); *Fisher v. Honda N. Am., Inc.*, 2014 WL 2808188, at *9 (C.D. Cal. June 12, 2014) (procedural unconscionability found lacking where there were options to purchase from other manufacturers or purchase additional warranty protection); *Scott v. Honeywell Int'l Inc.*, 2015 WL 1517527, at *9 (D. Colo. Mar. 30, 2015) (humidifiers available from different manufacturers); *Darne*, 2015 WL 9259455, at *8; *Santos v. SANYO Mfg. Corp.*, 2013 WL 1868268, at *3 (D. Mass. May 3, 2013) (that plaintiffs were free to purchase televisions from any one of the many manufacturers who compete fiercely in the consumer electronics market defeated unconscionability claim).

Plaintiffs' only basis for alleging substantive unconscionability is that MNAO knew the water pump might fail after the expiration of the applicable warranty. *See, e.g.*, Compl., ¶ 18. But such "knowledge" does not render the durational limits in the warranty unconscionable. Indeed, "[a] rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage." *See Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986). For this reason, courts have repeatedly held that "there is nothing facially unconscionable" about durational limits in repair-or-replace warranties. *Perez v. Volkswagen Grp. of Am., Inc.*, 2013 WL 1661434, at *5 (W.D. Ark. Apr. 17, 2013) (collecting cases approving warranties "with even more restrictive terms"). Like many courts have, this Court should reject Plaintiffs' argument to impose essentially limitless liability under the PLW. *See Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 2631326, at *12 (C.D. Cal. June 12, 2013); *Smith*, 749 F. Supp. 2d at 994; *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *3 (S.D. Fla. Dec. 5, 2013); *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. 2005) (three-year/36,000 mile warranty not unconscionable); *Rivera v.*

*Ford Motor Co.*, 2017 WL 3485815, at *4 (E.D. Mich. Aug. 15, 2017); *Moore v. Coachmen Indus., Inc.*, 499 S.E.2d 772, 778 (N.C. App. 1998) (twelve-month/15,000 mile warranty not unconscionable); *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 892 (E.D. Pa. 1996) (three-year/36,000 mile warranty not unconscionable); *see also Williams*, 2015 WL 7738370, at *4 (holding that to impose an obligation on a manufacturer to provide a functional product beyond the expiration of a limited repair or replacement warranty would be novel and contrary to the purpose of limited warranties).

### C.   Plaintiffs' Fraud-Based Claims Are Deficient

Unable to point to any physical injuries (there were none) and unable to assert viable warranty claims (there aren't any), Plaintiffs resort to accusations of fraud. As discussed below, the fraud-based claims are not pled with the level of specificity required by Rule 9(b) and fail as well for numerous, independent reasons.

#### 1.   Plaintiffs' allegations fail to meet Rule 9(b)

Each of Plaintiffs' fraudulent-concealment and consumer-protection claims "sounds in fraud" and must meet Rule 9(b)'s heightened pleading standard. *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1139 (N.D. Cal. 2013). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Where fraudulent omissions are alleged, bare allegations of an omission fail to satisfy Rule 9(b). *Sims v. Kia Motors Am., Inc.*, 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014). Rather, a plaintiff must "describe the content of the omission and where the omitted information should or could have been revealed." *Id.*

Without identifying a defect (*see* Section IV.A), Plaintiffs cannot plead with particularity what MNAO supposedly misrepresented to Plaintiffs at the time of sale, or "precisely what was omitted," "who should have made a representation," or how "the omission was misleading," as Rule 9(b) requires. *See Eisen v. Porsche Cars N.*

18

1  *Am., Inc.*, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012).

2  Plaintiffs' complaint lacks specific allegations as to "who" supposedly

3  misrepresented or omitted material facts. Plaintiffs do not even identify who sold them

4  their vehicles. And with respect to Bibbo, Meshberg, the Levasseurs, Sonneveldt,

5  Aslan, Lacasse, and Sowards who purchased their vehicles *used*, *see* Compl. ¶¶ 26,

6  27, 30, 31, 32, 33, 39, they cannot allege that they were defrauded at the time of their

7  purchases by a misrepresentation or omission attributable to MNAO. *See In re OnStar*

8  *Contract Litig.*, 278 F.R.D. 352, 382 (E.D. Mich. 2011).

9  Plaintiffs also leave out the "what," "where," and "when" of the allegedly

10 fraudulent misrepresentations and omissions. No Plaintiff alleges what she was

11 exposed to or relied on in making her purchase and plead no facts about what or where

12 MNAO should have disclosed omitted information, *see* Compl. ¶¶ 23– 39. *See, e.g.,*

13 *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming

14 dismissal when plaintiff "did not allege that she read and relied on a specific

15 misrepresentation"); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 749-50 (E.D. Mich.

16 2017) (dismissing claims where Plaintiffs did not allege when or where they "ever

17 saw, heard, or relied on" representations); *see generally Keele v. Wexler*, 149 F.3d

18 589, 592–93 (7th Cir. 1998) (class representative "must possess the same interest and

19 suffer the same injury shared by all members of the class he represents").

20 Rule 9(b) is designed to deter "[v]ague allegations of inequitable conduct" to

21 prevent casual allegations of fraud "made 'on the slenderest ground.'" *Chiron Corp. v.*

22 *Abbott Labs.*, 156 F.R.D. 219, 222 (N.D. Cal. 1994) (citations omitted). Plaintiffs'

23 conclusory allegations here fail to even implicate MNAO of any material

24 misrepresentation or omission, much less put MNAO on notice it can "'defend against

25 the charge and not just deny that they have done anything wrong.'" *Id.* The fraud-

26 based claims should be dismissed. *Id.*

27 **2.  Plaintiffs' affirmative or partial misrepresentation theory fails**

28 Plaintiffs' misrepresentation claims are premised on the same alleged

19

affirmations that underlie their express warranty claims (*see* Section IV.B.1)—namely, that MNAO represented that the water pumps "should last for the useful life of the engines without the need for any service, maintenance or repair." Compl. ¶ 1; *see also id.* ¶ 13. Again, Plaintiffs point to no such affirmative statements from MNAO. Rather, as with the express-warranty claims, Plaintiffs urge the Court to infer such promises from statements in owner's manuals and maintenance schedules. *See id.* ¶¶ 18, 65. For all the reasons discussed in Section IV.B.1, the inference proposed by Plaintiffs—that MNAO promised the water pumps would last without any service, maintenance, and repair based on the statements contained in the owner's manuals and maintenance schedules—is simply not plausible. The PLW limited MNAO's obligation to repair or replace the water pump to the earlier of 5 years or 60,000 miles. After that "all bets were off on the water pump; it might last quite a while longer, it might not." *Roe*, 2019 WL 3564589, at *3, 4–5 (dismissing tort claims premised on theory that, via the maintenance schedules, Ford represented that hundreds of unlisted engine parts would last 150,000 miles as "implausible").

Moreover, the "marketing and advertising" materials referenced in the Complaint, *see* Compl. ¶¶ 71-80, make no representations about water pumps, and, to the extent they discuss generic concepts of quality, safety, and customer satisfaction, they are textbook non-actionable puffery. *Beck*, 273 F. Supp. 3d at 750 ("quality, reliability, performance, and safety" are terms that "consistently qualify as puffery," and the phrase "rigorous testing" is "highly subjective and vague").

Because "Plaintiffs simply have not pleaded any representations related to" water pumps, let alone a material water-pump misrepresentation that could plausibly support a fraud-based theory, they cannot premise any of their fraud-based claims on alleged misrepresentations. *Wozniak*, 2019 WL 108845, at *3 (rejecting state-law fraud and consumer-protection claims based on a misrepresentation theory where the plaintiff did not plead any representations related to allegedly defective lug nuts); *Beck*, 273 F. Supp. 3d at 756 (dismissing partial representations where the plaintiff did

20

not allege how he was misled by partial representations regarding statements on the defendant's website in such a way requiring the defendant to disclose other information).

### 3. Plaintiffs' omission theory fails based on their failure to adequately allege MNAO's pre-sale knowledge

Although Plaintiffs' omission claims require Plaintiffs to plead varying elements under the applicable states' laws, they are all fatally defective for one reason: Plaintiffs have not adequately pled MNAO's pre-sale knowledge of the alleged "Water Pump Defect." *See Roe*, 2019 WL 3564589, at *5-8.

To state plausible omissions-based claims for relief under the consumer protection statutes pled in the Complaint, Plaintiffs must allege *facts* that make it plausible MNAO had knowledge of the "Water Pump Defect" at the time of the relevant sale. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017); *Wilson v. Hewlett-Packard Co., Inc.*, 668 F.3d 1136, 1145–48 (9th Cir. 2012) (UCL, CLRA, and common law fraud claims require alleging manufacturer's awareness of the defect at the time of sale).[21] Similarly, the tort of fraudulent

---

[21] *See also* Colo. Rev. Stat. § 6-1-105(1)(u) (prohibits failure to disclose material information *known* at the time of an advertisement or sale); *Varner v. Domestic Corp.*, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017) (dismissing claims under California, Florida, Kansas, Michigan, Minnesota, North Carolina and Texas's consumer protection laws where plaintiff did not plead facts sufficient to show the defendant's knowledge of the alleged safety risk omission); *Demaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *9 (N.D. Ill. Feb. 1, 2016) (claims of fraudulent concealment and for violation of the Illinois CFA required pleading knowledge of the alleged defect at the time of the relevant sale); *Underwood v. Risman*, 605 N.E.2d 832, 835 (Mass. 1993) (holding there is no liability under Chapter 93A for failing to disclose what a person does not know); *Storey v. Attends Healthcare Prod., Inc.*, 2016 WL 3125210, at *10 (E.D. Mich. June 3, 2016) (a defendant "cannot be faulted for failing to reveal material 'facts' that did not exist"); Mo. Code Regs. tit. 15, § 60-9.110 (omission of material fact for purposes of the Missouri MPA is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her"); *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 196 (M.D.N.C. 1997) (holding that fraud by omission is satisfied if one party takes affirmative steps to conceal material facts of a defect or has knowledge of a defect); *Bierlein v. Bernie's Motor Sales, Inc.*, 1986 WL 6757, at *6 (Ohio Ct. App. June 12, 1986) (stating that Ohio's Consumer Sales Practices Act requires a defendant to have actual awareness of a defect); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 499 (3d Cir. 2013) (claim under "catch-all" provision of UTPCPL was not viable where the defendant was not alleged to have had any knowledge of the undisclosed material fact); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex.

21

concealment[22] requires Plaintiffs to show MNAO knew of the Water Pump Defect. "After all, how could [MNAO] have intended to conceal something that it did not know would be material to car buyers?" *Roe*, 2019 WL 3564589, at *6 (citing Restatement (Second) of Torts § 550 (1977)).

Plaintiffs' allegations with respect to MNAO's knowledge are entirely boilerplate and devoid of actual facts, the kind numerous courts have found to be deficient. Compl. ¶¶ 81-93; *see Roe*, 2019 WL 3564589, at *6–7 (holding that similar conclusory allegations of knowledge did not make it reasonable to infer that Ford knew or should have known of the purported water-pump defect). For example, Plaintiffs allege MNAO had knowledge of the "Water Pump Defect" from testing, consumer complaints, warranty data, repair orders and parts data, and NHTSA complaints. Compl. ¶ 82. But Plaintiffs' allegations provide no details about *what* information the purported complaints, warranty data, testing, and analysis conveyed to MNAO. Such generic allegations are "insufficient to support an inference that a defendant knew about a design defect at the product's time of sale." *Beck*, 273 F. Supp. 3d at 753 (collecting cases); *Cadena v. Am. Honda Motor Co., Inc.*, 2019 WL 3059931, at *12–13 (C.D. Cal. May 29, 2019) (allegations regarding the existence of complaints and field reports were insufficient allegations of pre-sale knowledge absent details regarding what was actually reported); *Wozniak*, 2019 WL 108845, at *3 (general assertions of knowledge based on complaints posted on third-party forum websites and complaints filed with NHTSA did not rise above mere speculation that the defendant had knowledge of the purported defect).

---

1995) (a failure to disclose material information under the TDTPA necessarily requires that the defendant have *known* the information and failed to bring it to the plaintiff's attention); *Allen v. FCA US LLC*, 2017 WL 1957068, at *2–3 (W.D. Va. May 10, 2017) (a claim for concealment under the VCPA not viable in the absence of pleading facts regarding the defendant's knowledge prior to consumer transaction) (citing *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 718 (Va. 2001)).

[22] Fraudulent concealment claims are asserted under the laws of California, Colorado, Florida, Illinois, Massachusetts, Michigan, Missouri, Ohio, Pennsylvania, and Virginia.

And the few NHTSA complaints pertaining to Mazda vehicles, *see* Compl. ¶ 87, do not create a plausible inference that MNAO knew about a material defect in Plaintiffs' water pumps sold up to a decade earlier: they are statistically infinitesimal, *see id.* ¶ 3 (referring to the "hundreds of thousands of vehicles" since 2007 into which Mazda incorporated the Cyclone Engine), and post-date the original sale of *every* Plaintiffs' vehicle, *see* Timeline of Complaints, App'x C *hereto. See Roe*, 2019 WL 3564589, at \*7 (14 NHTSA complaints relative to the over two million vehicles sold were insufficient matter from which to infer knowledge of a defect); *Beck*, 273 F. Supp. 3d at 753 (rejecting NHTSA complaints as evidence of any knowledge); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013) (affirming dismissal for lack of factual support for knowledge and concealment allegations, including those of knowledge through "internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints" and complaints filed to NHTSA); *Cadena*, 2019 WL 3059931, at \*12 (plaintiffs failed to allege facts to show that 30 NHTSA complaints, in number or substance, even if known to Honda, was sufficient to put Honda on notice that a defect was actually present); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 999, 909–10 (N.D. Cal. 2018) (post-purchase complaints could not establish defendant's pre-purchase knowledge of defect); *Deras v. Volkswagen Group of Am.*, 2018 WL 2267448, at \*4 (N.D. Cal. May 17, 2018) (holding that 56 online complaints out of hundreds of thousands of class vehicles "does not on its face indicate an unusually high number of complaints"); *Sloan v. General Motors LLC*, 2017 WL 3283998, at \*7 (N.D. Cal. Aug. 1, 2017) (holding 81 complaints could not show defendant's knowledge absent allegations that this "was an unusually high number").

Plaintiffs also include allegations suggesting MNAO had superior or exclusive knowledge of a purported defect at the time of sale. However, Plaintiffs must offer "specific substantiating facts" to this effect. *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at \*6 (N.D. Cal. June 20, 2013). It is not enough to allege that MNAO "has

a superior understanding about the product's design generally." *Id.*

At bottom, Plaintiffs' omission theory amounts to a retroactive criticism of the location of the water pump in their vehicles, but they "cannot equate [Mazda's] design choices with fraudulent conduct simply by saying so." *See McQueen v. BMW of N. Am., LLC,*2014 WL 656619, at *5 (D.N.J. Feb. 20, 2014) ("[I]t is a circular argument that could be used to impute knowledge" to "any manufacturer who designs and markets a product that is later alleged to be defective–'I (consumer) believe this item to be defective; you (manufacturer) designed the item and sold it; ergo, you knew it was defective, and thus you defrauded me when you elected not to tell me about the defect.'"). Consequently, all of Plaintiffs' omission-based common law fraud and consumer protection claims fail.

### 4.  Plaintiffs' omission theory is not viable because Plaintiffs do not plead a duty to disclose

To be actionable, an "omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006).

In the absence of any affirmative or partial misrepresentations regarding the matter in question, there is generally no viable non-disclosure claim based only on the possibility that a part may fail after the expiration of all operative warranties. *Daugherty*, 144 Cal. App. 4th at 836–37, 839; *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008); *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *3 (N.D. Cal. Dec. 17, 2009); *Wilson*, 668 F.3d at 1143; *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012); *Divis v. General Motors LLC*, 2019 WL 4735405, at *7 (E.D. Mich. Sept. 27, 2019) (dismissing PA UTPCPL claim because declining warranty coverage when the warranty was expired was not a deceptive trade practice as a matter of law).

Plaintiffs assert that MNAO was required to disclose the "Water Pump Defect" due to a "safety risk," *see, e.g.*, Compl. ¶ 9, but in the context of this case, the alleged "safety" risk is speculative, conclusory, and implausible. In point of fact, in the "hundreds of thousands of vehicles" spanning more than a decade, Plaintiffs do not plead a single injury to any consumer from their supposed defect. *Williams*, 851 F.3d at 1028 (noting lack of allegation that "any customer, much less any plaintiff, experienced such a fire"). A hypothetical possibility of future physical injury to some putative class member does not give rise to a duty to disclose. *Cf. Smith*, 749 F. Supp. 2d at 991 (granting summary judgment where the dangers envisioned by plaintiffs were speculative in nature, deriving in each instance from the particular location at which the driver initially parked the vehicle and/or the driver's individual circumstances). In the absence of any affirmative or partial representation and a non-speculative safety concern, the mere "risk" of economic damages does not give rise to a duty to disclose. *See Daugherty*, 144 Cal. App. 4th at 836 (no duty to disclose where the "risk" is "serious potential [economic] damages"); *Smith v. Ford Motor Co.*, 462 F. App'x 660, 662–63 (9th Cir. 2011) (no duty to disclose costs of economic repair); *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 966 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 462 (9th Cir. 2018) (rejecting "broad obligation to disclose" beyond "known dangers to the safety of customers").

### 5. Schneider and the Bohanas' claim for negligent misrepresentation fails

Schneider and the Bohanas assert a claim for negligent "misrepresentation" under California law that are premised entirely on omissions. *See, e.g.*, Compl. ¶¶ 114-115. Negligent misrepresentation by *nondisclosure* is a claim of "questionable heritage and has been soundly rejected in some jurisdictions." *Eberts v. Goderstad*, 569 F.3d 757, 765 (7th Cir. 2009). Under California law, a negligent misrepresentation claim "requires a positive assertion," not merely an omission. *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011); *see also In re Rust-Oleum*

*Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 820 (N.D. Ill. 2016). As discussed in Section IV.C.1, because Plaintiffs have failed to allege any *positive* assertion, their claim for negligent-misrepresentation fails.

### 6.    The economic loss doctrine bars several fraud-based claims

Plaintiffs predicate their common-law fraud claims on benefit-of-the-bargain and contract-like damages, including out-of-pocket loss and diminution in value. Absent additional injuries, the economic loss doctrine bars the negligent-misrepresentation claims of the Bohanas and Schneider, *see Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014); *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 902 (E.D. Cal. 2018), and the negligent misrepresentation claims of Meshberg and the Gilreaths, *Gandhi v. Sitara Capital Mgmt., LLC*, 689 F. Supp. 2d 1004 (N.D. Ill. 2010), and Hume's LA PLA claim, La. Rev. Stat. § 9:2800.53(5); *Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 692 (5th Cir. 2011) (economic loss rule bars Louisiana Products Liability Act claim for solely economic losses unaccompanied by damage to their own person or property); and the common-law fraud and consumer-protection claims of the Pickerds, *see Simchon v. Highgate Hotels, LP*, 2016 WL 6595918, at *1 (M.D. Pa. Nov. 7, 2016), and the common-law fraud claims of Proven and Sonneveldt, *see Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1223 (D. Colo. 2014); *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 546 (Mich. App. 1995), and the common-law fraud claim of Bibbo, *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224–25 (S.D. Fla. 2017).  While Missouri law recognizes an exception to the economic loss doctrine where fraud-in-the-inducement is alleged,[23] given that Aslan purchased her vehicle used, she does not (and cannot) claim *MNAO* induced or misled her into entering into a transaction with an unknown seller.

### 7.    Hume's LA PLA claim fails on numerous other grounds

---

[23] *Patterson Oil Co. v. Verifone, Inc.*, 2015 WL 6149594, at *8 (W.D. Mo. Oct. 19, 2015).

Hume has not pled a claim under Louisiana's consumer protection statute, Louisiana's Unfair Trade Practices Acts, La. Rev. Stat., § 51:1401, presumably because, among other reasons, class actions are barred. La. Rev. Stat. § 51:1409(A). Instead, Hume pleads a claim under Louisiana's Products Liability Act, La. Rev. Stat. § 9:2800.51. *See* Compl., Count 27. In addition to failing under the economic loss doctrine, *see* Section IV.C.6, the LA PLA claim fails for multiple other reasons.

The PLA establishes "four exclusive theories of product liability: defective design, defective manufacture, failure to warn, and breach of warranty." *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 203 (5th Cir. 2001) (citing La. Rev. Stat. § 9:2800.52). Under the PLA, a manufacturer is liable for damage proximately caused by a characteristic that renders a product "unreasonably dangerous." La. Rev. Stat. § 9:2800.54(A); *see also id.* § 9:2800.54(B)(1)—(4) (outlining the exclusive definitions for "unreasonably dangerous" under the PLA). For the reasons discussed already, Hume has failed to plead the existence of any defect, much less one that is "unreasonably dangerous," *see* Sections IV.A, IV.B.4(a), and IV.C.4; or an express-warranty, *see* Sections IV.B.1, IV.C.1, and IV.C.2; or MNAO's pre-sale knowledge, *see* Section IV.C.3, to support the PLA claim. La. Rev. Stat. § 9:2800.55 (unreasonably dangerous in construction or composition); *id.* § 9:2800.56 (in design); *id.* § 9:2800.57 (based on inadequate warning); *id.* § 9:2800.58 (based on non-conformity to express warranty); *id.* § 9:2800.59 (knowledge requirement).

Finally, because Hume purchased his 2015 CX-9 in February 2016, Compl. ¶ 29, Hume's LA PLA claim is time-barred and should be dismissed. La. Rev. Stat. § 51:1409(E).

### 8.     Certain consumer-fraud claims are also untimely

Discovery may reveal whether other Plaintiffs' fraud and consumer-fraud claims are time-barred, but Bibbo's FL DUTPA and Dennis's OH CSP claims are time-barred without the need for discovery. The limitations period for a FL DUTPA claim is four-years, Fla. Stat. § 95.11(3)(f), and for an OH CSP claim two-years, Ohio

27

Rev. Code § 1345.10(C). The discovery rule does not apply to FL DUTPA and OH CSP claims.  *See, e.g.*, *Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014); *Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006). Based on the dates of purchase, *see* Compl. ¶ 26 (Bibbo purchased used vehicle in Sept. 2013); ¶ 35 (Dennis purchased in 2012), their claims expired years before this action was filed and should therefore be dismissed with prejudice:

| Plaintiff and state | Model yr. | Pltf Purch. Date | SoL | Statute | Latest date SoL expired |
|---|---|---|---|---|---|
| Bibbo | FL | 2012 | 9/00/2013 | 4 years | Fla. Stat. § 95.11(3)(f) | 2017 |
| Dennis | OH | 2012 | 00/00/2012 | 2 years | Ohio Rev. Code § 1345.10(C) | 2014 |

### D.     All Claims for Injunctive Relief Fail

Plaintiffs claim they seek equitable and injunctive relief but do not explain the nature of the relief they seek.  *See, e.g.*, Compl. ¶¶ 20, 102, 109, 224, 245, 330, 423, 521, 726, 893, 988, 1076, 1165, Prayer for Relief.  However, all claims for injunctive relief should be dismissed because it is clear Plaintiffs lack standing and they do not plead that remedies at law would be inadequate.

An injunction requires a showing (1) of irreparable injury; (2) that legal remedies such as monetary damages are inadequate; (3) considering the balance of hardships, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Kartman v. State Farm Mut. Auto. Ins. Co*., 634 F.3d 883, 892 (7th Cir. 2011). Additionally, to demonstrate Article III standing to seek injunctive relief in federal court, a plaintiff must adequately allege that he faces an imminent or actual threat of future harm. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018).

Injunctive relief is a prospective remedy to address the threat of *future* injury that is "actual and imminent, not conjectural or hypothetical." *Davidson*, 889 F.3d at

967 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (a plaintiff must allege that a "real or immediate threat" exists that he will be wronged again). The "threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient." *Davidson*, 889 F.3d at 967 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  Plaintiffs do not explain what real or immediate threat exists or how they think they may be wronged again in the future. Because Plaintiffs lack Article III standing to seek injunctive relief, their claims for injunctive relief should be dismissed.

At a minimum, any claim for injunctive relief under the UCL and CLRA should be dismissed. "The equitable remedies available under the [UCL] and the [CLRA] are 'subject to fundamental equitable principles, including inadequacy of the legal remedy.'" *Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. June 8, 2018) (quoting *Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236 (1998)). A "court[] of equity should not act . . . when the moving party has an adequate remedy at law . . . ." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (first alteration in original). The California Court of Appeal has expressly extended this principle to UCL actions. *Prudential Home Mortgage v. Superior Court*, 66 Cal. App. 4th 1236 (1998); *see also Consumer Advocates v. DaimlerChrysler Corp.*, 2005 WL 327053, at *11–13 (Cal. Ct. App. 2005) (unpublished) (discussing and applying Prudential to bar UCL claims against automobile manufacturer because breach-of-warranty legal remedies were available); *Philips*, 726 F. App'x at 609 (applying Prudential to affirm district court's ruling that UCL, injunctive relief, and all other equitable claims were barred because there was adequate legal remedy).[24]

---

[24] The question is not whether Plaintiffs are *likely* to succeed on their legal claims (as explained above, they are not). The question is whether, assuming they *could* prevail, the remedy available would be adequate. *Mullins v. Premier Nutrition Corp.*, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018) ("In the Ninth Circuit, the relevant test is whether an adequate damages remedy is available, not whether the plaintiff elects to pursue it, or whether she will be successful in that pursuit.").

Here, Plaintiffs do not allege that or why legal damages would be inadequate.[25] Without doing so, they cannot seek equitable relief under the UCL and CLRA, as numerous courts have held. *See, e.g., Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16–17 (N.D. Cal. July 7, 2015), *aff'd*, 726 F. App'x 608, 609 (9th Cir. June 8, 2018); *Classick, Jr. v. Schell & Kampeter, Inc.*, 2019 WL 3530403 (E.D. Cal. Aug. 2, 2019); *Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *5 (C.D. Cal. Dec. 14, 2017); *LaFontaine v. Mitsubishi Motors No. Am., Inc.*, 2017 WL 8220705, at *7 (C.D. Cal. Feb. 23, 2017); *Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016); *Gardner v. Safeco Ins. Co. of Am.*, 2014 WL 2568895, at *7–8 (N.D. Cal. June 6, 2014).

### E.  Non-California Plaintiffs May Not Pursue CLRA and UCL Claims

In the event the Court does not dismiss the CLRA and UCL claims in their entirety, the CLRA and UCL claims asserted by Non-California Plaintiffs, *see* Compl. ¶¶ 209, 228,[26] should be dismissed because their claims "should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).

In *Mazza*, the Ninth Circuit held that based on principles of federalism, "each state has a strong interest in applying its own consumer protection laws to" transactions that occurs within its borders. *Id.* at 592. This is because "[e]ach of our states has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." *Id.* Accordingly, "[g]etting the optimal balance between protecting consumers and attracting foreign businesses, with resulting increase in commerce and jobs, is not so much a policy decision committed to our federal appellate court, or to particular district courts within our circuit, as it is a

---

[25] But, here, it is clear that legal remedies for repairs and related expenses *would* provide an adequate remedy in the absence of any injunctive relief. *See, e.g.*, Compl. ¶¶ 18, 116.

[26] For purposes of this motion, "Non-California Plaintiffs" refer to all named Plaintiffs except Lawrence and Monika Bohana and Esther Wright Schneider.

decision properly to be made by the legislatures and courts of each state." *Id.* As in *Mazza*, "[t]hese interests are squarely implicated in this case." *Id.* at 593.

"Although *Mazza* was decided at class certification, 'the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss.'" *Cover v. Windsor Surry Co.*, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) (quoting *Frezza v. Google Inc.*, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013)). As some courts have recognized, *Mazza* is "not only relevant but controlling" even at the motion to dismiss stage. *Cover*, 2016 WL 520991, at *5 (quoting *Frezza*, 2013 WL 1736788, at *5); *Gonzalez v. Mazda Motor Corp.*, 2017 WL 345878, at *1 (N.D. Cal. Jan. 5, 2017) (finding it appropriate to address individual CLRA and UCL claims where Mazda was not challenging class certification at the motion-to-dismiss stage).

When parties disagree about which state's law applies, California conflict-of-law principles require a court to conduct a three-step "governmental interest" analysis. *Mazza*, 666 F.3d at 590-91 (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010)). The court first asks whether the other state's law "materially differs from the law of California." *Id.* at 590. If there is a material difference, the court determines whether the other state "has an interest in having its law applied." *Id.* at 591-92. If the other state has a cognizable interest, the court determines which state's interests would be "more impaired if its law were not applied." *Id.* at 590. The court then applies the law of whichever state has the predominant interest. As detailed herein, while the material differences discussed below are by no means exhaustive,[27] they are sufficient to show that the Non-California Plaintiffs cannot pursue claims under the CLRA and UCL and that their claims "should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594.

### 1.     Material differences exist

---

[27] If necessary, MNAO will address all material variances at a later time if so ordered by the Court.

As the Ninth Circuit court held in *Mazza*, state consumer-fraud statutes are materially different.  *Mazza*, 666 F.3d at 591. For example, the CLRA, UCL, and consumer-fraud statutes in Illinois, Massachusetts, Missouri, North Carolina, and Ohio, do not impose an "intent to deceive" requirement,[28] and the FL DUTPA also does not appear to impose an intent to deceive requirement, *see Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011). But Colorado, Louisiana, Pennsylvania, and Virginia law do.[29]  And in Michigan and Texas, intent to deceive is required based on the particular subdivisions under which the claims are asserted.[30] While Illinois does not impose an "intent to deceive" requirement, an intent to induce reliance must still be shown. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). As one example to show why these differences are material, an individual who would be barred from recovery under CO, IL, LA, PA, VA, MI, and TX law for failing to demonstrate the necessary intent requirement, would have a different outcome on the CLRA and UCL claims if permitted to assert them. Accordingly, as *Mazza* expressly held, differences in scienter requirements are material because they could easily "spell the difference between the success and failure of a claim." *Mazza*, 666 F.3d at 591; *see also, e.g.*, *Davison v. Kia Motors Am., Inc.*, 2015 WL 3970502, at *2 (C.D. Cal. June 29, 2015) (holding that differences in scienter and other "essential requirements to establish a claim" are material).

Additionally, the statute of limitations for a UCL claim is 4 years and for a CLRA claim is 3 years. Cal. Bus. & Prof. Code § 17208; Cal. Civ. Code § 1783. The

---

[28] *See, e.g.*, *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996); *Maillet v. ATF-Davidson Co.*, 407 Mass. 185, 193 (1990); *State ex rel. Nixon v. Beer Nuts*, 29 S.W.3d 828, 837 (Mo. Ct. App. 2000); *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 343 S.E.2d 174, 180 (1986); *Rose v. Zaring Homes, Inc.*, 122 Ohio App. 39 739, 745, 702 N.E.2d 952, 956 (Ohio Ct. App. 1997).

[29] *See, e.g.*, *Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006); *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 676–77 (E.D. La. 2012); *Post v. Liberty Mut. Grp., Inc.*, 2014 WL 2777396, at *3–4 (E.D. Pa. June 18, 2014); *Post v. Liberty Mut. Grp., Inc.*, 2014 WL 2777396, at *3–4 (E.D. Pa. June 18, 2014); *Lambert*, 553 S.E.2d at 718.

[30] *See* Mich. Comp. Laws § 445.903(1)(g), (h); Tex. Bus. & Com. Code § 17.46 (b)(9), (10), (13), (24); *Smith v. Herco, Inc.*, 900 S.W.2d 852, 859 (Tex. App. 1995).

statute of limitations in Non-California Plaintiffs' home states vary widely from 1 year (Louisiana's Unfair Trade Practices Acts, La. Rev. Stat., § 51:1401) to 6 years (MI CPA and PA UTPCPL).[31] These variances in the statute of limitations are "plainly" material. For example, an individual whose claims are untimely under Ohio, Texas, and Virginia law (like Bibbo and Dennis, *see* Section IV.C.8), should not be allowed to recover under California law with longer limitations periods of three (CLRA) and four (UCL) years.[32] These variances in the statute of limitations are "plainly" material. *See Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *10 (N.D. Cal. Aug. 15, 2016) (holding that differences in the states' laws with respect to varying statute of limitations "plainly are material"); *cf. Littlehale v. Hain Celestial Grp., Inc.*, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012) (finding one-year difference in statute of limitations for fraud claim to be material).

Finally, there are also material differences in the remedies available. *See Cover*, 2016 WL 520991, at *6–7 (differences regarding the types of damages available was material). The CLRA provides for actual damages with a minimum of $1,000, Cal. Civ. Code § 1780(a), but neither the CLRA nor UCL permits treble damages, *see* Cal. Civ. Code § 1780(a); Cal. Bus. & Prof. Code § 17203. The FL DUTPA does not provide for treble damages. Fla. Stat. § 501.211(2).  The CO CPA allows for treble damages if bad faith conduct is established by clear and convincing evidence and no monetary damages at all in class actions.  Colo. Rev. Stat. § 6-1-113(2)(a)(III); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4036319, at *6 (D. Colo. July

---

[31] *See* Colo. Rev. Stat. § 6-1-115 (3 years); Fla. Stat. § 95.11(3)(f) (4 years); 815 Ill. Comp. Stat. § 505/10a(e) (3 years); La. Rev. Stat. § 51:1409(E) (1 year); Mass. Gen. Laws ch. 260 § 5A (4 years); Mich. Comp. Laws § 445-911(7) (6 years); Mo. Stat. § 516.120 (5 years); N.C. Gen. Stat. § 75-16.2 (4 years); Ohio Rev. Code § 1345.10(C) (2 years); 42 Pa. Cons. Stat. §5525(8) (6 years); Tex. Bus. & Com. Code § 17.565 (2 years); Va. Code § 59.1-204.1(A) (2 years).

[32] And individuals whose claims are not subject to any tolling for discovery, should not be entitled to the benefits of any tolling for discovery that might be available under California law. *See Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014); *Laura v. DaimlerChrysler Corp.*, 711 N.W.2d 792, 794–95 (Mich. App. 2006); *Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006). This is significant here where the vehicles at issue have been on the road for as long as *twelve* years.

1, 2015). While the Ohio CSP permits treble damages to an individual plaintiff, no treble damages are allowed in class actions.  Ohio Rev. Code § 1345.09(B). Treble damages are mandatory under the NC UDTPA, N.C. Gen. Stat. § 76-16; are available at the discretion of the court under the PA UTPCPL, *see* 73 Pa. Cons. Stat. § 201-9.2(a); and only if the defendant acted knowingly or intentionally under the TX DTPA, *see* Tex. Bus. & Com. Code § 17.50(b)(1). Thus, if Plaintiffs could prove, for example, that a particular class member paid $1,000 out-of-pocket for repairs and so incurred damages in that amount, he would recover $1,000 under the CLRA, but $3,000 under the NC UDTPA and possibly under the PA UTPCPL, but only $1,000 under the TX DTPA. On the other hand, if the evidence showed knowing or intentional conduct by MNAO, the same plaintiff would still recover $1,000 under the CLRA, $3,000 under the NC UDTPA, but now would be entitled to $3,000 under the TX DTPA. As the district court held in *Mullins*, the availability of treble damages is material. *See Mullins v. Premier Nutrition Corp.*, 2016 WL 3440600, at *8 (N.D. Cal. June 20, 2016) (holding that given Washington's decision to limit treble damages to a maximum of $25,000 under Wash. Rev. Code §19.86.090, application of California's law would impair the policy preferences reflected in policy decision to limit the risk of advertising and selling in an effort to encourage businesses to offer products within its borders).

### 2.   Under Mazza, California does not have a predominant interest in applying its laws to govern out-of-state transactions

Because the laws of the states in which the Non-California Plaintiffs reside or purchased their vehicles differ materially from California's, the Court must decide which law to apply. *Mazza* supplies the answer: because each of the states has the superior interest in regulating sales to its citizens and/or within its territory while adequately protecting freedom of business there the laws of the states in which the Non-California Plaintiffs purchased their vehicles apply. As *Mazza* held, "[e]ach of our states has an interest in balancing the range of products and prices offered to

34

consumers with the legal protections afforded to them." *Mazza*, 666 F.3d at 592. The consumer fraud statutes differ precisely because each state has chosen a different balance between protecting its residents and maintaining economic growth and business development. *See id.*; *Tucci v. Club Mediterranee*, 89 Cal. App. 4th 180, 189-93 (2001). Moreover, each of the states has an interest in applying its own laws to consumer transactions within its borders because "every state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 591-92 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187, amended, 273 F.3d 1266 (9th Cir. 2001)).

*Mazza* further establishes that the other states' interests would be most impaired by applying California laws to non-California transactions. *Id.* at 593. As *Mazza* observed, California courts themselves recognize that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Id.* (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795, 801-02 (1980)). And as *Mazza* further observed, "California's interest in applying its law to residents of foreign states is attenuated." *Id.* at 594 (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)). Plaintiffs cannot point to any allegations or facts that would yield a different result here, so the determination in *Mazza* controls. Finally, federalism requires honoring other states' policy judgments in cases involving its own citizens. *Id.* at 591 (citing *State Farm Mut. Auto Ins. Co. v. Cambell*, 538 U.S. 408, 422 (2003)).

Accordingly, for these reasons, and more, California law does not govern the Non-California Plaintiffs' case, and their individual claims under the CLRA (Count 7) and UCL (Count 8) must be dismissed and with prejudice.

## V.   CONCLUSION

For the reasons described above, and as may be supplemented in MNAO's reply brief or at any hearing scheduled by the Court, Plaintiff's Complaint should be dismissed in its entirety.

Dated: December 9, 2019

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Michael L. Mallow*

Michael L. Mallow

Attorneys for Defendant
Mazda Motor of America, Inc.
d/b/a Mazda North American
Operations

4829-1870-5837