Paul R. Kiesel, State Bar No. 119854
  *kiesel@kiesel.law*
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
Cherisse H. Cleofe, State Bar No. 290152
  *cleofe@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

Attorneys for Plaintiffs

(*Additional Attorneys Listed on Signature Page*)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY SONNEVELDT, ESTHER WRIGHT SCHNEIDER, BRIAN HUME, JEAN LEVASSEUR, CHRISTOPHER LACASSE, TIM HALWAS, ERIN MATHENY, LEWIS DELVECCHIO, JON SOWARDS, LAWRENCE BOHANA, MONIKA BOHANA, DAVID DENNIS, and JACQUELINE S. ASLAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAZDA MOTOR OF AMERICA, INC. D/B/A MAZDA NORTH AMERICAN OPERATIONS and MAZDA MOTOR CORPORATION,<br><br>Defendants. | **Case No. 8:19-cv-01298-JLS-KES**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OBJECTION TO DEFENDANTS' APPLICATION TO THE CLERK TO TAX COSTS** |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

II.  STATEMENT OF FACTS ............................................................................3

III. LEGAL STANDARD ....................................................................................4

IV.  GENERAL OBJECTIONS TO COSTS .......................................................4

    A.   This Case Addressed Important Issues ........................................5

    B.   This Case Involved Close and Difficult Issues ...........................7

    C.   Imposing Cost Would Chill Future Litigation Meant to Protect Consumers ...................................................................................9

    D.   Plaintiffs Have Limited Financial Resources and the Economic Disparity Between the Parties Is Significant .........................................11

V.   SPECIFIC OBJECTIONS ...........................................................................12

VI.  CONCLUSION ............................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alvarez v. YRC Inc.*,
  2021 WL 4935972 (C.D. Cal. June 11, 2021) ............................................. 5, 11, 12

*Ashby v. Farmers Ins. Co. of Or.*,
  2009 WL 3261925 (D. Or. Sept. 30, 2009) ............................................................ 8

*Ass'n of Mexican-Am. Educators v. State of Cal.*,
  231 F.3d 572 (9th Cir. 2000) ................................................................... 2, 5, 6, 10

*Cargill, Inc. v. WDS, Inc.*,
  2018 WL 1525352 (W.D.N.C. Mar. 28, 2018) ...................................................... 6

*Escriba v. Foster Poultry Farms, Inc.*,
  743 F.3d 1236 (9th Cir. 2014) ....................................................................... *passim*

*Grimes v. United Parcel Serv., Inc.*,
  2008 WL 4622589 (N.D. Cal. Oct. 17, 2008) ................................................. 11, 12

*Hawkins v. Nestle U.S.A. Inc.*,
  309 F. Supp. 3d 696 (E.D. Mo. 2018) ................................................................... 6

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
  407 F.3d 1027 (9th Cir. 2005) .................................................................... 2, 5, 12

*Lasic v. Moreno*,
  2007 WL 4180655 (E.D. Cal. Nov. 21, 2007) ..................................................... 13

*Mack v. Cultural Care Inc.*,
  2020 WL 4673522 (D. Mass. Aug. 12, 2020) ........................................................ 6

*Makaneole v. Solarworld Indus. Am., Inc.*,
  2017 WL 2345706 (D. Or. May 10, 2017),
  *R. & R. adopted*, 2017 WL 2345694 (D. Or. May 30, 2017) ......................... 10, 11

*Romano v. United Parcel Serv. Gen. Servs. Co.*,
  2 F. App'x 811 (9th Cir. 2001) ................................................................. 2, 10, 12

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    2021 WL 4813753 (C.D. Cal. July 29, 2021) ................................................... 4, 7, 9

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    2022 WL 17357780 (C.D. Cal. Oct. 21, 2022) ................................................... 4, 9

**State Cases**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999)................................................................................. 6, 10

*Peterson v. Boat Sales, Inc.*,
    2004 WL 2952608 (Mich. Ct. App. Dec. 21, 2004) ............................................. 6

**State Statutes**

Cal. Civ. Code Ann. § 1760 ............................................................................... 6, 10

Tex. Bus. & Com. Code Ann. § 17.44(a) ................................................................ 6

Va. Code Ann. § 59.1-197 ....................................................................................... 6

Pursuant to Local Rule 54-2.2, Plaintiffs Terry Sonneveldt, Esther Wright Schneider, Brian Hume, Jean Levasseur, Christopher Lacasse, Tim Halwas, Erin Matheny, Lewis Delvecchio, Jon Sowards, Lawrence Bohana, Monika Bohana, David Dennis, and Jacqueline S. Aslan ("Plaintiffs") hereby submit the following objection to Defendants Mazda Motor of America Inc. d/b/a Mazda North American Operations and Mazda Motor Corporation (collectively "Defendants" or "Mazda") Application to the Clerk to Tax Costs ("Application") (ECF No. 583).

## I. INTRODUCTION[1]

Through the Application, Mazda, a billion-dollar corporation,[2] which reported a net income of hundreds of millions of dollars last year alone,[3] seeks to tax $50,740.07 in costs against Plaintiffs, individuals of modest means as compared to Mazda, who have already enriched Defendants by purchasing their vehicles. Given the vast disparity in resources between the parties and the substantial injustice an award of costs would result in, the Application should be denied.

The Ninth Circuit has repeatedly recognized that, in circumstances like this, Defendants should not be awarded costs. *See Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1038 (9th Cir. 2005) (sustaining denial of costs where district court determined "an award of costs was inappropriate, [because of the plaintiffs'] lack of financial resources and the substantial profit of the [the defendant]."); *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 592 (9th Cir. 2000) (sustaining denial of application to tax costs against individual plaintiff); *Romano v. United Parcel Serv. Gen. Servs. Co.*, 2 F. App'x 811, 812 (9th Cir. 2001)

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and all emphases are added. All references to "Ex." refer to exhibits attached to the Declaration of Melissa L. Troutner In Support of Plaintiffs' Objections to Defendants' Application.
[2] *See Mazda Motor Corp*, Reuters, https://www.reuters.com/markets/companies/7261.T/ (last visited Mar. 31, 2023) (noting the company's market capitalization is $751 billion).
[3] *See* Ex. 1, *Fiscal Year March 2022 Financial Results* at 9, Mazda Motor Corp. (May 13, 2022) (reporting net income of $81.6 billion yen which is the equivalent of approximately $728.57 million).

(finding district court properly denied defendant's motion for costs where "plaintiffs [had a] good faith, reasonable chance of winning, and [there was a] disparity in resources between the parties."); *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247-48 (9th Cir. 2014) (sustaining denial of application to tax costs against plaintiff and setting forth circumstances a district court may consider in declining to tax costs against plaintiffs including, the importance of the case, the closeness and difficulty of the issues litigated, the chilling effect of imposing costs, a plaintiff's financial resources, and the economic disparity between a plaintiff and defendant). This case is no different—costs should be denied.

Here, Plaintiffs brought an important consumer protection action relating to a potential safety defect in Class Vehicles, not only on behalf of themselves, but on behalf of all others similarly situated.[4] The litigation was hard-fought; the issues were close and difficult as evidenced by, *inter alia*, the Court's orders denying Mazda's Motion to Dismiss Plaintiffs' Second Amended Complaint and initially certifying eight classes. These factors weigh against awarding costs to Mazda. Moreover, taxing costs against these individual Plaintiffs who brought a class action against a corporate defendant to challenge alleged fraud and deceptive conduct would create a chilling effect on future class actions seeking to remedy corporate misconduct and would be contrary to the spirit of the consumer protection statutes under which Plaintiffs asserted claims. These individual Plaintiffs have limited financial resources, particularly in comparison to a large corporate Defendant like Mazda; the economic disparity here is great. *Escriba*, 743 F.3d at 1247-48 (costs may be denied based on "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties."). Accordingly,

---

[4] Class Vehicles include 2008-2015 Mazda CX-9s and 2009-2013 Mazda6s with 3.5 L or 3.7 L Cyclone engines (the "Class Vehicles").

Plaintiffs respectfully request the Court deny Mazda's Application to tax costs against Plaintiffs.

## II. STATEMENT OF FACTS

Plaintiffs initiated this action on June 28, 2019. ECF No. 1. After an initial motion to dismiss was granted with leave to amend, Plaintiffs subsequently filed a thoroughly researched and well-supported 155 page Second Amended Complaint (ECF No. 197), which the Court found plausibly alleged allegations sufficient to support state common law fraud claims and claims under several state consumer protection statutes. *See Sonneveldt v. Mazda Motor of Am., Inc.*, 2021 WL 4813753, at *14 (C.D. Cal. July 29, 2021). The parties then engaged in extensive discovery which included taking 34 depositions. Moreover, both sides engaged multiple experts with Plaintiffs submitting reports from five experts and Mazda similarly submitting reports from three experts. After this substantial discovery, extensive briefing was submitted regarding class certification, including a sur-reply requested by Mazda. *See all* ECF Nos. 317, 342, 373, 438. The Court also held oral argument on class certification and then, initially certified eight classes pursuant to the laws of seven states. *See Sonneveldt v. Mazda Motor of Am., Inc.*, 2022 WL 17357780, at *38 (C.D. Cal. Oct. 21, 2022).

While the Court eventually granted Mazda's Motion for Summary Judgment, it did so only after extensive briefing on summary judgment, including multiple submissions requested by the Court in addition to the standard briefing set forth in the Local Rules, as well as a full day of oral argument. *See* ECF No. 534 (ordering supplemental briefing regarding evidence of pre-sale knowledge); ECF No. 549 (Order requiring the parties to submit demonstratives addressing evidence at issue in Motion for Summary Judgment); ECF No. 551 (ordering the parties to file complete transcripts of all expert witness depositions before oral argument on Summary Judgment Motion).

## III. LEGAL STANDARD

A court may "refuse to award costs" when it states a reason for doing so. *Ass'n of Mexican-Am. Educators*, 231 F.3d at 591. "Appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba*, 743 F.3d at 1247-48 (9th Cir. 2014) (sustaining denial of application to tax costs). The fact that a case has "some merit" is also a proper basis for denying costs. *Ass'n of Mexican-Am. Educators*, 231 F.3d at 592. The factors the Ninth Circuit has articulated as a basis for denying costs "is not 'an exhaustive list of "good reasons" for declining to award costs,' but rather a starting point for analysis." *Escriba*, 743 F.3d at 1248.

## IV. GENERAL OBJECTIONS TO COSTS

The individual Plaintiffs in this matter sought to obtain a recovery for thousands of putative class members based on allegations of Mazda's harmful and deceptive conduct, which sought to conceal a dangerous safety defect from consumers. This case was meritorious and vigorously litigated for years, with Plaintiffs obtaining significant victories at various points throughout the litigation. Moreover, it cannot be meaningfully disputed that Plaintiffs, individuals with modest financial means, have far fewer resources than a billion-dollar company like Mazda, which reported hundreds of millions of dollars in profits last year alone. Under these circumstances, Mazda's Application should be denied in full. *See Jack Russell Terrier Network of N. Ca.*, 407 F.3d at 1038 (sustaining denial of costs where district court determined "an award of costs was inappropriate, [because of the plaintiffs'] lack of financial resources and the substantial profit of the [the defendant]."); *see also Alvarez v. YRC Inc.*, 2021 WL 4935972, at *1 (C.D. Cal. June 11, 2021) (denying application to tax costs because awarding costs would have a "chilling effect" on future litigations against "a large

corporation" and because "there [was] substantial economic disparity among the parties."); *Ass'n of Mexican-Am. Educators*, 231 F.3d at 592 (sustaining denial of costs because, *inter alia*, the district court found the litigation had "some merit").

### A. This Case Addressed Important Issues

Plaintiffs brought this action on behalf of themselves and other similarly-situated consumers pursuant to various state statutes, enacted to provide broad protection to consumers. *See, e.g.*, Cal. Civ. Code Ann. § 1760 (the CLRA must "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices"); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999) ("[UCL] coverage is 'sweeping, embracing' anything that can properly be called a business practice and that at the same time is forbidden by law."); *Mack v. Cultural Care Inc.*, 2020 WL 4673522, at *7 (D. Mass. Aug. 12, 2020) ("The primary goal of the [Massachusetts Consumer Protection Act] is to protect consumers."); *Peterson v. Boat Sales, Inc.*, 2004 WL 2952608, at *1 (Mich. Ct. App. Dec. 21, 2004) ("The Michigan Consumer Protection Act . . . is a remedial statute designed to 'protect consumers in the purchase of goods and services' and must be 'liberally construed to achieve its intended goals.'"); *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 701 (E.D. Mo. 2018) (noting that the Missouri Merchandising Practices Act was "designed to protect those that could not otherwise protect themselves," and thus its prohibitions are "construed broadly to reach any deception or unfair practice"); *Cargill, Inc. v. WDS, Inc.*, 2018 WL 1525352, at *15 (W.D.N.C. Mar. 28, 2018) ("[The North Carolina Unfair and Deceptive Trade Practices Act] was enacted for this purpose: to protect consumers . . . by allowing a cause of action to deter conduct that may ultimately harm consumers."); Tex. Bus. & Com. Code Ann. § 17.44(a) ("This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices."); Va. Code Ann. § 59.1-197 (noting that the Virginia Consumer Protection Act serves as "remedial legislation to promote fair

and ethical standards of dealings between suppliers and the consuming public"). Taxing costs against Plaintiffs attempting to assert their rights (and those of other consumers) under these statutes would violate the spirit of the Acts.

Notably, this litigation focused on an alleged "Water Pump Defect [that] posed safety concerns" and certain Plaintiffs described harrowing circumstances where their water pumps failed with no warning while driving, putting their lives at risk. *Sonneveldt*, 2021 WL 4813753, at *4; Ex. 2, L. Bohana Dep. 68:13-69:2; 70:15-17; 72:15-21; 73:10-13 (describing Class Vehicle suddenly losing power without displaying any warning lights at the transition between the 105 and 405 freeways in Los Angeles); Ex. 3, Lacasse Dep. at 58:3-59:4 (describing experiencing sudden catastrophic engine failure while driving and being unable to break or steer his Class Vehicle on the highway with his children in the Vehicle); Ex. 4, Aslan Dep. 142:22-143:7 (describing experiencing sudden catastrophic engine failure just after exiting the highway); Ex. 5, Matheny Dep. 24:16-26:6 (describing experiencing sudden catastrophic engine failure without prior warning when driving home); Ex. 6, Schneider Dep. 59:16-61:13, 64:14-65:15 (describing experiencing sudden catastrophic engine failure in her Class Vehicle and extreme difficulty steering while driving with her son on the 101 freeway outside San Francisco on Mother's Day). Given these experiences, Plaintiffs should not be ordered to pay Mazda's litigation costs.

Regardless of whether summary judgment was granted, the issues raised in this case are important. Plaintiffs brought an action to protect consumers from an alleged safety defect and to hold Mazda responsible under common law fraud and consumer protection statutes, enacted to provide broad protection to consumers. The issues of whether Mazda knowingly sold vehicles with a safety defect, which could lead to engine failure while driving and/or thousands of dollars in repair expenses, are of public importance to consumers. Plaintiffs should not be penalized for pursuing their

rights, and the rights of thousands of other consumers, under consumer protection statutes via the imposition of costs. *See Ashby v. Farmers Ins. Co. of Or.*, 2009 WL 3261925, at *2 (D. Or. Sept. 30, 2009) (finding class action litigation brought pursuant to statute meant to protect consumers, was of substantial importance and declining to award defendant costs). The statutes at issue here were enacted to level the playing field between individual consumers and large well-funded corporations and to provide recourse for those subject to unfair and deceptive conduct. Thus, in addition to the importance of the underlying case, the decision regarding whether to tax costs against Plaintiffs is important, not just for Plaintiffs and other purchasers of Class Vehicles, but also for other consumers who have been wronged by large corporate defendants, like Mazda. *See, e.g.*, *id.* at *3 ("[T]he Court notes FCRA requires a liberal construction to effectuate its purposes as a consumer-protection statute."); *Escriba*, 743 F.3d at 1249 (recognizing the imposition of even modest costs can discourage potential plaintiffs from bringing suit and chilling future actions).

### B. This Case Involved Close and Difficult Issues

This case involved a complicated and hard-fought litigation stretching over three years in which Plaintiffs mounted multiple interim victories. As in other cases where costs have been denied, the "numerous [factual] and legal issues raised by the parties were substantial and difficult." *Ashby*, 2009 WL 3261925, at *2. The issues included, *inter alia*: (1) whether plaintiffs' claims, pursuant to the consumer protection laws of multiple states, were sufficient to survive a motion to dismiss; (2) whether a class action was appropriate under Federal Rule of Civil Procedure 23(b)(3); (3) whether expert reports submitted in support of class certification should be considered pursuant to Federal Rule of Civil Procedure 702; (4) the proper contents and procedure for dissemination of class certification notice to thousands of class members residing in seven states; and (5) the admissibility and reliability of evidence submitted in support of and in opposition to Mazda's Motion for Summary Judgment. Indeed, the Court

found Plaintiffs' claims to be meritorious and denied Mazda's Motion to Dismiss Plaintiffs' Second Amended Complaint. *Sonneveldt*, 2021 WL 4813753, at *1-14 (finding, *inter alia*, "Plaintiffs adequately allege that Mazda had 'exclusive knowledge of material facts not known to the plaintiff' . . . and also that the Water Pump Defect posed safety concerns"). Thereafter, the parties engaged in extensive discovery, which included taking 34 depositions, and both parties retained experts and submitted reports from a total of eight expert witnesses.

After this extensive discovery, and the completion of substantial briefing and oral argument, the Court initially certified eight classes pursuant to the laws of seven states. *See Sonneveldt*, 2022 WL 17357780, at *38. Moreover, prior to granting Mazda's motion for summary judgment, there was again significant briefing, including supplemental briefing and related filings requested by the Court as it carefully considered the issues raised in Mazda's motion. *See* ECF No. 534 (ordering supplemental briefing regarding evidence of pre-sale knowledge); ECF No. 549 (Order requiring the parties to submit demonstratives addressing evidence at issue in Motion for Summary Judgment); ECF No. 551 (Order requiring the parties to file complete transcripts of all expert witness depositions before oral argument on Summary Judgment Motion). After review of these submissions, the Court conducted a full day of oral argument.

As this record demonstrates, this was a factually complicated case and "[t]he issues presented in this case required close attention to detail, including hearing and understanding expert testimony." *Escriba*, 743 F.3d at 1248 (finding that because the case required close attention to detail and consideration of expert testimony, the district court properly concluded the case was close and difficult). Indeed, Mazda's own litigation strategy demonstrates the complexity of this case as Mazda took the depositions of every named Plaintiff, engaged multiple expert witnesses, and sought additional briefing on class certification. Moreover, the Court's entry of three orders

requesting additional submissions outside of normal briefing related to Mazda's Motion for Summary Judgment and holding a full day of oral argument on the Motion for Summary Judgment, further demonstrates the complexity of this litigation and the fact that summary judgment for Mazda was not a surety. Plaintiffs' claims were brought in good faith, had merit, and were litigated accordingly. Given that this was a close case presenting difficult issues, the Application should be denied. *See id.* (denying costs where the case required examination of expert testimony and close attention to detail); *see also Ass'n of Mexican-Am. Educators*, 231 F.3d at 592 (sustaining denial of costs where "Plaintiffs' case, although unsuccessful, had some merit"); *Romano*, 2 F. App'x at 812 (finding district court properly denied defendant's motion for costs where it relied on "plaintiffs' good faith, reasonable chance of winning, and the disparity in resources between the parties").

### C. Imposing Cost Would Chill Future Litigation Meant to Protect Consumers

Imposing tens of thousands of dollars of costs on individual Plaintiffs seeking to redress wrongs perpetuated against not only themselves, but also thousands of fellow consumers, would create a chilling effect contrary to the purpose of class actions endorsed by Federal Rule of Civil Procedure 23 ("Rule 23"). As described above, it would also chill consumers seeking redress under the state consumer protection statutes enacted to protect them. *See supra*, Section IV A. Taxing costs here is in conflict with the spirit of these statutes and the purpose of Rule 23. *See Makaneole v. Solarworld Indus. Am., Inc.*, 2017 WL 2345706, at *3 (D. Or. May 10, 2017), *R. & R. adopted*, 2017 WL 2345694 (D. Or. May 30, 2017). (agreeing that taxing costs against plaintiffs "would have a significant and undesirable chilling effect on future class-action . . . litigation"); Cal. Civ. Code Ann. § 1760 (the CLRA must "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices"); *Cel-Tech Commc'ns, Inc.*, 973 P.2d at 539 ("[UCL] coverage is 'sweeping, embracing' anything that can properly be called a

business practice and that at the same time is forbidden by law."). Indeed, the very purpose of a class action litigation, such as this, "is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *See Makaneole*, 2017 WL 2345706, at *3. As another court has observed:

> If a potential representative of a putative class . . . [faces the] possibility of a small recovery in the event of success in litigating a claim for unpaid wages [and] also faces the prospect of being taxed with a . . . defendant's costs . . . that prospect can be expected to have a chilling effect on the potential representative's interest in representing the putative class.

*Id*. This is certainly true here.

Plaintiffs have already dedicated themselves to this matter by keeping apprised of this litigation's developments, promptly responding to Defendants' discovery requests, and sitting for hours-long depositions after having already purchased a Class Vehicle from Defendants which, at best, stopped functioning before the end of its expected useful life, and in many circumstances put Plaintiffs in life-threatening situations. It would certainly chill other similar litigation meant to seek recovery for consumers harmed by corporate misconduct if putative class representatives must weigh future liability for a corporation's litigation costs in addition to the substantial time and effort spent serving as class representatives. Accordingly, given the chilling effect the imposition of costs would have on other important consumer protection litigation, the Application should be denied. *Id*. at *3-4 (denying application to tax costs based on the chilling effect the imposition of costs would have on class action litigation); *see also Alvarez*, 2021 WL 4935972, at *1 (denying application to tax costs because awarding costs would have a "chilling effect" on future litigations against "a large corporation"); *Grimes v. United Parcel Serv., Inc.*, 2008 WL 4622589, at *2 (N.D. Cal. Oct. 17, 2008) (denying motion for costs where it would "chill like minded plaintiffs from pursuing their . . . claims").

### D. Plaintiffs Have Limited Financial Resources and the Economic Disparity Between the Parties Is Significant

As compared to Mazda, Plaintiffs are individuals of modest means. For instance, Plaintiffs include a retiree (Ex. 7, Delvecchio Dep. at 12:22-25), a freelance writer (Ex. 8, Levasseur Dep. at 13:12-14:6), an individual who runs a non-profit assisting individuals with unemployment claims (Ex. 9, Sowards Dep. at 14:3-21), and a cardiac sonographer (Ex. 4, Aslan Dep. at 77:21-79:3). Moreover, other Plaintiffs face different financial constraints. For instance, Plaintiff Matheny's husband has brain cancer and she is the primary caretaker of her husband and two children. Ex. 5, Matheny Dep. at 10:7-8, 13:3-8. In stark contrast, Mazda is a billion-dollar corporation which operates internationally and reported hundreds of millions of dollars in net profits last year alone. *See* Ex. 1, *Fiscal Year March 2022 Financial Results*, Mazda Motor Corporation.

Requiring individual Plaintiffs of modest financial means, and with various financial constraints, to pay more than $50,000 in litigation costs to Mazda, an incredibly profitable corporate Defendant, is simply not warranted. For this reason alone, the Application should be denied in full.[5] *See, e.g.*, *Jack Russell Terrier Network of N. Ca.*, 407 F.3d at 1038 (finding denial of costs based on "the [plaintiffs'] lack of financial resources and the substantial profit of the [defendant]" alone was an adequate basis for denying costs); *Romano*, 2 F. App'x at 812 (finding district court properly denied defendant's motion for costs where there was a "disparity in resources between the parties."); *Grimes*, 2008 WL 4622589, at *2 (denying defendant's request for over $50,000 in costs because "[c]onsidering the great disparity in the financial resources of the parties, the imposition of costs in this case would undoubtedly create a harsh result"); *Alvarez*, 2021 WL 4935972, at *1 (declining to award costs to defendant in class action where "there [was] substantial economic disparity among the parties.").

---

[5] At a minimum, the costs to be borne by Plaintiffs should be reduced.

## V. SPECIFIC OBJECTIONS

Alternatively, Mazda's requested costs should be reduced because a party is only entitled to items taxable as costs, as enumerated in Local Rule 54-3. Pursuant to Local Rule 54-3, multiple costs Mazda seeks to tax should be denied.

First, Local Rule 54-3.5(a) states that: "Failure to provide itemized invoices breaking out the ***per-page*** cost of transcripts from other costs, such as expediting, binding, or shipping fees, will be sufficient grounds for not taxing the cost." Mazda attached an invoice for the transcript of the deposition of Katsunobu Miyagoshi, which does not break out a per-page cost of the transcript. *See* Application Tab 5 Exhibit 5GG. Therefore, Mazda should not be permitted to tax the $3,133.00 cost of this deposition transcript.

Second, Local Rule 54-3.7 only permits a party to tax interpreter's fees if they are "reasonable." Here, Mazda seeks $3,895.00 for interpreter's fees incurred at the 30(b)(6) deposition of Satoshi Aratake, despite the fact that Plaintiffs provided a certified translator at this deposition. Because the presence of an additional interpreter at this deposition was entirely redundant and unnecessary, these fees are not reasonable and Mazda should not be permitted to tax the $3,895.00 incurred for these translation services.

Accordingly, to the extent Plaintiffs' request to deny the Application in its entirety is denied (which it should not be), Plaintiffs alternatively request that the Application be reduced by $7,028.00 to $43,712.07.[6]

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Mazda's Application to tax costs against Plaintiffs in its entirety. Alternatively, if costs

---

[6] Plaintiffs also preserve their right to request that the Court stay ruling on its review of any award of costs until resolution of any appeal. *See Lasic v. Moreno*, 2007 WL 4180655, at *1 (E.D. Cal. Nov. 21, 2007) (staying ruling on defendants' bill of cost and finding "[i]t would be a[n] inefficient use of judicial resources to rule on the Bill of Costs" before resolution of an appeal).

are taxed, Plaintiffs respectfully request that the costs be reduced by half, in light of the financial disparity between the large corporate Defendants and Plaintiffs or, at a minimum, be reduced by $7,028.00 to $43,712.07.

DATED: April 3, 2023

Respectfully submitted,

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**

*/s/ Melissa L. Troutner*
Joseph H. Meltzer
Melissa L. Troutner
Tyler S. Graden
Jonathan F. Neumann
Jordan E. Jacobson
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
tgraden@ktmc.com
jneumann@ktmc.com
jjacobson@ktmc.com

Paul R. Kiesel
Jeffrey A. Koncius
Cherisse H. Cleofe
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel: (310) 854-4444
Fax: (310) 854-0812
kiesel@kiesel.law
koncius@kiesel.law
cleofe@kiesel.law

Robert M. Rothman
Francis P. Karam
Philip T. Merenda
**ROBBINS GELLER**
 **RUDMAN & DOWD LLP**
58 South Service Road, Suite 200
Melville, NY 11747
Tel.: (631) 367-7100
Fax: (631) 367-1173
rrothman@rgrdlaw.com
fkaram@rgrdlaw.com
pmerenda@rgrdlaw.com

E. Powell Miller
Sharon S. Almonrode
Brian M. Saxe
**THE MILLER LAW FIRM, P.C.**
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.: (248) 841-2200
Fax: (248) 652-2852
epm@miller.law
ssa@miller.law
bms@miller.law

*Plaintiffs' Counsel*

John C. Goodson
Matt Keil
**KEIL & GOODSON P.A.**
406 Walnut Street
Texarkana, Arkansas 71854
Tel: (870) 772-4113
Fax: (870) 773-2967
jgoodson@kglawfirm.com
mkeil@kglawfirm.com

Robert H. Edwards
**THE EDWARDS FIRM, P.L.L.C.**
711 West Third Street
Little Rock, AR 72201
Tel.: (501) 372-1329

*Additional Counsel for Plaintiffs*